**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RALPH ROBERTS REALTY, LLC, *et al.*[1] | ) | Case No. 12-53023 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Judge Thomas J. Tucker |
| | ) | |

**FIRST AMENDED COMBINED PLAN OF REORGANIZATION AND DISCLOSURE**
**STATEMENT OF RALPH ROBERTS REALTY LLC AND RALPH R. ROBERTS**
<u>**UNDER CHAPTER 11 OF THE BANKRUPTCY CODE**</u>

GOLD, LANGE & MAJOROS, P.C.
Hannah Mufson McCollum (P67171)
24901 Northwestern Hwy., Suite 444
Southfield, MI 48075
Telephone: (248) 350-8220
Facsimile: (248) 350-0519

COUNSEL FOR RALPH ROBERTS REALTY, LLC
AND RALPH R. ROBERTS

Dated: June 13, 2012

---

[1] This case is jointly administered with the case of Ralph R. Roberts, Case No. 12-53024.

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RALPH ROBERTS REALTY, LLC, *et al.*[1] | ) | Case No. 12-53023 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Judge Thomas J. Tucker |
| | ) | |

**FIRST AMENDED PLAN OF REORGANIZATION OF**
**RALPH ROBERTS REALTY, LLC AND RALPH R. ROBERTS  UNDER CHAPTER 11**
**OF THE BANKRUPTCY CODE**

Ralph Roberts Realty, LLC and Ralph R. Roberts (collectively, the "Debtors") propose the following first amended plan of reorganization under sections 1121(a) and 1123 of title 11 of the United States Code.

The Debtors are the proponents of the Plan (as such term is defined below) within the meaning of section 1129 of the Bankruptcy Code (as such term is defined below). Reference is made to the Disclosure Statement (as such term is defined below), distributed contemporaneously herewith, for a discussion of the Debtors' history, properties, results of operations, historical financial information, projections and risk factors, and for a summary and analysis of the Plan and certain related matters.  All holders of Claims who are entitled to vote on the Plan are encouraged to read the Plan and the Disclosure Statement in their entirety before voting to accept or reject the Plan.

---

[1] This case is jointly administered with the case of Ralph R. Roberts, Case No. 12-53024.

# TABLE OF CONTENTS

**ARTICLE I** DEFINITIONS AND CONSTRUCTION OF TERMS ................................ 2

    1.1.    Definitions.................................................................................................... 2
    1.2.    Interpretation; Application of Definitions and Rules of Construction............... 6

**ARTICLE II** TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
               PRIORITY TAX CLAIMS AND DIP FACILITY CLAIMS............................ 6

    2.1.    Non-Classification .......................................................................................... 6
    2.2.    Administrative Expense Claims....................................................................... 6
    2.3.    Professional Compensation and Reimbursement Claims ................................. 7
    2.4.    Priority Claims ............................................................................................... 7

**ARTICLE III** CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS ............ 8

**ARTICLE IV** TREATMENT OF CLAIMS AND EQUITY INTERESTS.................... 10

    4.1.    Class 1 – Realty Hadel Secured Claims........................................................... 10
    4.2.    Class 2 – Realty Bloodworth Secured Claims.................................................. 10
    4.3.    Class 3 – Realty Gio Investments Secured Claims........................................... 11
    4.4.    Class 4 – Realty Belcastro Secured Claims ..................................................... 11
    4.5.    Class 5 – Realty Forgione Secured Claims...................................................... 12
    4.6.    Class 6 – Realty Huffer Secured Claims.......................................................... 12
    4.7.    Class 7 – Realty Wilson Secured Claims......................................................... 12
    4.8.    Class 8  –  Realty Unsecured Claims............................................................... 13
    4.9.    Class 9  –  Roberts Ally Secured Claims .......................................................... 13
    4.10.   Class 10  –  Roberts Unsecured Claims .......................................................... 14
    4.11.   Class 11  –  Roberts Unsecured Guaranty Claims ......................................... 14
    4.12.   Class 12  –  Equity Interests.......................................................................... 14

**ARTICLE V** PROVISIONS GOVERNING ACCEPTANCE OR REJECTION OF THE
               PLAN ................................................................................................... 15

    5.1.    Voting of Claims............................................................................................. 15
    5.2.    Elimination of Vacant Classes ........................................................................ 15
    5.3.    Nonconsensual Confirmation.......................................................................... 15

**ARTICLE VI** PROVISIONS GOVERNING DISTRIBUTIONS ................................ 15

    6.1.    Distributions for Claims Allowed as of the Effective Date .............................. 15
    6.2.    Prepayment Right............................................................................................ 16
    6.3.    Disbursements, Generally .............................................................................. 16
    6.4.    Setoffs ........................................................................................................... 16

**ARTICLE VII** PROCEDURES FOR RESOLVING AND TREATING DISPUTED
               ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS ............................ 16

    7.1.    Objections to and Resolution of Administrative Expense Claims and Claims. 16
    7.2.    No Distribution Pending Allowance ................................................................ 17

7.3.    Estimation ................................................................................................ 17

**ARTICLE VIII** EXECUTORY CONTRACTS AND UNEXPIRED LEASES ............. 17

8.1.    Assumption of Executory Contracts and Unexpired Leases............................ 17
8.2.    Rejection of Certain Contracts...................................................................... 17
8.3.    Approval of Assumption of Executory Contracts and Unexpired Leases ........ 17
8.4.    Cure of Defaults .......................................................................................... 18

**ARTICLE IX** MEANS FOR IMPLEMENTATION OF THE PLAN ......................... 18

9.1.    Funding of the Plan...................................................................................... 18
9.2.    Direction to Parties ...................................................................................... 18

**ARTICLE X** EFFECT OF CONFIRMATION OF PLAN...................................... 18

10.1.   Term of Bankruptcy Injunction or Stays ...................................................... 18
10.2.   Causes of Action Reserved and Preserved..................................................... 18
10.3.   Discharge of Debtors ................................................................................... 19
10.4.   Injunction ................................................................................................... 19
10.5.   Comprehensive Settlement of Claims and Controversies................................ 19
10.6.   Binding Effect ............................................................................................. 20

**ARTICLE XI** EFFECTIVENESS OF THE PLAN.............................................. 20

11.1.   Conditions Precedent to Confirmation........................................................... 20
11.2.   Conditions Precedent to Occurrence of Effective Date ................................... 20
11.3.   Waiver of Conditions ................................................................................... 20

**ARTICLE XII** RETENTION OF JURISDICTION.............................................. 21

12.1.   Jurisdiction of Bankruptcy Court.................................................................. 21

**ARTICLE XIII** MISCELLANEOUS PROVISIONS ............................................ 22

13.1.   Effectuating Documents and Further Transactions.......................................... 22
13.2.   Committee................................................................................................... 22
13.3.   Post Effective Date Fees and Expenses ......................................................... 22
13.4.   Payment of Statutory Fees ........................................................................... 22
13.5.   Effect of Conversion.................................................................................... 22
13.6.   Amendment or Modification of the Plan ....................................................... 22
13.7.   Severability ................................................................................................ 23
13.8.   Revocation or Withdrawal of the Plan .......................................................... 23
13.9.   Notices ....................................................................................................... 23
13.10.  Governing Law ........................................................................................... 24
13.11.  Withholding and Reporting Requirements ..................................................... 24
13.12.  Headings .................................................................................................... 24
13.13.  Exhibits ...................................................................................................... 24
13.14.  Filing of Additional Documents ................................................................... 24
13.15.  Plan Controls............................................................................................... 24
13.16.  Section 1125(e) of the Bankruptcy Code ...................................................... 24
13.17.  Return of Security Deposits ......................................................................... 24
13.18.  Bar Date for Administrative Expense Claims................................................. 24

-ii-

13.19.  Tax Liability...................................................................................................... 25
13.20.  Time ...................................................................................................................... 25

## ARTICLE I

## DEFINITIONS AND CONSTRUCTION OF TERMS

1.1.    Definitions.  As used herein, the following terms have the respective meanings specified below:

1.1.1.    Administrative Expense Claim means any right to payment constituting a cost or expense of administration of the Chapter 11 Cases under sections 503(b) and 507(a)(1) of the Bankruptcy Code, including, without limitation, (a) any actual and necessary costs and expenses of preserving the Debtors' bankruptcy estate, (b) any actual and necessary costs and expenses of the Debtors, (c) any costs and expenses of the Debtors in connection with the administration and implementation of the Plan, (d) all compensation and reimbursement of expenses to the extent Allowed by the Bankruptcy Court under sections 330 or 503 of the Bankruptcy Code, and (e) any fees or charges assessed against the Debtors under section 1930 of chapter 123 of title 28 of the United States Code.

1.1.2.    Allowed means (i) with reference to any Claim, (a) any Claim against the Debtors which has been listed by the Debtors in their Schedules, as such Schedules may be amended by the Debtors from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed, (b) any Claim Allowed hereunder, (c) any Claim which is not Disputed, (d) any Claim that is compromised, settled or otherwise resolved pursuant to a Final Order of the Bankruptcy Court or under the Plan, or (e) any Claim which, if Disputed, has been Allowed by Final Order; provided, however, that Claims allowed solely for the purpose of voting to accept or reject the Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed Claims" hereunder.  Unless otherwise specified herein or by order of the Bankruptcy Court, "Allowed Administrative Expense Claim" or "Allowed Claim" shall not, for any purpose under the Plan, include Postpetition Interest, punitive damages or any fine or penalty on such Administrative Expense Claim or Allowed Claim from and after the Petition Date.  For purposes of determining the amount of an Allowed Claim, there shall be deducted therefrom an amount equal to the amount of any claim which the Debtors may hold or assert against the holder thereof, to the extent such claim may be set off by the Debtors pursuant to sections 502(d) or 553 of the Bankruptcy Code.

1.1.3.    Ballot means the form distributed to each holder of an impaired Claim that is entitled to vote to accept or reject the Plan, on which is to be indicated acceptance or rejection of the Plan as to eligible creditors in Classes 1 and 2.

1.1.4.    Bankruptcy Code means title 11 of the United States Code, as amended from time to time.

1.1.5.    Bankruptcy Court means the United States Bankruptcy Court for the Eastern District of Michigan, having jurisdiction of and over this bankruptcy case and, to the

extent of any reference under section 157 of title 28 of the United States Code, the unit of such District Court under section 151 of title 28 of the United States Code.

1.1.6. <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy Procedure as promulgated by the United States Supreme Court under section 2075 of title 28 of the United States Code, as amended from time to time, and any Local Rules of the Bankruptcy Court.

1.1.7. <u>Business Day</u> means any day other than a Saturday, Sunday or any other day on which commercial banks in New York, New York are required or authorized to close by law or executive order, and the Friday after Thanksgiving.

1.1.8. <u>Cash</u> means legal tender of the United States of America or wire transfer from a domestic bank.

1.1.9. <u>Causes of Action</u> means, without limitation, any and all actions, causes of action, liabilities, obligations, rights, suits, damages, judgments, claims and demands whatsoever, whether known or unknown, existing or hereafter arising, in law, equity or otherwise, based in whole or in part upon any act or omission or other event occurring prior to the Petition Date or during the course of this bankruptcy case, including through the Effective Date, including, without limitation, all avoidance actions arising under Chapter 5 of the Bankruptcy Code.

1.1.10. <u>Chapter 11 Case</u> means the jointly administered case under chapter 11 of the Bankruptcy Code commenced by the Debtors captioned *In re Ralph Roberts Realty, LLC and Ralph R. Roberts*, Chapter 11 Case No. 12-53023 currently pending before the Bankruptcy Court.

1.1.11. <u>Claim</u> has the meaning set forth in section 101(5) of the Bankruptcy Code.

1.1.12. <u>Class</u> means a category of holders of Claims as set forth in Article III of the Plan.

1.1.13. <u>Collateral</u> means any property or interest in property of the Debtors' bankruptcy estate subject to a Lien to secure the payment or performance of a Claim, which Lien or other encumbrance is not subject to avoidance or otherwise invalid under the Bankruptcy Code or applicable state law.

1.1.14. <u>Confirmation Date</u> means the date on which the Clerk of the Bankruptcy Court enters the Confirmation Order on its docket.

1.1.15. <u>Confirmation Hearing</u> means the hearing held by the Bankruptcy Court to consider confirmation of the Plan pursuant to section 1129 of the Bankruptcy Code, as such hearing may be adjourned or continued from time to time.

1.1.16. <u>Confirmation Order</u> means the order of the Bankruptcy Court confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.1.17.  Confirmed means that the Confirmation Order has been entered on the docket of the Bankruptcy Court.

1.1.18.  Cure means, subject to section 8.4 of the Plan, the distribution within thirty (30) days after the Effective Date of Cash, or such other property as may be agreed upon by the Debtors and the non-Debtor party or ordered by the Bankruptcy Court, with respect to the assumption of an executory contract or unexpired lease, pursuant to section 365(b) of the Bankruptcy Code, in an amount equal to all unpaid monetary obligations, without interest, or such other amount as may be agreed upon by the parties, under such executory contract or unexpired lease, to the extent such obligations are enforceable under the Bankruptcy Code and applicable bankruptcy law.

1.1.19.  Debtors means Ralph Roberts Realty, LLC and Ralph R. Roberts.

1.1.20.  Debtors in Possession means the Debtors in their capacity as debtors in possession in the Chapter 11 Case pursuant to sections 1101, 1107(a) and 1108 of the Bankruptcy Code.

1.1.21.  Disclosure Statement means the disclosure statement relating to the Plan, including, without limitation, all exhibits and schedules thereto, as the same may be amended, supplemented or modified from time to time, and as approved by the Bankruptcy Court pursuant to section 1125 of the Bankruptcy Code.

1.1.22.  Disputed means every Claim which has been or hereafter is listed in the Debtors' Schedules as unliquidated, disputed or contingent or which is not listed in the Debtors' Schedules, or which is disputed under the Plan or as to which the Debtors have interposed a timely objection and/or request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018, which objection and/or request for estimation has not been withdrawn or determined by a Final Order, and any Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed.  A Claim that is Disputed by the Debtors as to its amount only, shall be deemed Allowed in the amount the Debtors admit is owing, if any, and Disputed as to the excess.

1.1.23.  Effective Date means the date that is 10 days after the Confirmation Order becomes a Final Order.

1.1.24.  Entity shall have the meaning set forth in section 101(15) of the Bankruptcy Code.

1.1.25.  Final Order means an order of the Bankruptcy Court or any other court of competent jurisdiction as to which the time to appeal, petition for certiorari, or move for reargument or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument or rehearing shall then be pending or as to which any right to appeal, petition for certiorari, reargue, or rehearing shall have been waived in writing in form and substance satisfactory to the Debtors, or, in the event that an appeal, writ of certiorari, or reargument or rehearing thereof has been sought, such order of the Bankruptcy Court or other court of competent jurisdiction shall have been upheld by the highest court to which such order was appealed, or from which certiorari, reargument or rehearing was sought and the time to take

-4-

any further appeal, petition for <u>certiorari</u> or move for reargument or rehearing shall have expired; <u>provided, however</u>, that the possibility that a motion under Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or applicable state court rules of civil procedure, may be filed with respect to such order shall not cause such order not to be a Final Order.

      1.1.26.  <u>First Distribution Date</u> means the date that is sixty (60) days after the Effective Date, or, if such date is not a Business Day, the next succeeding Business Day.

      1.1.27.  <u>Lien</u> has the meaning set forth in section 101(37) of the Bankruptcy Code.

      1.1.28.  <u>Person</u> shall have the meaning set forth in section 101(41) of the Bankruptcy Code.

      1.1.29.  <u>Petition Date</u> means May 25, 2012, the date the Debtors filed their voluntary chapter 11 petitions.

      1.1.30.  <u>Plan</u> means this first amended chapter 11 plan of reorganization, including, without limitation, any exhibits, supplements, appendices and schedules hereto, either in its present form or as the same may be altered, amended or modified from time to time.

      1.1.31.  <u>Postpetition Interest</u> means interest, commencing on the Commencement Date, on the then outstanding principal amount of an Allowed Claim at the rate determined in accordance with applicable nonbankruptcy law, subject to the Bankruptcy Code.

      1.1.32.  <u>Priority Claim</u> means any Claim of a governmental unit of the kind specified in sections 502(i) and 507(a)(8) of the Bankruptcy Code.

      1.1.33.  <u>Pro Rata</u> means, when used with reference to a distribution of property to holders of Allowed Claims or Allowed Equity Interests in a particular Class or other specified group of Claims pursuant to Article III, proportionately so that with respect to a particular Allowed Claim in such Class or in such group, the ratio of (a)(i) the amount of property to be distributed on account of such Claim to (ii) the amount of such Claim is the same as the ratio of (b)(i) the amount of property to be distributed on account of all Allowed Claims in such Class or group of Claims to (ii) the amount of all Allowed Claims in such Class or group of Claims.

      1.1.34.  <u>Realty</u> means Ralph Roberts Realty, LLC, one of the Debtors in these Chapter 11 Cases.

      1.1.35.  <u>Roberts</u> means Ralph R. Roberts, the individual debtor in these jointly administered Chapter 11 Cases.

      1.1.36.  <u>Schedules</u> means the schedules of assets and liabilities, the lists of holders of Equity Interests and the statements of financial affairs filed by the Debtors under section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, and all amendments and modifications thereto through and including the date by which objections to Claims must be filed with the Bankruptcy Court pursuant to section 7.1 of the Plan.

1.1.37. <u>Secured Claim</u> means any Claim, to the extent reflected in the Debtors' Schedules or a proof of claim as a Secured Claim, which is secured by a Lien on Collateral to the extent of the value of such Collateral, as determined in accordance with section 506(a) of the Bankruptcy Code, or, in the event that such Claim is subject to a permissible setoff under section 553 of the Bankruptcy Code, to the extent of such permissible setoff.

1.2. <u>Interpretation; Application of Definitions and Rules of Construction</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural and pronouns stated in the masculine, feminine or neuter gender shall include the masculine, feminine and neuter. Unless otherwise specified, all section, article, schedule or exhibit references in the Plan are to the respective Section in, Article of, Schedule to, or Exhibit to, the Plan. The words "herein," "hereof," "hereto," "hereunder" and other words of similar import refer to the Plan as a whole and not to any particular section, subsection or clause contained in the Plan. The rules of construction contained in section 102 of the Bankruptcy Code shall apply to the construction of the Plan. A term used herein that is not defined herein, but that is used in the Bankruptcy Code, shall have the meaning ascribed to that term in the Bankruptcy Code. The headings in the Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of the Plan.

## ARTICLE II

### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND DIP FACILITY CLAIMS

2.1. <u>Non-Classification</u>. As provided in section 1123(a) of the Bankruptcy Code, Administrative Expense Claims and Priority Claims are not classified for the purposes of voting on or receiving distributions under the Plan. All such Claims are instead treated separately pursuant to the terms set forth in this Article II.

2.2. <u>Administrative Expense Claims</u>. Except to the extent that any Entity entitled to payment of an Allowed Administrative Expense Claim agrees to a less favorable treatment, each holder of an Allowed Administrative Expense Claim (save only Allowed Administrative Expense Claims for professional compensation and reimbursement of expenses that are specifically addressed in section 2.3 below) shall receive Cash in an amount equal to such Allowed Administrative Expense Claim on the later of the Effective Date and the date such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable; <u>provided</u>, <u>however</u>, that Allowed Administrative Expense Claims representing liabilities incurred in the ordinary course by the Debtors shall be paid in full in accordance with the terms and subject to the conditions of any agreements governing, instruments evidencing, or other documents relating to such transactions. The language in this paragraph is not applicable to any amounts owed to the Office of the United States Trustee.

The Debtors are aware of no Allowed Administrative Expense Claims as of the date of filing of this Plan.

2.3.     Professional Compensation and Reimbursement Claims.  All Entities seeking an award by the Bankruptcy Court of compensation for services rendered and reimbursement of expenses incurred through and including the Effective Date under sections 330 or 331 of the Bankruptcy Code or entitled to the priorities established pursuant to sections 503(b)(2), 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code shall (a) file their respective final applications for allowances of compensation for services rendered and reimbursement of expenses incurred through the Effective Date by no later than the date which is forty five (45) days after the Effective Date, or such other date as may be fixed by the Bankruptcy Court and (b) if granted such an award by the Bankruptcy Court, be paid in full in Cash in such amounts as are Allowed by the Bankruptcy Court, (i) on the later of the Effective Date and the date upon which such Administrative Expense Claim becomes an Allowed Administrative Expense Claim, or as soon thereafter as is practicable, (ii) upon such other terms as may be mutually agreed upon between such holder of an Administrative Expense Claim and the Debtors, or (iii) in accordance with the terms of any applicable administrative procedures order entered by the Bankruptcy Court.

The Debtors anticipate that Professional Compensation and Reimbursement Claims will be filed by Gold, Lange & Majoros, P.C., Sirianni & Company, PLLC in unknown amounts, and which may be subject to objection.

As of the date of this Plan, the Debtors anticipate retaining, but have not yet retained O'Reilly Rancilio as special contracts counsel to assist with management of investor contracts, Robert A. Novak PLLC and Schienke Staugaard & Hearsch to assist with eviction proceedings for which Realty acts as a property manager and Wolfe Law Group PLLC to assist with litigation associated with investor-owned properties, such as collections, evictions, and land contract forfeitures.  The Debtors anticipate that all of these professionals will file claims against the estate in unknown amounts, which may be subject to objection.

The Debtors believe, however, that post-petition Professional Compensation and Reimbursement Claims will not exceed approximately $20,000 per month.

2.4.     Priority Claims.  Except to the extent that a holder of an Allowed Priority Claim has been paid prior to the Effective Date or agrees to a different treatment, each holder of an Allowed Priority Claim shall receive, in full and complete settlement, satisfaction and discharge of its Allowed Priority Claim, equal annual Cash payments commencing on the first anniversary of the Effective Date totaling the amount of the Allowed Priority Claim, together with interest, over a period not exceeding five years.  The Debtors, however, shall have the right to pay any Allowed Priority Claim, or any remaining balance, in full, at any time on or after the Effective Date, without premium or penalty.

The Debtors are unaware of any Allowed or allowable Priority Claims.

# ARTICLE III

## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

Claims, other than Administrative Expense Claims and Priority Claims are classified for all purposes, including voting, confirmation and distribution pursuant to the Plan, below.

| Class | Class Composition | Amount of Claims in Class (Approx.) | Status |
|---|---|---|---|
| Class 1 – Realty Hadel Secured Claims | Claims of Dennis Hadel, an investor in Realty, which is secured by rights setoff | Claims in Class 1 are approximately $5,000. | Impaired – May Vote |
| Class 2 – Realty Bloodworth Secured Claims | Claims of Gary Bloodworth, an investor in Realty, which is secured by rights setoff | Claims in Class 2 are approximately $5,000. | Impaired – May Vote |
| Class 3 – Realty Gio Investments Secured Claims | Claims of Gio Investments, LLC, an investor in Realty, which is secured by rights setoff | Claims in Class 3 are approximately $2,500. | Impaired – May Vote |
| Class 4 – Realty Belcastro Secured Claims | Claims of Kimberly Belcastrol, an investor in Realty, which is secured by rights setoff | Claims in Class 4 are approximately $5,000. | Impaired – May Vote |
| Class 5 – Realty Forgione Secured Claims | Claims of Larry Forgione, an investor in Realty, which is secured by rights setoff | Claims in Class 5 are approximately $5,000. | Impaired – May Vote |
| Class 6 – Realty Huffer Secured Claims | Claims of Michael Huffer, an investor in Realty, which is secured by rights | Claims in Class 6 are approximately $5,000. | Impaired – May Vote |

-8-

| | setoff | | |
|---|---|---|---|
| Class 7 – Realty Wilson Secured Claims | Claims of David Wilson, an investor in Realty, which is secured by rights setoff | Claims in Class 7 are approximately $20,000. | Impaired – May Vote |
| Class 8 – Realty Unsecured Claims | All general unsecured claims against Realty, including, but not limited to, the claims listed on Realty's Schedule F. | Claims in Class 8 are approximately $76,000 | Impaired – May Vote |
| Class 9 – Roberts Ally Secured Claim | Secured claim of Ally Financial. | Claims in Class 9 are approximately $55,000 | Impaired – May Vote |
| Class 10 – Roberts Unsecured Claims | All unsecured claims that have been or could be asserted against Mr. Roberts individually, other than guaranteed claims arising from settlement agreements with previous companies owned by Mr. Roberts | Claims in Class 10 are approximately $200,000 | Impaired – May Vote |
| Class 11 – Roberts Unsecured Guaranty Claims | All unsecured claims arising from settlement agreements related to the operations of previous companies owned by Mr. Roberts and corporate guarantees of | Claims in Class 11 are approximately $7.7 million | Impaired – May Vote |

| | | | |
|---|---|---|---|
| | indebtedness signed by Mr. Roberts | | |
| Class 12 – Roberts Equity Interests | Claims arising from ownership interests in Realty | N/A | Impaired – May Vote |

## ARTICLE IV

## TREATMENT OF CLAIMS AND EQUITY INTERESTS

### 4.1.    Class 1 – Realty Hadel Secured Claims

(a)    Impairment and Voting.  Class 1 consists of the claims of Dennis Hadel, an investor in Ralph Roberts Realty, LLC, which are secured by rights of setoff, and which are impaired.  Mr. Hadel is owed approximately $5,000 by Realty, and Realty is owed $5,000 with respect to each transaction Mr. Hadel completes with Realty as an investor. Whether Mr. Hadel is under- or over-secured depends on the number of transactions Mr. Hadel undertakes with Realty in the future; if that number exceeds 1, then Mr. Hadel is oversecured. Each holder of an Allowed Class 1 Claim is entitled to vote on the Plan.

(b)    Treatment.  Each holder of an Allowed Class 1 Claim shall retain its collateral and shall be paid either (i) the total amount of its secured claim in equal quarterly installments with interest at 6% or (ii) shall be entitled, under Realty's current investment program, to charge the amount of its claim against the acquisition fee for property purchased after the Effective Date.  Either treatment may be selected by the holder of an Allowed Class 1 Claim; however, any quarterly installments paid under option (i) shall be deducted from the total credit available against acquisition fees.  The treatment set forth herein is in full satisfaction of the Allowed Claims of Class 1, which shall not be entitled to any distribution on account of any potential deficiency claim.

### 4.2.    Class 2 – Realty Bloodworth Secured Claims

(a)    Impairment and Voting.  Class 2 consists of the claims of Gary Bloodworth, an investor in Ralph Roberts Realty, LLC, which are secured by rights of setoff, and which are impaired.  Mr. Bloodworth is owed approximately $5,000 by Realty, and Realty is owed $5,000 with respect to each transaction Mr. Bloodworth completes with Realty as an investor.  Whether Mr. Bloodworth is under- or over-secured depends on the number of transactions Mr. Bloodworth undertakes with Realty in the future; if that number exceeds 1, then Mr. Bloodworth is oversecured.  Each holder of an Allowed Class 2 Claim is entitled to vote on the Plan.

(b)    Treatment.  Each holder of an Allowed Class 2 Claim shall retain its collateral and shall be paid either (i) the total amount of its secured claim in equal quarterly installments with interest at 6% or (ii) shall be entitled, under Realty's current investment

-10-

program, to charge the amount of its claim against the acquisition fee for property purchased after the Effective Date. Either treatment may be selected by the holder of an Allowed Class 2 Claim; however, any quarterly installments paid under option (i) shall be deducted from the total credit available against acquisition fees. The treatment set forth herein is in full satisfaction of the Allowed Claims of Class 2, which shall not be entitled to any distribution on account of any potential deficiency claim.

### 4.3. Class 3 – Realty Gio Investments Secured Claims

(a)  Impairment and Voting. Class 3 consists of the claims of Gio Investments, LLC, an investor in Ralph Roberts Realty, LLC, which are secured by rights of setoff, and which are impaired. Gio Investments is owed approximately $2,500 by Realty, and Realty is owed $5,000 with respect to each transaction Gio Investments completes with Realty as an investor. Whether Gio Investments is under- or over-secured depends on the number of transactions Gio Investments undertakes with Realty in the future; if that number exceeds 1, then Gio Investments is oversecured. Each holder of an Allowed Class 3 Claim is entitled to vote on the Plan.

(b)  Treatment. Each holder of an Allowed Class 3 Claim shall retain its collateral and shall be paid either (i) the total amount of its secured claim in equal quarterly installments with interest at 6% or (ii) shall be entitled, under Realty's current investment program, to charge the amount of its claim against the acquisition fee for property purchased after the Effective Date. Either treatment may be selected by the holder of an Allowed Class 3 Claim; however, any quarterly installments paid under option (i) shall be deducted from the total credit available against acquisition fees. The treatment set forth herein is in full satisfaction of the Allowed Claims of Class 3, which shall not be entitled to any distribution on account of any potential deficiency claim.

### 4.4. Class 4 – Realty Belcastro Secured Claims

(a)  Impairment and Voting. Class 4 consists of the claims of Kimberly Belcastro, an investor in Ralph Roberts Realty, LLC, which are secured by rights of setoff, and which are impaired. Ms. Belcastro is owed approximately $5,000 by Realty, and Realty is owed $5,000 with respect to each transaction Ms. Belcastro completes with Realty as an investor. Whether Ms. Belcastro is under- or over-secured depends on the number of transactions Ms. Belcastro undertakes with Realty in the future; if that number exceeds 1, then Ms. Belcastro is oversecured. Each holder of an Allowed Class 4 Claim is entitled to vote on the Plan.

(b)  Treatment. Each holder of an Allowed Class 4 Claim shall retain its collateral and shall be paid either (i) the total amount of its secured claim in equal quarterly installments with interest at 6% or (ii) shall be entitled, under Realty's current investment program, to charge the amount of its claim against the acquisition fee for property purchased after the Effective Date. Either treatment may be selected by the holder of an Allowed Class 4 Claim; however, any quarterly installments paid under option (i) shall be deducted from the total credit available against acquisition fees. The treatment set forth herein is in full satisfaction of

the Allowed Claims of Class 4, which shall not be entitled to any distribution on account of any potential deficiency claim.

### 4.5. Class 5 – Realty Forgione Secured Claims

(a)    Impairment and Voting. Class 5 consists of the claims of Larry Forgione, an investor in Ralph Roberts Realty, LLC, which are secured by rights of setoff, and which are impaired. Mr. Forgione is owed approximately $5,000 by Realty, and Realty is owed $5,000 with respect to each transaction Mr. Forgione completes with Realty as an investor. Whether Mr. Forgione is under- or over-secured depends on the number of transactions Mr. Forgione undertakes with Realty in the future; if that number exceeds 1, then Mr. Forgione is oversecured. Each holder of an Allowed Class 5 Claim is entitled to vote on the Plan.

(b)    Treatment. Each holder of an Allowed Class 5 Claim shall retain its collateral and shall be paid either (i) the total amount of its secured claim in equal quarterly installments with interest at 6% or (ii) shall be entitled, under Realty's current investment program, to charge the amount of its claim against the acquisition fee for property purchased after the Effective Date. Either treatment may be selected by the holder of an Allowed Class 5 Claim; however, any quarterly installments paid under option (i) shall be deducted from the total credit available against acquisition fees. The treatment set forth herein is in full satisfaction of the Allowed Claims of Class 5, which shall not be entitled to any distribution on account of any potential deficiency claim.

### 4.6. Class 6 – Realty Huffer Secured Claims

(a)    Impairment and Voting. Class 6 consists of the claims of Michael Huffer, an investor in Ralph Roberts Realty, LLC, which are secured by rights of setoff, and which are impaired. Mr. Huffer is owed approximately $5,000 by Realty, and Realty is owed $5,000 with respect to each transaction Mr. Huffer completes with Realty as an investor. Whether Mr. Huffer is under- or over-secured depends on the number of transactions Mr. Huffer undertakes with Realty in the future; if that number exceeds 1, then Mr. Huffer is oversecured. Each holder of an Allowed Class 6 Claim is entitled to vote on the Plan.

(b)    Treatment. Each holder of an Allowed Class 6 Claim shall retain its collateral and shall be paid either (i) the total amount of its secured claim in equal quarterly installments with interest at 6% or (ii) shall be entitled, under Realty's current investment program, to charge the amount of its claim against the acquisition fee for property purchased after the Effective Date. Either treatment may be selected by the holder of an Allowed Class 6 Claim; however, any quarterly installments paid under option (i) shall be deducted from the total credit available against acquisition fees. The treatment set forth herein is in full satisfaction of the Allowed Claims of Class 6, which shall not be entitled to any distribution on account of any potential deficiency claim.

### 4.7. Class 7 – Realty Wilson Secured Claims

(a)    Impairment and Voting. Class 7 consists of the claims of David Wilson, an investor in Ralph Roberts Realty, LLC, which are secured by rights of setoff, and which are impaired. Mr. Wilson is owed approximately $20,000 by Realty, and Realty is owed

$5,000 with respect to each transaction Mr. Wilson completes with Realty as an investor. Whether Mr. Wilson is under- or over-secured depends on the number of transactions Mr. Wilson undertakes with Realty in the future; if that number exceeds 1, then Mr. Wilson is oversecured.  Each holder of an Allowed Class 7 Claim is entitled to vote on the Plan.

(b)     Treatment.  Each holder of an Allowed Class 7 Claim shall retain its collateral and shall be paid either (i) the total amount of its secured claim in equal quarterly installments with interest at 6% or (ii) shall be entitled, under Realty's current investment program, to charge the amount of its claim against the acquisition fee for property purchased after the Effective Date.  Either treatment may be selected by the holder of an Allowed Class 7 Claim; however, any quarterly installments paid under option (i) shall be deducted from the total credit available against acquisition fees.  The treatment set forth herein is in full satisfaction of the Allowed Claims of Class 7, which shall not be entitled to any distribution on account of any potential deficiency claim

### 4.8.    Class 8   –   Realty Unsecured Claims

(a)     Impairment and Voting.  Class 8 consists of all general unsecured claims against Realty and is impaired by the Plan.  Each holder of an Allowed Class 8 Claim is entitled to vote to accept or reject the Plan.

(b)     Treatment.  All holders of Class 8 - Realty Unsecured Claims will receive, in full and complete settlement, satisfaction and discharge of their claims, cash payments in quarterly installments over five years beginning on the First Distribution Date in an amount equal to such holder's pro rata share of $1,077,656.00 as follows:  each holder's pro rata share of $48,892.00 in Year 1 of the Plan; each holder's pro rata share of $140,500.00 in Year 2 of the Plan; each holder's pro rata share of $256,996.00 in Year 3 of the Plan; each holder's pro rata share of $296,492.00 in Year 4 of the Plan and each holder's pro rata share of $334,776.00 in Year 5 of the Plan.  Such $1,077,656.00 will be shared among holders of Allowed Class 8 Claims, Allowed Class 10 Claims and Allowed Class 11 Claims.

### 4.9.    Class 9   –   Roberts Ally Secured Claims

(a)     Impairment and Voting.  Class 9 consists of the claim of Ally Financial and is impaired by the Plan.  Each holder of an Allowed Class 9 Claim is entitled to vote to accept or reject the Plan.

(b)     Treatment.  Ally Financial, the only claimant in Class 9, shall retain, on the Effective Date, a lien on its prepetition collateral.  Ally Financial shall also retain all payments received by it during this chapter 11 case.  The total value of the GMC Yukon, which secures Mr. Roberts' debt to Ally Financial is approximately $39,378 as of the Petition Date.  Accordingly, Ally Financial will receive new five-year note in the amount of $39,378, providing for interest at 6% and total monthly payments, including interest, of $761.29 in full satisfaction of its claim and its claim against any guarantors, including personal guarantors.  Ally Financial's unsecured deficiency claim shall be paid as a Class 10 Roberts Unsecured Claim. The foregoing shall be in full and complete settlement, satisfaction and discharge of the Claim of Ally Financial.

4.10.   Class 10  –  Roberts Unsecured Claims

(a)    Impairment and Voting.  Class 10 consists of all general unsecured claims against Mr. Roberts, including the unsecured deficiency claim of Ally Financial, but not any claims related to corporate debt guaranteed by Mr. Roberts individually, or unsecured debt arising out of confidential settlement agreements.  Each holder of an Allowed Class 10 Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  All holders of Class 10 - Roberts Unsecured Claims will receive, in full and complete settlement, satisfaction and discharge of their claims, cash payments in quarterly installments over five years beginning on the First Distribution Date in an amount equal to such holder's share of $1,077,656.00 as follows:  each holder's pro rata share of $48,892.00 in Year 1 of the Plan; each holder's pro rata share of $140,500.00 in Year 2 of the Plan; each holder's pro rata share of $256,996.00 in Year 3 of the Plan; each holder's pro rata share of $296,492.00 in Year 4 of the Plan and each holder's pro rata share of $334,776.00 in Year 5 of the Plan.  Such $1,077,656.00 will be shared among holders of Allowed Class 8 Claims, Allowed Class 10 Claims and Allowed Class 11 Claims.

4.11.   Class 11  –  Roberts Unsecured Guaranty Claims

(a)    Impairment and Voting.  Class 11 consists of all general unsecured guaranty claims against Mr. Roberts, claims related to corporate debt guaranteed by Mr. Roberts individually, or unsecured debt arising out of confidential settlement agreements.  Each holder of an Allowed Class 11 Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  All holders of Class 11 - Roberts Unsecured Guaranty Claims will receive, in full and complete settlement, satisfaction and discharge of their claims, cash payments in quarterly installments over five years beginning on the First Distribution Date in an amount equal to such holder's share of $1,077,656.00 as follows:  each holder's pro rata share of $48,892.00 in Year 1 of the Plan; each holder's pro rata share of $140,500.00 in Year 2 of the Plan; each holder's pro rata share of $256,996.00 in Year 3 of the Plan; each holder's pro rata share of $296,492.00 in Year 4 of the Plan and each holder's pro rata share of $334,776.00 in Year 5 of the Plan.  Such $1,077,656.00 will be shared among holders of Allowed Class 8, Allowed Class 10 Claims and Allowed Class 11 Claims.

4.12.   Class 12  –  Equity Interests

(a)    Impairment and Voting.  Class 5 consists of all equity interests in Realty, which are currently held 20% by Mr. Roberts and 80% by Rowland Family, LLC.  This class is impaired by the Plan.  Each holder of an Allowed Class 5 Claim is entitled to vote to accept or reject the Plan.

(b)    Treatment.  After the Effective Date, all existing ownership interests in Realty shall be cancelled and Ralph R. Roberts, in consideration for release and waiver of his claims against Realty, which are approximately $1,350,000.00 shall receive a 100% ownership interest in the Reorganized Realty.

-14-

# ARTICLE V

## PROVISIONS GOVERNING ACCEPTANCE OR REJECTION OF THE PLAN

### 5.1.    Voting of Claims

(a)    Each holder of an Allowed Claim in an impaired Class of Claims that is entitled to vote on the Plan pursuant to Articles III and IV of the Plan shall be entitled to vote to accept or reject the Plan as provided in such order as is entered by the Bankruptcy Court establishing procedures with respect to the solicitation and tabulation of votes to accept or reject the Plan, or any other order(s) of the Bankruptcy Court.

(b)    All votes on the Plan shall be tabulated on a non-consolidated basis by Class and by Debtor for the purpose of determining whether the Plan satisfies sections 1129(a)(8) and/or (10) of the Bankruptcy Code.  If no holders of Claims or Equity Interests eligible to vote in a particular Class vote to accept or reject the Plan, the Plan shall be deemed accepted by the holders of such Claims or Equity Interests in such Class.

### 5.2.    Elimination of Vacant Classes.  Any Class of Claims that is not occupied as of the date of commencement of the Confirmation Hearing by the holder of an Allowed Claim or a Claim temporarily Allowed under Bankruptcy Rule 3018 (*i.e.*, no Ballots are cast in a Class entitled to vote on the Plan) shall be deemed eliminated from the Plan for purposes of voting to accept or reject the Plan and for purposes of determining acceptance or rejection of the Plan by such Class pursuant to section 1129(a)(8) of the Bankruptcy Code.

### 5.3.    Nonconsensual Confirmation.  If any impaired Class of Claims entitled to vote does not accept the Plan by the requisite statutory majorities provided in section 1126(c) of the Bankruptcy Code, the Debtors reserve the right to amend the Plan in accordance with section 13.7 hereof or undertake to have the Bankruptcy Court confirm the Plan under section 1129(b) of the Bankruptcy Code or both.  With respect to any impaired Classes of Claims that are deemed to reject the Plan, the Debtors shall request the Bankruptcy Court to confirm the Plan under section 1129(b) of the Bankruptcy Code.

## ARTICLE VI

## PROVISIONS GOVERNING DISTRIBUTIONS

### 6.1.    Distributions for Claims Allowed as of the Effective Date.  Except as otherwise provided in this Article VI, distributions of Cash to be made on the Effective Date to holders of Allowed Claims shall be deemed made on the Effective Date if made on the Effective Date or as soon thereafter as practicable, but in any event no later than: (i) thirty (30) days after the Effective Date; or (ii) with respect to any particular Claim, such later date when the applicable conditions of sections 8.3 and 8.4 (regarding Cure payments for executory contracts and unexpired leases being assumed) or section 6.4(c) (regarding undeliverable distributions), as applicable, are satisfied.  Distributions on account of Claims that become Allowed Claims after the Effective Date will be made pursuant to section 7.4 of the Plan.

6.2. <u>Prepayment Right.</u> The Debtors retain the right to prepay any Allowed Claim in their business judgment.

6.3. <u>Disbursements, Generally</u>. All distributions under the Plan shall be made by the Debtors or such other Person designated by them. All distributions under the Plan shall be made in accordance with the priorities established by the Plan. Any Cash payment to be made pursuant to the Plan may be made by check or wire transfer.

Distributions to the holders of Allowed Claims will be made as follows: (i) at the respective addresses set forth in the Schedules unless superseded by the address set forth on the proofs of claim filed by holders of Claims, or (ii) at the address set forth in any written notice of address change delivered to the Debtors after the date of filing of any proof of claim.

Returned or otherwise undeliverable Distributions will remain in the possession of the Debtors until such time as a distribution becomes deliverable. The Debtors may, but shall not be required to, take reasonable steps to attempt to deliver the distribution to the holder of the Allowed Claim. Any holder of an Allowed Claim that does not advise the Debtors that it has not received its, his or her distribution within one hundred and twenty (120) days after the date of attempted distribution will have its, his or her Claim for such undeliverable distribution discharged and will be forever barred from asserting any such Claim against the Debtors or their property. In such cases, undeliverable distributions will become the Debtors' property, free of any restrictions thereon

(a) <u>Timing of Distributions</u>. In the event any payment, distribution or act under the Plan is required to be made or performed on a date that is not a Business Day, then the making of such payment or distribution or the performance of such act may be completed on or as soon as reasonably practicable after the next succeeding Business Day, but shall be deemed to have been completed as of the required date.

6.4. <u>Setoffs</u>. The Debtors may, but shall not be required to, setoff against any Claim (for purposes of determining the Allowed amount of such Claim in respect of which distribution shall be made), any claims of any nature whatsoever that they may have against the holder of such Claim.


# ARTICLE VII

## <u>PROCEDURES FOR RESOLVING AND TREATING DISPUTED ADMINISTRATIVE EXPENSE CLAIMS AND CLAIMS</u>

7.1. <u>Objections to and Resolution of Administrative Expense Claims and Claims</u>.. Except as to applications for allowance of compensation and reimbursement of expenses under sections 330, 331 and 503 of the Bankruptcy Code, the Debtors shall, on and after the Effective Date, have the exclusive right to make and file objections to Administrative Expense Claims and Claims and shall have the authority to compromise, settle, otherwise resolve or withdraw any objections to Administrative Expense Claims and Claims and compromise,

settle or otherwise resolve Disputed Administrative Expense Claims and Disputed Claims without approval of the Bankruptcy Court.

Unless otherwise ordered by the Bankruptcy Court, the Debtors shall file all objections to Administrative Expense Claims and Claims that are the subject of proofs of claim or requests for payment filed with the Bankruptcy Court (other than applications for allowances of compensation and reimbursement of expenses), and serve such objections upon the holder of the Administrative Expense Claim or Claim as to which the objection is made as soon as is practicable, but in no event later than one hundred and twenty (120) days after the Effective Date, or such later date as may be approved by the Bankruptcy Court.

       7.2.    <u>No Distribution Pending Allowance</u>.  Notwithstanding any other provision of the Plan, no Cash shall be distributed under the Plan on account of any Disputed Claim unless and until such Claim is deemed Allowed.

       7.3.    <u>Estimation</u>.  The Debtors may, at any time, request that the Bankruptcy Court estimate any contingent or Disputed Claim pursuant to section 502(c) of the Bankruptcy Code regardless of whether they have previously objected to such Claim.  In the event the Bankruptcy Court estimates any contingent or Disputed Claim, the estimated amount may constitute a maximum limitation on such Claim, as determined by the Bankruptcy Court.  Notwithstanding this, the Debtors may elect to pursue any supplemental proceedings to object to the allowance and payment of such Claim.  All of the aforementioned Claims objection and estimation procedures are cumulative and not exclusive of one another.

## ARTICLE VIII

## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

       8.1.    <u>Assumption of Executory Contracts and Unexpired Leases</u>.  All executory contracts and unexpired leases that exist between the Debtors and any Person or Entity shall be deemed assumed by them on the Confirmation Date and effective as of the Effective Date, except for any executory contract or unexpired lease (i) that has been rejected pursuant to an order of the Bankruptcy Court entered prior to the Confirmation Date, (ii) as to which a motion for approval of the rejection of such executory contract or unexpired lease has been filed and served prior to the Confirmation Date or (iii) listed on Exhibit I hereto.

       8.2.    <u>Rejection of Certain Contracts</u>  Each contract and lease listed on Exhibit I to the Plan will be rejected only to the extent that any such contract or lease constitutes an executory contract or unexpired lease. The Debtors reserve the right, at any time on or prior to the Effective Date, to amend Exhibit I to the Plan to add or delete any contract or lease.  The Confirmation Order will constitute an order of the Bankruptcy Court approving the rejection of any executory contract or unexpired lease listed on Exhibit I to the Plan, <u>provided</u> <u>that</u> the Effective Date occurs.  Any Allowed Claims for rejection damages shall be included in Class 8 – Realty Unsecured Claims.

       8.3.    <u>Approval of Assumption of Executory Contracts and Unexpired Leases</u>.  Entry of the Confirmation Order shall, subject to and conditioned upon the occurrence

of the Effective Date, constitute the approval, pursuant to sections 365(a) and 1123(b)(2) of the Bankruptcy Code, of the assumption of the executory contracts and unexpired leases assumed pursuant to section 8.1 hereof, effective as of the Effective Date.

8.4.    Cure of Defaults.  Except as may otherwise be agreed to by the Debtors and the non-Debtor party to a particular contract or lease, any and all undisputed defaults under any executory contract or unexpired lease assumed by them shall be satisfied by Cure, in accordance with section 365(b)(1) of the Bankruptcy Code.  "Cure," with respect to an assumed executory contract or unexpired lease, means the distribution, within thirty (30) days after the Effective Date of Cash, or such other property as may be agreed upon by the Debtors and the non-Debtor party or ordered by the Bankruptcy Court, in an amount equal to all unpaid monetary obligations (without interest), to the extent such obligations are enforceable under applicable law, or such other amount as may be agreed upon by the parties.

The Debtors believe that there are no defaults with respect to any executory contracts and unexpired leases.

## ARTICLE IX

## MEANS FOR IMPLEMENTATION OF THE PLAN

9.1.    Funding of the Plan.  Cash payments required under the Plan may be funded from existing Cash balances on and after the Effective Date and cash flow from Realty's operations.

9.2.    Direction to Parties.  From and after the Effective Date, the Debtors may apply to the Bankruptcy Court for an order directing any necessary party to execute or deliver, or to join in the execution or delivery of, any instrument required to effect a transfer of property dealt with by the Plan, and to perform any other act, including the satisfaction of any Lien, that is necessary for the consummation of the Plan, pursuant to section 1142(b) of the Bankruptcy Code.

## ARTICLE X

## EFFECT OF CONFIRMATION OF PLAN

10.1.    Term of Bankruptcy Injunction or Stays.  Unless otherwise provided in the Confirmation Order, all injunctions or stays provided for in this case under sections 105 or 362 of the Bankruptcy Code, or otherwise, and in existence on the Confirmation Date, shall remain in full force and effect until the Effective Date.

10.2.    Causes of Action Reserved and Preserved.  As of the Effective Date, any and all Causes of Action, including, without limitation, avoidance actions accruing to the Debtors under Chapter 5 of the Bankruptcy Code, actions against former investors for turnover of unpaid accounts receivable, actions against former investors for an accounting of amounts paid, and potential claims for wrongful prosecution, which are listed on Exhibit E to the Plan, shall be reserved and preserved by, and for the benefit of, the Debtors.  To the extent that the Debtors recover any amounts with respect to these actions, the net amount recovered after the

costs of prosecution shall be distributed pro-rata to holders of Allowed Class 8, Allowed Class 10 and Allowed Class 11 claims on the next Distribution Date after the recovery of the proceeds.

      10.3.  <u>Discharge of Debtors</u>.  Except as may otherwise be provided in the Plan or Confirmation Order, the rights afforded and the payments and Distributions to be made and the treatment under the Plan will be in complete exchange for, and in full and unconditional settlement, satisfaction, discharge, and release of any and all existing debts and Claims of any kind, nature or description whatsoever against the Debtors and their assets, their property or their estates, and will effect a full and complete release, discharge, and termination of all Liens, security interests, or other claims, interests, or encumbrances upon all of the Debtors' assets and property.  Further, all Persons are precluded from asserting, against any property of the Debtors, or any Property that is to be distributed under the terms of the Plan, any Claims, obligations, rights, causes of action, or liabilities based upon any act, omission, transaction, or other activity of any kind or nature that occurred prior to the Effective Date, other than as expressly provided for in the Plan or Confirmation Order, whether or not the holder of a Claim based upon such debt has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

Mr. Roberts shall not receive a discharge under until an order is entered by the Court and after all payments have been made under this Plan, unless the Debtors file a motion pursuant to 11 U.S.C. 1141(5)(A) or (B) to seek discharge prior to completion of the Plan

      10.4.  <u>Injunction</u>. Except as may otherwise be provided in the Plan or Confirmation Order, all Persons who have held, hold or may hold Claims against the Debtors are, with respect to any such Claims, permanently enjoined from and after the Confirmation Date from taking any of the following actions (other than actions to enforce any rights or obligations under the Plan): (a) commencing, conducting or continuing in any manner, directly or indirectly, any suit, action or other proceeding of any kind (including, without limitation, any proceeding in a judicial, arbitral, administrative or other forum) against or affecting the Debtors or any of their property; (b) enforcing, levying, attaching (including, without limitation, any pre-judgment attachment), collecting or otherwise recovering by any manner or means, whether directly or indirectly, any judgment, award, decree or order against the Debtors or any of their property; (c) creating, perfecting or otherwise enforcing in any manner, directly or indirectly, any encumbrance of any kind against the Debtors or any of their property; or (d) prosecuting or otherwise asserting any right, claim or cause of action released pursuant to the Plan.

Except as otherwise specifically provided in the Plan, nothing in the Plan will be deemed to waive, limit, or restrict in any way the discharge granted to the Debtors upon Confirmation of the Plan by Section 1141 of the Bankruptcy Code.

      10.5.  <u>Comprehensive Settlement of Claims and Controversies</u>.  Pursuant to Bankruptcy Rule 9019 and in consideration for the distributions and other benefits provided under the Plan, the provisions of the Plan will constitute a good faith compromise and settlement of all claims or controversies relating to the rights that a holder of a Claim may have with respect to any Allowed Claim or any distribution to be made pursuant to the Plan on account of any Allowed Claim. The entry of the Confirmation Order will constitute the Bankruptcy Court's approval, as of the Effective Date, of the compromise or settlement of all such claims or controversies, and the Bankruptcy Court's finding that all such compromises or settlements are

in the best interests of the Debtors, their estate and the holders of Claims and are fair, equitable and reasonable.

10.6.  Binding Effect.  Subject to the occurrence of the Effective Date, on and after the Confirmation Date, the Plan shall be binding upon and inure to the benefit of the Debtors and the holders of Claims and their respective successors and assigns, whether or not the Claim of such holder is impaired under the Plan, whether or not such holder has accepted the Plan and whether or not such holder is entitled to a distribution under the Plan.

## ARTICLE XI

## EFFECTIVENESS OF THE PLAN

11.1.  Conditions Precedent to Confirmation.  The following are conditions precedent to the entry of the Confirmation Order, unless such conditions, or any of them, have been satisfied or duly waived pursuant to section 11.5 of the Plan:

(a)  The Confirmation Order is in form and substance reasonably satisfactory to the Debtors.

(b)  The Plan shall not have been materially amended, altered or modified from the Plan as filed on May 25, 2012, unless such material amendment, alteration or modification has been made in accordance with section 13.7 of the Plan.

(c)  All Exhibits to the Plan are in form and substance reasonably satisfactory to the Debtors.

11.2.  Conditions Precedent to Occurrence of Effective Date.  The following are conditions precedent to the occurrence of the Effective Date for the Plan, unless such conditions, or any of them, have been satisfied or duly waived pursuant to section 11.5 of the Plan:

(a)  The Bankruptcy Court shall have entered the Confirmation Order.

(b)  The Bankruptcy Court shall have entered an order (contemplated to be part of the Confirmation Order) approving and authorizing the Debtors to take all actions necessary or appropriate to implement the Plan, and all contracts, instruments, releases and other agreements or documents entered into or delivered in connection with the Plan.

(c)  No stay of the Confirmation Order shall then be in effect.

(d)  The Plan and all Exhibits to the Plan shall not have been materially amended, altered or modified from the Plan as confirmed by the Confirmation Order.

11.3.  Waiver of Conditions.  The conditions precedent to the entry of the Confirmation Order and to the occurrence of the Effective Date may be waived, in whole or in part, at any time by the written agreement of the Debtors without an order of the Bankruptcy Court.

# ARTICLE XII

## RETENTION OF JURISDICTION

12.1.   Jurisdiction of Bankruptcy Court.  The Bankruptcy Court shall retain jurisdiction of all matters arising out of, and related to, the Chapter 11 Cases and the Plan pursuant to, and for the purposes of, sections 105(a) and 1142 of the Bankruptcy Code and for, among other things, the following purposes:

(a)     To hear and determine pending applications for the assumption or rejection of executory contracts or unexpired leases, if any are pending, and the allowance of any Claims resulting therefrom;

(b)     To hear and determine any and all adversary proceedings, applications and contested matters, even if filed after confirmation of the Plan;

(c)     To hear and determine any objections to Administrative Expense Claims or Claims;

(d)     To enter and implement such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, revoked, modified or vacated;

(e)     To issue such orders in aid of execution and consummation of the Plan, to the extent authorized by section 1142 of the Bankruptcy Code;

(f)     To consider any amendments to or modifications of the Plan, to cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including, without limitation, the Confirmation Order;

(g)     To hear and determine all applications for compensation and reimbursement of expenses of professionals under sections 330, 331 and 503(b) of the Bankruptcy Code;

(h)     To hear and determine disputes arising in connection with the interpretation, implementation or enforcement of the Plan;

(i)     To recover all of the Debtors' assets and property of their estates, wherever located;

(j)     To hear and determine matters concerning state, local and federal taxes in accordance with sections 346, 505 and 1146 of the Bankruptcy Code;

(k)     To hear and determine any requests by the Debtors to sell any asset pursuant to section 363 of the Bankruptcy Code;

(l)     To hear any other matter not inconsistent with the Bankruptcy Code;

(m)     To hear and determine all actions pursuant to sections 105, 502, 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, and 553 of the Bankruptcy Code, any collection matters related thereto, and settlements thereof;

(n)     To hear and determine any disputes concerning quarterly fees owing or claimed to be owing to the office of the U.S. Trustee under 28 U.S.C. § 1930; and

(o)     To enter a final decree closing this cases.

## ARTICLE XIII

## MISCELLANEOUS PROVISIONS

13.1.     Effectuating Documents and Further Transactions. The Debtors are each authorized to execute, deliver, file or record such contracts, instruments, releases, indentures and other agreements or documents and to take such actions as may be necessary or appropriate to effectuate and further evidence the transactions set forth in, and the terms and conditions of, the Plan.

13.2.     Committee. On the Effective Date, any official committee and/or unofficial or ad hoc committees shall shall be dissolved and its members released and discharged of any further duties and responsibilities and the retention or employment of the such committee or committees' professionals shall also terminate, except that such committee or committees and their respective  professionals may prepare, file and seek approval of their respective applications for final allowances of compensation and reimbursement of expenses.Post Effective Date Fees and Expenses.  From and after the Effective Date, the Reorganized Debtors may, in the ordinary course of business and without the necessity of any approval by the Bankruptcy Court, pay the reasonable fees and expenses of professional persons incurred by the Debtors in connection with the implementation and consummation of the Plan, the reconciliation of Claims, the prosecution of Causes of Action, or any other matters as to which such professionals are employed.

13.4.     Payment of Statutory Fees. All fees payable pursuant to section 1930 of title 28 of the United States Code shall be paid on the Effective Date and the Debtors shall prepare and submit such post-confirmation reports as may be required.  The Debtors shall continue to remit to the office of the United States Trustee all appropriate post confirmation monthly reports/affidavits for all relevant time periods and shall continue to remit quarterly fee payments in full based on all disbursements for the relevant period(s) until the case is closed by order of the court.  To the extent any monthly reports/affidavits are not timely provided or fees are not paid in full, this case may be re-opened by the office of the United States Trustee to file such Motions or take such action as appropriate to be provided with such reports and paid any fees owed or due.

13.5.     Effect of Conversion.  In the event this case is converted to a chapter 7 case, all property of the Debtors shall re-vest in the converted estate.

13.6.     Amendment or Modification of the Plan.  Alterations, amendments or modifications of or to the Plan may be proposed in writing by the Debtors at any time prior to

the Confirmation Date, provided that the Plan, as altered, amended or modified, satisfies the conditions of sections 1122 and 1123 of the Bankruptcy Code, and the Debtors shall have complied with section 1125 of the Bankruptcy Code. The Plan may be altered, amended or modified by the Debtors at any time after the Confirmation Date and before substantial consummation, provided that the Plan, as altered, amended or modified, satisfies the requirements of sections 1122 and 1123 of the Bankruptcy Code, and the Bankruptcy Court, after notice and a hearing, confirms the Plan, as altered, amended or modified, under section 1129 of the Bankruptcy Code and the circumstances warrant such alterations, amendments or modifications. A holder of a Claim that has accepted the Plan shall be deemed to have accepted the Plan, as altered, amended or modified, if the proposed alteration, amendment or modification does not materially and adversely change the treatment of the Claim of such holder. Prior to the Effective Date, the Debtors may make appropriate technical adjustments and modifications to the Plan or the Disclosure Statement without further order or approval of the Bankruptcy Court, provided that such technical adjustments and modifications do not adversely affect in a material way the treatment of holders of Claims.

   13.7. <u>Severability</u>. In the event that the Bankruptcy Court determines, prior to the Confirmation Date, that any provision in the Plan is invalid, void or unenforceable, such provision shall be invalid, void or unenforceable with respect to the holder or holders of such Claims as to which the provision is determined to be invalid, void or unenforceable. The invalidity, voidness or unenforceability of any such provision shall in no way limit or affect the enforceability and operative effect of any other provision of the Plan and shall not require the re-solicitation of any acceptance or rejection of the Plan unless otherwise ordered by the Bankruptcy Court.

   13.8. <u>Revocation or Withdrawal of the Plan</u>. The Debtors reserve the right to revoke or withdraw the Plan prior to the Confirmation Date. If the Debtors revoke or withdraw the Plan prior to the Confirmation Date, then the Plan shall be deemed null and void. In such event, nothing contained herein shall constitute or be deemed a waiver or release of any claims by or against the Debtors or any other Person or Entity or to prejudice in any manner the rights of the Debtors or any Person or Entity in any further proceedings involving the Debtors.

   13.9. <u>Notices</u>. All notices, requests and demands to or upon the Debtors to be effective shall be in writing and, unless otherwise expressly provided herein, shall be deemed to have been duly given or made when actually delivered or, in the case of notice by facsimile transmission, when received and telephonically confirmed, addressed as follows:

   *If to the Debtors:*

   12900 Hall Rd., Suite 190
   Sterling Heights, MI 48313

   *with a copy to:*

Hannah Mufson McCollum
Gold, Lange & Majoros, P.C.
24901 Northwestern Hwy., Suite 444
Southfield, MI 48075
Facsimile: 248-350-0519

13.10. <u>Governing Law</u>. Except to the extent the Bankruptcy Code, Bankruptcy Rules or other federal law is applicable, or to the extent any exhibit to the Plan provides otherwise, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Michigan, without giving effect to the principles of conflicts of law of such jurisdiction.

13.11. <u>Withholding and Reporting Requirements</u>. In connection with the consummation of the Plan, the Debtors shall comply with all withholding and reporting requirements imposed by any federal, state, local or foreign taxing authority and all distributions hereunder shall be subject to any such withholding and reporting requirements.

13.12. <u>Headings</u>. Headings are used in the Plan for convenience and reference only, and shall not constitute a part of the Plan for any other purpose.

13.13. <u>Exhibits</u>. All exhibits to the Plan are incorporated into and are a part of the Plan as if set forth in full herein.

13.14. <u>Filing of Additional Documents</u>. On or before confirmation of the Plan, the Debtors shall file with the Bankruptcy Court such agreements and other documents, if any, as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

13.15. <u>Plan Controls</u>. To the extent the Plan is inconsistent with the Disclosure Statement, the provisions of the Plan shall be controlling.

13.16. <u>Section 1125(e) of the Bankruptcy Code</u>. The Debtors have, and upon confirmation of the Plan shall be deemed to have, solicited acceptances of the Plan in good faith and in compliance with the applicable provisions of the Bankruptcy Code.

13.17. <u>Return of Security Deposits</u>. Unless the Debtors have agreed otherwise in a written agreement or stipulation approved by the Bankruptcy Court, all security deposits provided by the Debtors to any Person or Entity at any time after the Commencement Date shall be returned to the Debtors within twenty (20) days after the Effective Date, without deduction or offset of any kind.

13.18. <u>Bar Date for Administrative Expense Claims</u>. The Confirmation Order will establish a bar date for Administrative Expense Claims other than for Administrative Expense Claims for professional compensation and reimbursement of expenses of professionals. Holders of Allowed Administrative Expense Claims not paid prior to the Effective Date shall submit proofs of claim on or before such bar date or be forever barred from doing so. The notice of confirmation delivered pursuant to Bankruptcy Rules 3020(c) and 2002(f) will set forth such date and constitute notice of the bar date for Administrative Expense Claims. The Debtors shall

-24-

have thirty (30) days or such longer period as may be allowed by order of the Bankruptcy Court to review and object to such Administrative Expense Claims before a hearing for determination and allowance of such Administrative Expense Claims. This paragraph does not apply to any amounts that may be owed to the Office of the United States Trustee.

     13.19. <u>Tax Liability</u>. The Debtors are hereby authorized to request an expedited determination under section 505(b) of the Bankruptcy Code of any tax liability for all taxable periods ending after the Commencement Date through and including the Effective Date.

     13.20. <u>Time</u>. In computing any period of time prescribed or allowed by the Plan, unless otherwise set forth herein or determined by the Bankruptcy Court, the provisions of Bankruptcy Rule 9006 shall apply.

Dated: June 13, 2012

          RALPH ROBERTS REALTY, LLC
          BY: Ralph R. Roberts
          ITS: President

          -and-

          Ralph R. Roberts

**IN THE UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| RALPH ROBERTS REALTY, LLC, *et al.*[1] | ) | Case No. 12-53023 |
| | ) | (Jointly Administered) |
| | ) | |
| Debtors. | ) | Judge Thomas J. Tucker |
| | ) | |

**FIRST AMENDED DISCLOSURE STATEMENT OF**
**RALPH ROBERTS REALTY, LLC AND RALPH R. ROBERTS UNDER CHAPTER 11**
**OF THE BANKRUPTCY CODE**

---

[1] This case is jointly administered with the case of Ralph R. Roberts, Case No. 12-53024.

# TABLE OF CONTENTS

Page

I.     INTRODUCTION ............................................................2

       A.     General..............................................................2

II.    BACKGROUND AND OPERATIONS OF THE DEBTORS..............................2

       A.     Background of the Debtors ........................................2

       B.     Compensation/Income and Post-Confirmation Income...............5

       C.     Nature of Case and Events Leading to Chapter 11 Filing ........5

III.   SIGNIFICANT POST-PETITION ACTIONS ......................................5

       A.     First Day Motions and Cash Collateral Use ....................5

       B.     Retention of Professionals ....................................6

       C.     Case Administration............................................6

              1.     Bar Date ...............................................6

       D.     Post Petition Transfers Outside of the Ordinary Course.........6

       E.     Post-Petition Litigation ......................................6

       F.     Other Assets and Income .......................................7

       G.     General Liabilities............................................7

IV.    ASSETS AND LIABILITIES..................................................7

       A.     Liquidation Analysis............................................7

       B.     Long-Term Debt Obligations.....................................8

       C.     Guaranteed Debt ...............................................8

       D.     Priority Debt..................................................8

       E.     Unsecured Debt.................................................8

       F.     Section 503(b)(9) Administrative Expense Claims ...............8

G.     Causes of Action .......................................................8

       1.     Chapter 5 Claims...............................................9

       H.     Pending Litigation.............................................9

V.     IMPLEMENTATION OF THE PLAN .............................................10

A.     Prepetition Financial Information ......................................10

B.       Post-Petition Financial Information ...................................................................10

C.       Plan Projections ................................................................................................10

D.       Tax Ramifications .............................................................................................11

    1.       U.S. Federal Income Tax Consequences to the Debtors............................11

        a.       Cancellation of Debt Income ..........................................................11

    2.       U.S. Federal Income Tax Consequences to Holders of Certain Claims ....12

        a.       Distributions in Discharge of Accrued But Unpaid Interest ..........12

    3.       Importance of Obtaining Professional Tax Advice ...................................12

VI.      LEGAL REQUIREMENTS........................................................................................13

    A.       Required Information .........................................................................................13

        1.       Voting Procedures .........................................................................13
        2.       Acceptance....................................................................................13
        3.       Confirmation..................................................................................14
        4.       Modification...................................................................................14
        5.       Effect of confirmation....................................................................14
        7.       Waivers of Defects, Irregularities, Etc...........................................15
        8.       Withdrawal of Ballots; Revocation.................................................16
        9.       Further Information; Additional Copies ..........................................16

VII.     CONFIRMATION OF THE PLAN............................................................................16

    A.       Acceptance........................................................................................................16

    B.       Best Interests Test ............................................................................................17

    C.       Nonconsensual Confirmation............................................................................17

    D.       Feasibility.........................................................................................................19

VIII.    ALTERNATIVES  TO  CONFIRMATION  AND  CONSUMMATION  OF
         THE PLAN ...............................................................................................................19

    A.       Liquidation Under Chapter 7 ............................................................................19

    B.       Alternative Plan of Reorganization...................................................................19

IX.      CERTAIN FACTORS TO BE CONSIDERED .......................................................20

    A.       Risks of Bankruptcy..........................................................................................20

        1.       Objection to Classifications ...........................................................20
        2.       Risk of Non-Confirmation of the Plan............................................20

    B.       Risks Associated with the Reorganization.........................................................20

      C.      Risks Relating to Cash for Plan Distributions ...........................................20

X.      CONCLUSION.......................................................................................................20

**DISCLOSURE STATEMENT**

I.      INTRODUCTION

        A.  General

The purpose of this first amended disclosure statement (the "Disclosure Statement") is to provide holders of all Claims against the Debtors with adequate information, within the meaning of Section 1125(a) and 1126 of the Bankruptcy Code, of a kind, and in sufficient detail, to make an informed judgment about the first amended joint chapter 11 plan of reorganization submitted to the Bankruptcy Court on June 14, 2012 (the "Plan") by Ralph Roberts Realty, LLC ("Realty") and Ralph R. Roberts (each individually referred to as a "Debtor" and collectively, as the "Debtors").  A copy of the Plan is attached hereto as Exhibit A.  Capitalized terms not otherwise defined herein have the meanings ascribed to them in the Plan.

The Debtors are debtors and debtors-in-possession in this case under Chapter 11 of the Bankruptcy Code.  The Debtors are reorganizing pursuant to Sections 1107 and 1108 of the Bankruptcy Code and are soliciting votes to accept or reject the Plan.  The Debtors believe that acceptance of the Plan is in the best interests of all holders of Claims against them.

HOLDERS OF CLAIMS AGAINST THE DEBTORS SHOULD READ THIS DISCLOSURE STATEMENT AND THE PLAN, TOGETHER WITH THE EXHIBITS, IN THEIR ENTIRETY BEFORE VOTING ON THE PLAN.

II.     BACKGROUND AND OPERATIONS OF THE DEBTORS

        A.  Background of the Debtors

Realty is a Michigan Limited Liability Company, which was organized in March of 2005.  Mr. Roberts is an individual debtor under Chapter 11.  Realty is owned 20% by Mr. Roberts and 80% by Rowland Family, LLC, which itself is owned 32.5% by Mr. Roberts, 47.5% by Kathleen Roberts, Mr. Roberts' wife, 10% by Mr. Roberts' two minor children and 10% by Lois Maljack and Jeffrey Roberts.  Further, Mr. Roberts is owed approximately $1,000,000 by Realty on account of past unpaid commissions and loans made to Realty, and also has the right to make future claims against Realty on account of future commission.

Mr. Roberts has been selling real estate since the late 1970s.  Mr. Roberts started working at Fox Brothers Real Estate in Centerline, Michigan.  During the next several years, Mr. Roberts worked at various real estate companies and listed and sold hundreds of properties.  Mr. Roberts then started working for Earl Keim in Warren in 1985.  In 1986, Mr. Roberts went to Earl Keim in Madison Heights, and then in late 1986, joined Re/MaxProperties in Warren.  After several successful years at Re/Max, the owners stopped paying payroll taxes, which caused all of the accounts to be frozen and made it impossible for its agents, including Mr. Roberts to be paid.  As a result, Mr. Roberts himself paid the past due taxes and a short time afterwards, purchased the company.

After several years, Mr. Roberts left the Re/Max franchise and opened Ralph R. Roberts Real Estate, Inc. ("Real Estate") in 1991.  Over several years, Mr. Roberts added a title company and

a mortgage company to Real Estate's affiliate companies. Mr. Roberts also implemented a business model wherein Real Estate would use funds lent by private investors (the "Private Investors") at high interest rates to purchase property. Once the purchased property was either re-sold, sold on land contract, or renovated, Real Estate would then repay the Private Investors using the proceeds of Real Estate's secured credit facility, which was syndicated among several banks. This greatly reduced the interest rate that Real Estate was paying, while still allowing the bank syndicate to retain the properties as collateral. Over the course of the life of this business model, which Real Estate used from approximately 1991 to 2001, the Private Investors were paid millions of dollars as a result of the real estate boom that occurred during that time.

However, in 2001, Real Estate began to experience financial and political problems, which began when one of Real Estate's agents informed Mr. Roberts that her brother had been wrongly convicted of rape, and asking Mr. Roberts if there was anything he could do. Mr. Roberts met with Mr. Paul Pash, the former police chief of Warren, and Mr. Carl Marlinga, the former prosecutor for the City of Warren, and Mr. Marlinga agreed to re-open the case. However, Mr. Marlinga was in the midst of a run for a Michigan senate seat, and his opponent, Ms. Candace Miller, as a campaign tactic, accused Mr. Roberts of giving money to Mr. Marlinga to reopen the rape case. These allegations were reported by the Detroit Free Press in 2002. In February of 2003, the FBI raided Mr. Roberts' office and his personal residence and Mr. Roberts was formally indicted in June of 2004. The indictment caused Real Estate's investors, including a number of banks, to become skittish about future investments and begin demanding immediate repayment of current investments.

The entire incident was manufactured for the political gain of Mr. Marlinga's opponents. Mr. Roberts' case was dismissed in June of 2005 at the request of the government and Mr. Marlinga was found not guilty by a jury. Further, after a 2003 retrial, Mr. Jeffery Moldowan was acquitted, after the sole eyewitness recanted her testimony and the expert witness was found not to be credible.[2] Unfortunately, although the charges were dropped and Mr. Roberts was completely exonerated, the damage done was substantial. While the charges against Mr. Roberts were pending, Real Estate's syndicate bank investors required forced place life insurance from Mr. Roberts at a staggering cost, and also replaced Mr. Roberts with a temporary manager for Real Estate. The temporary manager reported directly to the syndicate banks, and all of Real Estate's employees reported to the temporary manager. This caused tremendous stress to Real Estate's employees, business disruptions and loss of investor and client confidences. The banks, interested only in reducing their exposure, simply exacerbated the problem.

After all charges against Mr. Roberts were dropped, he once again took control of Real Estate, but Real Estate was cash-flow negative, had lost most of its investors and client base, and was facing increasingly strident demands for repayment from private investors.

Just as Mr. Roberts was beginning to recover from the needless trauma of his indictment, Mr. Roberts suffered a crushing blow when his daughter died in May, 2006 at the age of 18. Mr. Roberts was unable, for a period of time, to carry on the business, and Realty generated almost

---

[2] Mr. Moldowan was also awarded a $2.8 million judgment for wrongful prosecution.

no income during that period. At the same time as this tragedy, Real Estate's former Private Investors began a targeted, persistent and harassing drive to force Mr. Roberts, Real Estate or Realty to pay them the full amount they alleged to be owed to them.

In September, 2007, Mr. Roberts reached a settlement agreement with Real Estate's syndicate bank investors. Mr. Roberts agreed to formally shut down Real Estate as well as its associated companies and repay the syndicate banks over time. Mr. Roberts then began operating Realty, which he had founded in 2005, in order to give investors and clients distance from Real Estate's financial distress and increased confidence in Realty's new business model.

Also, as a condition of this settlement, Mr. Roberts entered into a settlement agreement with the Private Investors. These agreements were based on assumptions that the real estate market, which had been growing exponentially for several years, would continue on its growth trajectory.

However, in 2008, the real estate market in Michigan, more so than in the rest of the country, suffered a sudden and devastating collapse. Rather than appreciating, most real estate lost 50% or more of its value, and real estate sales tumbled to record lows. As a result, Realty had virtually no sales and no income. Neither Realty nor Mr. Roberts had the cash flow to fund all required payments and all required conditions of the settlement agreement with the Private Investors. Further, Mr. Roberts, who owned a house on Lake St. Clair, defaulted on its mortgage, as a result of his poor cash flow.

In 2009, Mr. Roberts developed a new business model based on the underbidding by banks at foreclosure sales. This underbidding, which was frequently tens of thousands of dollars below both the amount owed on the foreclosed properties, as well as the fair market value of the properties themselves, allowed Mr. Roberts and Realty to begin to return to profitability through the sale of real estate during the redemption period. However, this was insufficient to return Realty to profitability, and it continued to report negative net income - $135,000 in negative income in 2009, $188,000 in negative net income in 2010 and $398,000 of negative net income in 2011.[3]

Throughout this period, Mr. Roberts continued to attempt to negotiate with the Private Investors to work out a viable repayment plan based on Mr. Roberts' new business model. The Private Investors, however, apparently more motivated by personal grudges, accused Mr. Roberts of selling his Lake St. Clair house at a profit (despite proof that the lender accepted a short sale and forgave a significant deficiency) spending too much money on his daughter's funeral, of hiding and dissipating assets, and of other unspecified and unsubstantiated "bad acts". This refusal to rationally negotiate culminated in the filing of a complaint against Mr. Roberts in February of 2011.

After the complaint was filed, Mr. Roberts continued his attempts to negotiate a rational repayment plan, all of which were rejected. After a series of increasingly invasive and irrelevant discovery requests and more than $90,000 in legal fees, Mr. Roberts and Realty filed for

---

[3] This negative net income reflects commissions earned, but not paid to, Mr. Roberts in the approximate amount of $500,000. If these are removed, Realty shows a modest profit of approximately $105,000.

bankruptcy protection in order to rationally deal with the problematic legacy debt represented by the Private Investors.

      B.  <u>Compensation/Income and Post-Confirmation Income</u>

The Debtors have attached financial projections, which demonstrate that the Debtors believe that Realty will show, over the next five years, a modest profit each year. This is due in part to the Debtors' belief that the real estate market is slowly rebounding, but is also due to Mr. Roberts' foregiveness of his right to unpaid commissions and repayment of capital contributions (both pre- and post-petition). As well as projected income from Realty's operations, Mr. Roberts will devote all of his projected monthly disposable income to the repayment of creditors through the Plan.

Pre-petition, Mr. Roberts was paid $117,400 in salary. Mr. Roberts, although entitled to one-half of the commissions on properties sold by Realty, has not been paid these commissions since 2007. The total accrued but unpaid amounts equal approximately $1.35 million. Mr. Roberts received no other fringe benefits, such as car or insurance allowances pre-petition.

Post-petition, Mr. Roberts is entitled to a salary of $125,000 for 2011. Mr. Roberts is not entitled to any commissions, car allowances, insurance allowances, or any other "fringe benefits" that are customary for executives of companies. Mr. Roberts is entitled to participate in Realty's 401(k) plan, which provides a 3% match. Mr. Roberts pays for his own medical insurance, at the cost of approximately $20,000 per year.

Post-confirmation, Mr. Roberts will continue to receive his salary, which will be increased to $130,000 for 2012, $135,000 for 2013, $140,000 for 2014 and $145,000 for 2015. Mr. Roberts will receive no other income from Realty.

      C.  <u>Nature of Case and Events Leading to Chapter 11 Filing</u>

Prior to the Petition Date, as described above, the Debtors attempted to settle with the Private Investors. These settlement attempts were ultimately unsuccessful, and forced the Debtors to file for bankruptcy to propose a rational repayment plan.


III.    SIGNIFICANT POST-PETITION ACTIONS

The Debtors filed this chapter 11 case on May 25, 2012, and the following significant actions have taken place between that date and the date of filing this amended Plan:

      A.  <u>First Day Motions and Cash Collateral Use</u>

The Debtors filed the Plan and this Disclosure Statement on the Petition Date. Concurrently, the Debtors also filed a motion to set a chapter 11 status conference to establish dates and deadlines with respect to voting on the Plan and the setting of a confirmation hearing. The Debtors did not file a first day motion to use cash collateral or seek approval for debtor-in-possession financing. First, the Debtors have no secured creditor with a lien on all assets and therefore did not require

permission to use cash collateral. Second, the Debtors believe that they will have sufficient cash flow to make all post-petition payments to administrative creditors as well as payments required under the proposed Plan, and therefore did not request court approval for debtor-in-possession financing. Therefore, there are no cash collateral, post-petition financing, or adequate protection orders entered in these Chapter 11 Cases.

B. Retention of Professionals

To represent them in this chapter 11 case, the Debtors retained Gold, Lange & Majoros, P.C. as bankruptcy counsel, and will shortly be filing an application seeking Bankruptcy Court approval of that retention. Similarly, the Debtors have also retained Sirianni & Company PLLC as accountants, and will shortly be filing an application seeking Bankruptcy Court approval of that retention. The Debtors anticipate retaining O'Reilly Rancilio as special contracts counsel to assist with management of investor contracts. The Debtors will also be retaining Robert A. Novak PLLC and Schienke Staugaard & Hearsch to assist with eviction proceedings for which Realty acts as a property manager. Finally, the Debtors anticipate retaining Wolfe Law Group PLLC to assist with litigation associated with investor-owned properties, such as collections, evictions, and land contract forfeitures.

C. Case Administration

1. *Bar Date*

As of the date of filing of this Disclosure Statement, the Clerk of the Court has not yet established the deadline for all non-governmental creditors, including holders of claims under Section 503(b)(9) of the Bankruptcy Code, to file a proof of claim against the Debtors' estate.

D. Post Petition Transfers Outside of the Ordinary Course

The Debtors have made no post-petition transfers outside of the ordinary course.

E. Post-Petition Litigation

The Debtors have engaged in no post-petition litigation. However, the Debtors have claims and causes of action against former investors for failure to pay Realty its share of the profits from sold houses. The Debtors believe that the amount of money owed is approximately $250,000, and is owed by a number of different investors, although only Jon Savoy, Butch Hassig and Dennis Stevens owe the Debtors significant amounts. The Debtors plan to file adversary proceedings to collect these accounts receivable within 45 days. The Debtors also have a potential cause of action against Charles Ferarolis, *et al.*, the current plaintiffs in the Macomb County litigation brought by the Former Investors for failure to provide an accounting of amounts paid and amounts applied to interest and principal, potential misapplication of payments, and wrongful refusal to apply appropriate setoffs against principal. The Debtors continue to investigate this cause of action.

F.  Other Assets and Income

As discussed above, the Debtors have very few assets.  The Debtors' significant assets are their ability to generate cash from business operations as a result of Mr. Roberts' talents as a real estate broker and professional.  As noted above, Realty owns approximately $300,000 in past-due accounts receivable from various investors, approximately $60,000 in current accounts receivable from investors, office fixtures, furniture, electronics and other office equipment, including a leased copier and postage machine, and a minimal amount of cash.  Mr. Roberts owns a 2012 Yukon subject to a security agreement, retirement accounts with an approximate aggregate value of $350,000, interests in several non-operating businesses and holding companies, and a right of setoff against claims held by the Private Investors in a no-longer-operating prior business.  Mr. Roberts does not believe that he will be entitled to a tax refund.

Realty also holds net operating loss carryforwards as a result of ongoing losses.

The Debtors own no other significant assets, and anticipate that their ability to fund payments called for under the Plan will derive from cash flow generated by normal business operations.

G.  General Liabilities

Mr. Roberts is obligated to JPMorgan Chase Bank, N.A. with respect to a second mortgage on property located at 18299 Tara Drive, Clinton Township, Michigan, 48036.  Mr. Roberts does not own the Tara Drive property, and is not obligated with respect to the first mortgage on that property.  As set forth in the attached projections, Mr. Roberts will make payments on the second mortgage, as the non-debtor owner of the property intends to retain it, and it is where Mr. Roberts resides, as well as contributing to the payment of taxes and upkeep. Mr. Roberts is also obligated with respect to a financing agreement with Ally Financial on his vehicle, a 2012 GMC Yukon.  Finally, Mr. Roberts has approximately $200,000 of unsecured debt relating to credit cards and legal fees, and approximately $7.5 million dollars of unsecured debt related to obligations of Realty and other business entities that Mr. Roberts personally guaranteed.  As well as general unsecured claims in the approximate amount of $200,000 with respect to prepetition legal fees, Realty is obligated to current investors in the approximate amount of $50,000, and Realty is also obligated in the approximate amount of $2,900.00 per month to its landlord for office space, as well as for general ordinary course business expenses.

IV.  ASSETS AND LIABILITIES

A.  Liquidation Analysis.

The Debtors have prepared the following liquidation analysis.  The liquidation analysis assumes that the full fair market value of all assets will be obtained, the proceeds will be pooled, and the costs of liquidation will be subtracted from the pool.  Costs of liquidation include payment of the past-due real estate taxes, brokers' commissions, transfer taxes and other sale fees, and an estimate of the applicable legal fees.

**RALPH ROBERTS AND RALPH ROBERTS REALTY - LIQUIDATION ANALYSIS**

25-May-12

**Assets**

|  |  | Secured Creditor | Amount of Secured Claim |  |
|---|---|---|---|---|
| Cash and checking accounts |  |  |  | $80,000 |
| Interests in Businesses |  |  |  |  |
|  | Barrington Real Estate, LLC |  |  | - |
|  | Nail Construction, LLC |  |  | $100 |
|  | Rowland Family, LLC |  |  | $100 |
|  | R.R.R. Productions, LLC |  |  | - |
| Accounts receivable |  |  |  | $300,000 |
| Books |  |  |  | $7,500 |
| Copyright and royalty interests |  |  |  | $30,000 |
| Giant Nail |  |  |  | $3,000 |
| Office furniture and equipment |  |  |  | $5,000 |
| Cash Value Life Insurance |  |  |  | $50,000 |
| Preference recoveries |  |  |  | $0 |
| Fraudulent transfer recoveries |  |  |  | $0 |
| GMC Yukon |  | Ally Financial | $55,000 | $50,000 |
|  |  |  | **Total Assets** | **$525,700** |

**Liabilities:**

|  |  |  | |
|---|---|---|---|
| Secured: | Ally Financial |  | $55,000 |
|  | JPMorgan Chase Bank (second mortgage on property not owned by Debtors) |  | $81,663 |
|  | Current secured investors |  | $50,000 |
| Liquidation Costs: | Liquidation costs (fees, commissions) |  | $8,000 |
|  | Legal |  | $10,000 |
| Unsecured Claims: | Ralph R. Roberts |  | $7,500,000 |
|  | Ralph Roberts Realty |  | $125,000 |
|  |  | **Total Liabilities:** | **$7,829,663** |
|  |  | **Net Deficit:** | **-$7,303,963** |

B. Long-Term Debt Obligations

As of the Petition Date, Realty was generally obligated to pay debts generated in the ordinary course of its business. Realty was also obligated with respect to unsecured debts arising primarily out of legal fees in the approximate amount of $76,000. Mr. Roberts, as of the Petition Date, was obligated to the Private Investors, the settling banks, and other settling parties in the approximate amount of $7.5 million and is further obligated to unsecured trade creditors in the approximate amount of $200,000. Mr. Roberts is also obligated to Ally Financial in the approximate amount of $55,000 with respect to a 2012 GMC Yukon, which claim is secured.

C. Guaranteed Debt

As noted above, Mr. Roberts has personally guaranteed the settlement debts arising from the operation of Real Estate. Mr. Roberts has also guaranteed the debt of Maplelane Homes, Inc. Realty is not obligated with respect to that debt. The Debtors are original obligors on the debts listed on their respective schedules.

D. Priority Debt

The Debtors are not aware of any outstanding priority debt.

E. Unsecured Debt

As described above, Mr. Roberts estimates that he has approximately $6.6 million in general unsecured debt, including trade debt. Realty estimates that it has approximately $76,000 in unsecured debt. These claims may be subject to disallowance or reduction.

F. Section 503(b)(9) Administrative Expense Claims

Under Section 503(b)(9) of the Bankruptcy Code, a claim for payment for goods shipped to a debtor in the twenty days *before* the commencement of a bankruptcy case may be entitled to priority status as an administrative expense claim. The Debtors are unaware of any potential Section 503(b)(9) claims in this case.

G. Causes of Action

Section 10.2 of the Plan provides that, as of the Effective Date, any and all Causes of Action, including, without limitation, avoidance actions accruing to the Debtors under Chapter 5 of the Bankruptcy Code and all actions listed in Exhibit IV to the Plan, shall be reserved and preserved by, and for the benefit of, the Debtors and the proceeds of such Causes of Action shall be retained by the Debtors.

1. <u>Chapter 5 Claims</u>

In the 90 days before the Petition Date, Realty made $55,348.30 in potentially preferential payments. In the 90 days before bankruptcy, Mr. Roberts made $0.00 in potentially preferential payments. These payments may be subject to statutory and other defenses.

In the one year immediately preceding the bankruptcy filing, Realty made $60,380.00 in payments to "insiders" (as defined in Section 101(31) of the Bankruptcy Code). In the one year immediately preceding the bankruptcy filing, Mr. Roberts made no payments to "insiders". The payments made by Realty may be subject to statutory and other defenses.

Additionally, as set forth in more detail on <u>Exhibit E</u>, the Debtors possess causes of action for turnover of unpaid accounts receivable against a number of former investors, which the Debtors reserve the right to pursue.

H. <u>Pending Litigation</u>

There are several piece of litigation currently pending against the Debtors. The first arises out of the Private Investors' February, 2011 lawsuit, filed in Macomb County Circuit Court, captioned *Charles Ferarolis, et al.* v. *Ralph R. Roberts et al.*, case no. 2011-0782-CK. The events leading to this litigation are described in detail above.

The second piece of litigation is captioned Bryan Legree v. Jerone Turner, Marchie Turner, Chris Kayne, and Ralph Roberts Realty, Case No. 11-4713, currently pending in removal proceedings in front of the Bankruptcy Court in adversary case no. 11-07001. Mr. Legree, a debtor in bankruptcy, sued Mr. & Mrs. Turner, the buyers of his house, Mr. Kayne, an agent of Realty, and Realty itself. Mr. Legree alleged that the Turners, Mr. Kayne and Realty constructively evicted him from his home. Realty filed a notice of removal of the litigation, alleging that the matter was not properly in front of the state court as it concerned a professional appointed by the bankruptcy court and employed by Mr. Legree's bankruptcy trustee, and involved a bankruptcy-court authorized sale of the property, which was not his residence. The removal proceeding has been argued, and is pending a determination by the bankruptcy court.

The third piece of litigation is captioned LeVasseur Dyer & Associates, P.C. v Ralph Roberts, Case No. 12-0164, currently pending in the 45th District Court for the State of Michigan (Berkley) and is a civil action against Mr. Roberts for the collection of approximately $7,800 in legal fees. As of the Petition Date, this action was pending.

Finally, Realty is currently the plaintiff in a number of eviction and land contract forefeiture actions in Macomb County District Court and Oakland County District Court on behalf of current investors for which it acts as a property manager. Any funds or properties recovered are not the property of Realty or Mr. Roberts and will be turned over to the respective property owner. These actions are disclosed in Realty's schedules out of an abundance of caution.

V.      IMPLEMENTATION OF THE PLAN

    A.  <u>Prepetition Financial Information</u>

Tax returns for 2009, 2010 and 2011, which detail the Debtors' income and expenses for those taxable years, are attached as <u>Exhibit F</u>.  Additionally, the Debtors have prepared summary financial statements for 2009, 2010 and 2011, which are also attached as <u>Exhibit F</u>.

    B.  <u>Post-Petition Financial Information</u>

Because the Plan and this Disclosure Statement are being filed on the Petition Date, the Debtors do not have any post-petition periods for which to prepare financial statements.  The Debtors acknowledge the United States Trustee operating requirements and reporting deadlines, and will file their required monthly operating reports in a timely fashion.

    C.  <u>Plan Projections</u>

The Debtors believe that the following projections are a reasonable estimation of their anticipated income as well as their ongoing expenses.

RALPH ROBERTS REALTY, LLC
PROJECTIONS
FOR ALL PLAN YEARS

|  | YEAR 1 | YEAR 2 | YEAR 3 | YEAR 4 | YEAR 5 |
|---|---|---|---|---|---|
| **REVENUES** | | | | | |
| COMMISSION INCOME & FEES | $ 950,000 | $ 1,050,000 | $ 1,200,000 | $ 1,300,000 | $ 1,400,000 |
| PROPERTY ACQUISITION FEES | 250,000 | 250,000 | 250,000 | 200,000 | 200,000 |
| PROPERTY EQUITY INCOME | 150,000 | 250,000 | 400,000 | 550,000 | 650,000 |
|  | 1,350,000 | 1,550,000 | 1,850,000 | 2,050,000 | 2,250,000 |
| **DISBURSEMENTS** | | | | | |
| ADVERTISING & PROMOTION | 30,000 | 35,004 | 39,996 | 45,000 | 50,004 |
| AUTOMOTIVE EXPENSES | 24,000 | 26,004 | 27,996 | 30,000 | 32,004 |
| BANKRUPTCY DEPT. EXPENSES | 30,000 | 39,996 | 50,004 | 60,000 | 69,996 |
| FORECLOSURE DEPT. EXPENSES | 24,996 | 30,000 | 35,004 | 39,996 | 45,000 |
| COMMISSIONS - RALPH ROBERTS | - | - | - | - | - |
| COMMISSIONS - OTHERS | 380,004 | 420,000 | 480,000 | 519,996 | 560,004 |
| INSURANCE | 24,000 | 27,996 | 32,004 | 36,000 | 39,996 |
| MEALS & ENTERTAINMENT | 18,000 | 21,000 | 23,004 | 24,996 | 27,000 |
| OFFICE SUPPLIES & EXPENSES | 110,004 | 129,996 | 150,000 | 170,004 | 189,996 |
| OUTSIDE SERVICES | 45,000 | 50,004 | 54,996 | 60,000 | 64,992 |
| PAYROLL - RALPH ROBERTS | 125,004 | 129,996 | 135,000 | 140,000 | 144,996 |
| PAYROLL - OTHERS | 275,004 | 324,996 | 375,000 | 425,004 | 474,996 |
| PAYROLL AND OTHER TAXES | 48,996 | 56,004 | 62,004 | 68,004 | 74,004 |
| PROFESSIONAL FEES | 95,004 | 45,000 | 50,000 | 54,996 | 60,000 |
| RENT | 38,004 | 39,000 | 39,996 | 40,992 | 42,000 |
| TELEPHONE & UTILITIES | 12,000 | 14,004 | 15,996 | 18,000 | 20,004 |
|  | 1,280,016 | 1,389,000 | 1,571,004 | 1,732,992 | 1,894,992 |
| **NET OPERATING INCOME** | $ 69,984 | $ 161,000 | $ 278,996 | $ 317,008 | $ 355,008 |
| **RALPH R. ROBERTS DISPOSABLE INCOME** | $ 2,892 | $ 2,500 | $ 996 | $ 2,492 | $ 2,776 |
| **TOTAL INCOME FOR PLAN PAYMENTS** | $ 72,876 | $ 163,500 | $ 279,992 | $ 319,500 | $ 357,784 |
| **PAYMENTS UNDER THE PLAN:** | | | | | |
| Class 1 | $1,164 | $1,164 | $1,164 | $1,164 | $1,164 |
| Class 2 | $1,164 | $1,164 | $1,164 | $1,164 | $1,164 |
| Class 3 | $576 | $576 | $576 | $576 | $576 |
| Class 4 | $1,164 | $1,164 | $1,164 | $1,164 | $1,164 |
| Class 5 | $1,164 | $1,164 | $1,164 | $1,164 | $1,164 |
| Class 6 | $1,164 | $1,164 | $1,164 | $1,164 | $1,164 |
| Class 7 | $4,644 | $4,644 | $4,644 | $4,644 | $4,644 |
| Class 8, 10 & 11 | $48,892 | $140,500 | $256,996 | $296,492 | $334,776 |
| Class 9 | $9,135 | $9,135 | $9,135 | $9,135 | $9,135 |
| Class 12 | $0 | $0 | $0 | $0 | $0 |
| **NET INCOME:** | $917 | $325 | $1,825 | $341 | $57 |

RALPH ROBERTS REALTY, LLC
PROJECTIONS
PLAN YEAR 1

| | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | |
| COMMISSION INCOME & FEES | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 | $ 79,167 |
| PROPERTY ACQUISITION FEES | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 |
| PROPERTY EQUITY INCOME | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 | 112,500 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| ADVERTISING & PROMOTION | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| AUTOMOTIVE EXPENSES | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| BANKRUPTCY DEPT. EXPENSES | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| FORECLOSURE DEPT. EXPENSES | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 |
| COMMISSIONS - RALPH ROBERTS | - | - | - | - | - | - | - | - | - | - | - | - |
| COMMISSIONS - OTHERS | 31,667 | 31,667 | 31,667 | 31,667 | 31,667 | 31,667 | 31,667 | 31,667 | 31,667 | 31,667 | 31,667 | 31,667 |
| INSURANCE | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| MEALS & ENTERTAINMENT | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| OFFICE SUPPLIES & EXPENSES | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 | 9,167 |
| OUTSIDE SERVICES | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| PAYROLL - RALPH ROBERTS | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 |
| PAYROLL - OTHERS | 22,917 | 22,917 | 22,917 | 22,917 | 22,917 | 22,917 | 22,917 | 22,917 | 22,917 | 22,917 | 22,917 | 22,917 |
| PAYROLL AND OTHER TAXES | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 | 4,083 |
| PROFESSIONAL FEES | 7,917 | 7,917 | 7,917 | 7,917 | 7,917 | 7,917 | 7,917 | 7,917 | 7,917 | 7,917 | 7,917 | 7,917 |
| RENT | 3,167 | 3,167 | 3,167 | 3,167 | 3,167 | 3,167 | 3,167 | 3,167 | 3,167 | 3,167 | 3,167 | 3,167 |
| TELEPHONE & UTILITIES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | 106,668 | 106,668 | 106,668 | 106,668 | 106,668 | 106,668 | 106,668 | 106,668 | 106,668 | 106,668 | 106,668 | 106,668 |
| **NET OPERATING INCOME** | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 | $ 5,832 |
| **RALPH ROBERTS DISPOSABLE INCOME** | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 |
| **TOTAL INCOME FOR PLAN PAYMENTS** | 6,073 | 6,073 | 6,073 | 6,073 | 6,073 | 6,073 | 6,073 | 6,073 | 6,073 | 6,073 | 6,073 | 6,073 |
| **PAYMENTS UNDER THE PLAN:** | | | | | | | | | | | | |
| Class 1 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 2 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 3 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 |
| Class 4 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 5 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 6 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 7 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 |
| Class 8, 10 & 11 | $4,074 | $4,074 | $4,074 | $4,074 | $4,074 | $4,074 | $4,074 | $4,074 | $4,074 | $4,074 | $4,074 | $4,074 |
| Class 9 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 |
| Class 12 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **NET INCOME:** | $318 | $318 | $318 | $318 | $318 | $318 | $318 | $318 | $318 | $318 | $318 | $318 |

RALPH ROBERTS REALTY, LLC
PROJECTIONS
PLAN YEAR 2

| | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | |
| COMMISSION INCOME & FEES | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 | $ 87,500 |
| PROPERTY ACQUISITION FEES | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 |
| PROPERTY EQUITY INCOME | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 |
| | 129,166 | 129,166 | 129,166 | 129,166 | 129,166 | 129,166 | 129,166 | 129,166 | 129,166 | 129,166 | 129,166 | 129,166 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| ADVERTISING & PROMOTION | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 |
| AUTOMOTIVE EXPENSES | 2,167 | 2,167 | 2,167 | 2,167 | 2,167 | 2,167 | 2,167 | 2,167 | 2,167 | 2,167 | 2,167 | 2,167 |
| BANKRUPTCY DEPT. EXPENSES | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 |
| FORECLOSURE DEPT. EXPENSES | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| COMMISSIONS - RALPH ROBERTS | - | - | - | - | - | - | - | - | - | - | - | - |
| COMMISSIONS - OTHERS | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 | 35,000 |
| INSURANCE | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 |
| MEALS & ENTERTAINMENT | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 |
| OFFICE SUPPLIES & EXPENSES | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 |
| OUTSIDE SERVICES | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 |
| PAYROLL - RALPH ROBERTS | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 |
| PAYROLL - OTHERS | 27,083 | 27,083 | 27,083 | 27,083 | 27,083 | 27,083 | 27,083 | 27,083 | 27,083 | 27,083 | 27,083 | 27,083 |
| PAYROLL AND OTHER TAXES | 4,667 | 4,667 | 4,667 | 4,667 | 4,667 | 4,667 | 4,667 | 4,667 | 4,667 | 4,667 | 4,667 | 4,667 |
| PROFESSIONAL FEES | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| RENT | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 | 3,250 |
| TELEPHONE & UTILITIES | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 |
| | 115,750 | 115,750 | 115,750 | 115,750 | 115,750 | 115,750 | 115,750 | 115,750 | 115,750 | 115,750 | 115,750 | 115,750 |
| **NET OPERATING INCOME** | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 | $ 13,416 |
| RALPH ROBERTS DISPOSABLE INCOME | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 | 208 |
| TOTAL INCOME FOR PLAN PAYMENTS | 13,624 | 13,624 | 13,624 | 13,624 | 13,624 | 13,624 | 13,624 | 13,624 | 13,624 | 13,624 | 13,624 | 13,624 |
| **PAYMENTS UNDER THE PLAN:** | | | | | | | | | | | | |
| Class 1 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 2 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 3 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 |
| Class 4 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 5 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 6 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 7 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 |
| Class 8, 10 & 11 | $11,708 | $11,708 | $11,708 | $11,708 | $11,708 | $11,708 | $11,708 | $11,708 | $11,708 | $11,708 | $11,708 | $11,708 |
| Class 9 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 |
| Class 12 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **NET INCOME:** | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 |

RALPH ROBERTS REALTY, LLC
PROJECTIONS
PLAN YEAR 3

| | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | |
| COMMISSION INCOME & FEES | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 | $ 100,000 |
| PROPERTY ACQUISITION FEES | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 | 20,833 |
| PROPERTY EQUITY INCOME | 33,333 | 33,333 | 33,333 | 33,333 | 33,333 | 33,333 | 33,333 | 33,333 | 33,333 | 33,333 | 33,333 | 33,333 |
| | 154,166 | 154,166 | 154,166 | 154,166 | 154,166 | 154,166 | 154,166 | 154,166 | 154,166 | 154,166 | 154,166 | 154,166 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| ADVERTISING & PROMOTION | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 |
| AUTOMOTIVE EXPENSES | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 |
| BANKRUPTCY DEPT. EXPENSES | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 |
| FORECLOSURE DEPT. EXPENSES | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 | 2,917 |
| COMMISSIONS - RALPH ROBERTS | - | - | - | - | - | - | - | - | - | - | - | - |
| COMMISSIONS - OTHERS | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 | 40,000 |
| INSURANCE | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 |
| MEALS & ENTERTAINMENT | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 |
| OFFICE SUPPLIES & EXPENSES | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 | 12,500 |
| OUTSIDE SERVICES | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 |
| PAYROLL - RALPH ROBERTS | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 |
| PAYROLL - OTHERS | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 | 31,250 |
| PAYROLL AND OTHER TAXES | 5,167 | 5,167 | 5,167 | 5,167 | 5,167 | 5,167 | 5,167 | 5,167 | 5,167 | 5,167 | 5,167 | 5,167 |
| PROFESSIONAL FEES | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 |
| RENT | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 |
| TELEPHONE & UTILITIES | 1,333 | 1,333 | 1,333 | 1,333 | 1,333 | 1,333 | 1,333 | 1,333 | 1,333 | 1,333 | 1,333 | 1,333 |
| | 130,917 | 130,917 | 130,917 | 130,917 | 130,917 | 130,917 | 130,917 | 130,917 | 130,917 | 130,917 | 130,917 | 130,917 |
| **NET OPERATING INCOME** | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 | $ 23,249 |
| **RALPH ROBERTS DISPOSABLE INCOME** | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 |
| **TOTAL INCOME FOR PLAN PAYMENTS** | 23,332 | 23,332 | 23,332 | 23,332 | 23,332 | 23,332 | 23,332 | 23,332 | 23,332 | 23,332 | 23,332 | 23,332 |
| **PAYMENTS UNDER THE PLAN:** | | | | | | | | | | | | |
| Class 1 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 2 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 3 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 |
| Class 4 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 5 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 6 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 7 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 |
| Class 8, 10 & 11 | $21,416 | $21,416 | $21,416 | $21,416 | $21,416 | $21,416 | $21,416 | $21,416 | $21,416 | $21,416 | $21,416 | $21,416 |
| Class 9 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 |
| Class 12 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **NET INCOME:** | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 | $235 |

RALPH ROBERTS REALTY, LLC
PROJECTIONS
PLAN YEAR 4

| | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | |
| COMMISSION INCOME & FEES | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 | $ 108,333 |
| PROPERTY ACQUISITION FEES | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 |
| PROPERTY EQUITY INCOME | 45,833 | 45,833 | 45,833 | 45,833 | 45,833 | 45,833 | 45,833 | 45,833 | 45,833 | 45,833 | 45,833 | 45,833 |
| | 170,833 | 170,833 | 170,833 | 170,833 | 170,833 | 170,833 | 170,833 | 170,833 | 170,833 | 170,833 | 170,833 | 170,833 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| ADVERTISING & PROMOTION | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| AUTOMOTIVE EXPENSES | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 | 2,500 |
| BANKRUPTCY DEPT. EXPENSES | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| FORECLOSURE DEPT. EXPENSES | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 |
| COMMISSIONS - RALPH ROBERTS | - | - | - | - | - | - | - | - | - | - | - | - |
| COMMISSIONS - OTHERS | 43,333 | 43,333 | 43,333 | 43,333 | 43,333 | 43,333 | 43,333 | 43,333 | 43,333 | 43,333 | 43,333 | 43,333 |
| INSURANCE | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 | 3,000 |
| MEALS & ENTERTAINMENT | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 | 2,083 |
| OFFICE SUPPLIES & EXPENSES | 14,167 | 14,167 | 14,167 | 14,167 | 14,167 | 14,167 | 14,167 | 14,167 | 14,167 | 14,167 | 14,167 | 14,167 |
| OUTSIDE SERVICES | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| PAYROLL - RALPH ROBERTS | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 |
| PAYROLL - OTHERS | 35,417 | 35,417 | 35,417 | 35,417 | 35,417 | 35,417 | 35,417 | 35,417 | 35,417 | 35,417 | 35,417 | 35,417 |
| PAYROLL AND OTHER TAXES | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 | 5,667 |
| PROFESSIONAL FEES | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 | 4,583 |
| RENT | 3,416 | 3,416 | 3,416 | 3,416 | 3,416 | 3,416 | 3,416 | 3,416 | 3,416 | 3,416 | 3,416 | 3,416 |
| TELEPHONE & UTILITIES | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| | 144,416 | 144,416 | 144,416 | 144,416 | 144,416 | 144,416 | 144,416 | 144,416 | 144,416 | 144,416 | 144,416 | 144,416 |
| **NET OPERATING INCOME** | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 | $ 26,417 |
| **RALPH ROBERTS DISPOSABLE INCOME** | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 |
| **TOTAL INCOME FOR PLAN PAYMENTS** | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 | $ 26,625 |
| **PAYMENTS UNDER THE PLAN:** | | | | | | | | | | | | |
| Class 1 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 2 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 3 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 |
| Class 4 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 5 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 6 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 7 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 |
| Class 8, 10 & 11 | $24,708 | $24,708 | $24,708 | $24,708 | $24,708 | $24,708 | $24,708 | $24,708 | $24,708 | $24,708 | $24,708 | $24,708 |
| Class 9 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 |
| Class 12 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| **NET INCOME:** | $236 | $236 | $236 | $236 | $236 | $236 | $236 | $236 | $236 | $236 | $236 | $236 |

RALPH ROBERTS REALTY, LLC
PROJECTIONS
PLAN YEAR 5

| | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | |
| COMMISSION INCOME & FEES | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 | $ 116,667 |
| PROPERTY ACQUISITION FEES | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 | 16,667 |
| PROPERTY EQUITY INCOME | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 | 62,500 |
| | 195,834 | 195,834 | 195,834 | 195,834 | 195,834 | 195,834 | 195,834 | 195,834 | 195,834 | 195,834 | 195,834 | 195,834 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| ADVERTISING & PROMOTION | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 | 4,167 |
| AUTOMOTIVE EXPENSES | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 | 2,667 |
| BANKRUPTCY DEPT. EXPENSES | 5,833 | 5,833 | 5,833 | 5,833 | 5,833 | 5,833 | 5,833 | 5,833 | 5,833 | 5,833 | 5,833 | 5,833 |
| FORECLOSURE DEPT. EXPENSES | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 | 3,750 |
| COMMISSIONS - RALPH ROBERTS | - | - | - | - | - | - | - | - | - | - | - | - |
| COMMISSIONS - OTHERS | 46,667 | 46,667 | 46,667 | 46,667 | 46,667 | 46,667 | 46,667 | 46,667 | 46,667 | 46,667 | 46,667 | 46,667 |
| INSURANCE | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 | 3,333 |
| MEALS & ENTERTAINMENT | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 | 2,250 |
| OFFICE SUPPLIES & EXPENSES | 15,833 | 15,833 | 15,833 | 15,833 | 15,833 | 15,833 | 15,833 | 15,833 | 15,833 | 15,833 | 15,833 | 15,833 |
| OUTSIDE SERVICES | 5,416 | 5,416 | 5,416 | 5,416 | 5,416 | 5,416 | 5,416 | 5,416 | 5,416 | 5,416 | 5,416 | 5,416 |
| PAYROLL - RALPH ROBERTS | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 |
| PAYROLL - OTHERS | 39,583 | 39,583 | 39,583 | 39,583 | 39,583 | 39,583 | 39,583 | 39,583 | 39,583 | 39,583 | 39,583 | 39,583 |
| PAYROLL AND OTHER TAXES | 6,167 | 6,167 | 6,167 | 6,167 | 6,167 | 6,167 | 6,167 | 6,167 | 6,167 | 6,167 | 6,167 | 6,167 |
| PROFESSIONAL FEES | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 | 5,000 |
| RENT | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 | 3,500 |
| TELEPHONE & UTILITIES | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 |
| | 157,916 | 157,916 | 157,916 | 157,916 | 157,916 | 157,916 | 157,916 | 157,916 | 157,916 | 157,916 | 157,916 | 157,916 |
| NET OPERATING INCOME | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 | $ 37,918 |
| RALPH ROBERTS DISPOSABLE INCOME | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 |
| TOTAL INCOME FOR PLAN PAYMENTS | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 | $ 38,149 |
| **PAYMENTS UNDER THE PLAN:** | | | | | | | | | | | | |
| Class 1 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 2 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 3 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 | $48 |
| Class 4 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 5 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 6 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 | $97 |
| Class 7 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 | $387 |
| Class 8, 10 & 11 | $36,231 | $36,231 | $36,231 | $36,231 | $36,231 | $36,231 | $36,231 | $36,231 | $36,231 | $36,231 | $36,231 | $36,231 |
| Class 9 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 | $761 |
| Class 12 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| NET INCOME: | $237 | $237 | $237 | $237 | $237 | $237 | $237 | $237 | $237 | $237 | $237 | $237 |

RALPH ROBERTS
PROJECTIONS
YEAR ENDING DECEMBER 31,

| | YEAR 1 | YEAR 2 | YEAR 3 | YEAR 4 | YEAR 5 |
|---|---|---|---|---|---|
| REVENUES | | | | | |
| SALARY | $ 125,000 | $ 130,000 | $ 135,000 | $ 140,000 | $ 145,000 |
| GROSS REVENUE: | 125,000 | 130,000 | 135,000 | 140,000 | 145,000 |
| DISBURSEMENTS | | | | | |
| INSURANCE (AUTO) | 3,504 | 3,996 | 4,500 | 4,500 | 5,004 |
| INSURANCE (HOMEOWNERS) | 3,600 | 3,996 | 4,500 | 3,000 | 3,204 |
| INSURANCE (MEDICAL) | 20,400 | 21,000 | 21,996 | 23,004 | 24,000 |
| TELEPHONE | 5,808 | 6,000 | 6,504 | 6,504 | 6,504 |
| UTILITIES | 10,500 | 11,004 | 12,000 | 12,996 | 14,004 |
| REAL ESTATE TAXES | 8,496 | 9,000 | 9,504 | 9,996 | 10,500 |
| PROFESSIONAL FEES | 24,000 | 33,000 | 27,996 | 23,004 | 18,000 |
| US TRUSTEE FEES | - | - | - | - | - |
| VEHICLE EXPENSES | 4,200 | 4,500 | 5,004 | 5,496 | 6,000 |
| RECREATION | - | 3,000 | 6,000 | 8,004 | 12,000 |
| REPAIRS AND MAINTENANCE | 24,000 | 14,004 | 17,004 | 18,000 | 18,000 |
| MEDICAL EXPENSES | 2,004 | 3,000 | 3,996 | 5,004 | 5,004 |
| FOOD & CLOTHING | 12,000 | 15,000 | 15,000 | 18,000 | 20,004 |
| | 118,512 | 127,500 | 134,004 | 137,508 | 142,224 |
| NET OPERATING INCOME | $ 2,892 | $ 2,500 | $ 996 | $ 2,492 | $ 2,776 |

RALPH ROBERTS
PROJECTIONS
PLAN YEAR 1

| | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| REVENUES | | | | | | | | | | | | |
| SALARY | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 | $ 10,417 |
| GROSS REVENUE: | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 | 10,417 |
| DISBURSEMENTS | | | | | | | | | | | | |
| INSURANCE (AUTO) | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 | 292 |
| INSURANCE (HOMEOWNERS) | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| INSURANCE (MEDICAL) | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 | 1,700 |
| TELEPHONE | 484 | 484 | 484 | 484 | 484 | 484 | 484 | 484 | 484 | 484 | 484 | 484 |
| UTILITIES | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 |
| REAL ESTATE TAXES | 708 | 708 | 708 | 708 | 708 | 708 | 708 | 708 | 708 | 708 | 708 | 708 |
| PROFESSIONAL FEES | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| US TRUSTEE FEES | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 | 300 |
| VEHICLE EXPENSES | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 | 350 |
| RECREATION | - | - | - | - | - | - | - | - | - | - | - | - |
| REPAIRS AND MAINTENANCE | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| MEDICAL EXPENSES | 167 | 167 | 167 | 167 | 167 | 167 | 167 | 167 | 167 | 167 | 167 | 167 |
| FOOD & CLOTHING | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| | 10,176 | 10,176 | 10,176 | 10,176 | 10,176 | 10,176 | 10,176 | 10,176 | 10,176 | 10,176 | 10,176 | 10,176 |
| NET OPERATING INCOME | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 | $ 241 |

RALPH ROBERTS
PROJECTIONS
PLAN YEAR 2

|  | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | |
| SALARY | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 | $ 10,833 |
| GROSS REVENUE: | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 | 10,833 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| INSURANCE (AUTO) | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 |
| INSURANCE (HOMEOWNERS) | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 |
| INSURANCE (MEDICAL) | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 | 1,750 |
| TELEPHONE | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| UTILITIES | 917 | 917 | 917 | 917 | 917 | 917 | 917 | 917 | 917 | 917 | 917 | 917 |
| REAL ESTATE TAXES | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 | 750 |
| PROFESSIONAL FEES | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 | 2,750 |
| US TRUSTEE FEES | - | - | - | - | - | - | - | - | - | - | - | - |
| VEHICLE EXPENSES | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 |
| RECREATION | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| REPAIRS AND MAINTENANCE | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 |
| MEDICAL EXPENSES | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| FOOD & CLOTHING | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 |
|  | 10,625 | 10,625 | 10,625 | 10,625 | 10,625 | 10,625 | 10,625 | 10,625 | 10,625 | 10,625 | 10,625 | 10,625 |
| NET OPERATING INCOME | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 |

RALPH ROBERTS
PROJECTIONS
PLAN YEAR 3

| | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | |
| SALARY | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 | $ 11,250 |
| GROSS REVENUE: | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 | 11,250 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| INSURANCE (AUTO) | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 |
| INSURANCE (HOMEOWNERS) | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 |
| INSURANCE (MEDICAL) | 1,833 | 1,833 | 1,833 | 1,833 | 1,833 | 1,833 | 1,833 | 1,833 | 1,833 | 1,833 | 1,833 | 1,833 |
| TELEPHONE | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 |
| UTILITIES | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| REAL ESTATE TAXES | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 | 792 |
| PROFESSIONAL FEES | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 | 2,333 |
| US TRUSTEE FEES | - | - | - | - | - | - | - | - | - | - | - | - |
| VEHICLE EXPENSES | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 |
| RECREATION | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| REPAIRS AND MAINTENANCE | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 | 1,417 |
| MEDICAL EXPENSES | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 | 333 |
| FOOD & CLOTHING | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 | 1,250 |
| | 11,167 | 11,167 | 11,167 | 11,167 | 11,167 | 11,167 | 11,167 | 11,167 | 11,167 | 11,167 | 11,167 | 11,167 |
| NET OPERATING INCOME | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 | $ 83 |

RALPH ROBERTS
PROJECTIONS
PLAN YEAR 4

| | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | |
| SALARY | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 | $ 11,667 |
| GROSS REVENUE: | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 | 11,667 |
| **DISBURSEMENTS** | | | | | | | | | | | | |
| INSURANCE (AUTO) | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 | 375 |
| INSURANCE (HOMEOWNERS) | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 | 250 |
| INSURANCE (MEDICAL) | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 |
| TELEPHONE | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 |
| UTILITIES | 1,083 | 1,083 | 1,083 | 1,083 | 1,083 | 1,083 | 1,083 | 1,083 | 1,083 | 1,083 | 1,083 | 1,083 |
| REAL ESTATE TAXES | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 | 833 |
| PROFESSIONAL FEES | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 | 1,917 |
| US TRUSTEE FEES | - | - | - | - | - | - | - | - | - | - | - | - |
| VEHICLE EXPENSES | 458 | 458 | 458 | 458 | 458 | 458 | 458 | 458 | 458 | 458 | 458 | 458 |
| RECREATION | 667 | 667 | 667 | 667 | 667 | 667 | 667 | 667 | 667 | 667 | 667 | 667 |
| REPAIRS AND MAINTENANCE | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| MEDICAL EXPENSES | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 |
| FOOD & CLOTHING | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| | 11,459 | 11,459 | 11,459 | 11,459 | 11,459 | 11,459 | 11,459 | 11,459 | 11,459 | 11,459 | 11,459 | 11,459 |
| NET OPERATING INCOME | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 | $ 208 |

RALPH ROBERTS
PROJECTIONS
PLAN YEAR 5

| | | August | September | October | November | December | January | February | March | April | May | June | July |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **REVENUES** | | | | | | | | | | | | | |
| SALARY | $ | 12,083 | $ 12,083 | $ 12,083 | $ 12,083 | $ 12,083 | $ 12,083 | $ 12,083 | $ 12,083 | $ 12,083 | $ 12,083 | $ 12,083 | $ 12,083 |
| GROSS REVENUE: | | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 | 12,083 |
| **DISBURSEMENTS** | | | | | | | | | | | | | |
| INSURANCE (AUTO) | | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 |
| INSURANCE (HOMEOWNERS) | | 267 | 267 | 267 | 267 | 267 | 267 | 267 | 267 | 267 | 267 | 267 | 267 |
| INSURANCE (MEDICAL) | | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 | 2,000 |
| TELEPHONE | | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 | 542 |
| UTILITIES | | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 | 1,167 |
| REAL ESTATE TAXES | | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 | 875 |
| PROFESSIONAL FEES | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| US TRUSTEE FEES | | - | - | - | - | - | - | - | - | - | - | - | - |
| VEHICLE EXPENSES | | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 | 500 |
| RECREATION | | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 | 1,000 |
| REPAIRS AND MAINTENANCE | | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 | 1,500 |
| MEDICAL EXPENSES | | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 | 417 |
| FOOD & CLOTHING | | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 | 1,667 |
| | | 11,852 | 11,852 | 11,852 | 11,852 | 11,852 | 11,852 | 11,852 | 11,852 | 11,852 | 11,852 | 11,852 | 11,852 |
| NET OPERATING INCOME | $ | 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 | $ 231 |

D. Tax Ramifications

The following is a summary of certain U.S. federal income tax consequences to the Debtors and to certain holders of Claims that are expected to result from implementation of the Plan. This discussion is based on the IRC, as amended, Treasury Regulations in effect on the date of this Disclosure Statement, and administrative and judicial interpretations thereof available on or before such date. All of the foregoing are subject to change, which change could apply retroactively and could affect the federal income tax consequences described below. There can be no assurance that the IRS will not take a contrary view with respect to one or more of the issues discussed below. No ruling has been applied for or received from the IRS with respect to any of the tax aspects of the Plan and no opinion of counsel has been requested or received by the Debtors with respect thereto.

The following summary is for general information only and does not purport to address all of the U.S. federal income tax consequences that may be applicable to any particular holder. The tax consequences to holders may vary based upon the individual circumstances of each holder. In addition, this discussion does not address any aspect of local, state or foreign taxation, or any estate or gift tax consequences of the Plan.

The following assumes that the Plan will be implemented as described herein and does not address the tax consequences if the Plan is not carried out. This discussion further assumes that the various debt and other arrangements to which either of the Debtors are parties and any Distributions and allocations provided for under the Plan will be respected for federal income tax purposes in accordance with their respective forms or as described below.

THE TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND SUBJECT TO SIGNIFICANT UNCERTAINTIES. THIS DISCUSSION DOES NOT CONSTITUTE TAX ADVICE OR A TAX OPINION CONCERNING THE MATTERS DESCRIBED. THERE CAN BE NO ASSURANCE THAT THE IRS WILL NOT CHALLENGE ANY OR ALL OF THE TAX CONSEQUENCES DESCRIBED HEREIN, OR THAT SUCH A CHALLENGE, IF ASSERTED, WOULD NOT BE SUSTAINED. EACH HOLDER OF A CLAIM IS URGED TO CONSULT WITH ITS OWN TAX ADVISOR REGARDING THE FEDERAL, STATE, LOCAL, FOREIGN OR OTHER TAX CONSEQUENCES OF THE PLAN.

1. U.S. Federal Income Tax Consequences to the Debtors

The Debtors expect that they will have consolidated net operating loss ("NOL") carryforwards to the year ended December 31, 2011 and, to the extent not used or eliminated in that year, to subsequent years. The amount of such NOLs and NOL carryforwards remains subject to review and adjustment by the IRS and to limitations imposed by Sections 108 and 382 of the Internal Revenue Code ("IRC"), as discussed below.

a. *Cancellation of Debt Income*

The Debtors will realize cancellation of debt income ("CODI") as a result of the reduction of certain debts and the discharge of Allowed Claims under the Plan. However, CODI is not taxable to a debtor if the debt discharge occurs in a title 11 bankruptcy case. Rather, under Section 108 of the IRC, such CODI instead may reduce certain of the Debtors' tax attributes,

generally in the following order: (a) net operating losses and net operating loss carryforwards ("NOLs"); (b) general business credit carryforwards; (c) minimum tax credit carryforwards; (d) capital loss carryforwards; (e) the tax basis of depreciable and nondepreciable assets (but not below the amount of their liabilities immediately after the discharge); (f) passive activity loss and credit carryforwards; and (g) foreign tax credit carryforwards. A debtor may elect to alter the preceding order of attribute reduction and, instead, first reduce the tax basis of its depreciable assets (and, possibly, the depreciable assets of its subsidiaries) and then to reduce NOLs and certain other tax attributes. The reduction in tax attributes occurs only after the tax for the year of the debt discharge has been determined (i.e., such attributes may be available to offset taxable income that accrues between the date of discharge and the end of the' taxable year). Any excess CODI over the amount of available tax attributes is not subject to United States federal income tax and has no other United States federal income tax impact.

### 2. <u>U.S. Federal Income Tax Consequences to Holders of Certain Claims</u>

The U.S. federal income tax consequences of the transactions contemplated by the Plan to holders of Claims arising from distributions to be made under the Plan may vary depending upon, among other things, the type of consideration received by the holder in exchange for the indebtedness it holds, the nature of the indebtedness owing to it, whether the holder is a corporation, whether the holder has previously claimed a bad debt or worthless security deduction in respect of its Claim, whether such Claim constitutes a "security" for purposes of reorganization provisions or other provisions of the IRC, whether the holder is a resident of the United States for tax purposes, whether the holder reports income on an accrual or cash basis, and whether the holder receives Distributions under the Plan in more than one taxable year. This discussion assumes that the holder has not taken a bad debt deduction with respect to the Claim (or any portion thereof) in the current or any prior year and that such Claim did not become completely or partially worthless in a prior taxable year. Moreover, the Debtors intend to claim deductions to the extent they are permitted to deduct any amounts they pay in cash, stock or other property pursuant to the Plan.

### a. *Distributions in Discharge of Accrued But Unpaid Interest*

In general, to the extent that money or property received by a holder of an unsecured claim is received in satisfaction of interest accrued during its holding period, such amount will be taxable to the holder as interest income (if not previously included in the holder's gross income). Conversely, such a holder will recognize a deductible loss to the extent that any accrued interest claimed was previously included in gross income and is not paid in full. Holders of Claims for or including accrued interest should consult their own tax advisors.

### 3. <u>Importance of Obtaining Professional Tax Advice</u>

IRS Circular 230 Notice: To ensure compliance with IRS Circular 230, holders of Claims are hereby notified that: (i) any discussion of federal tax issues contained or referred to in this Disclosure Statement is not intended or written to be used, and cannot be used, by holders of Claims for the purpose of avoiding penalties that may be imposed on them under the IRC, (ii) such discussion is written in connection with the promotion or marketing of the transactions or

matters discussed herein, and (iii) holders of Claims should seek advice based on their particular circumstances from an independent tax advisor.

## VI. LEGAL REQUIREMENTS

### A. Required Information

The following language in this Part VI.A is required by the Court. Voting procedures and standards are described in greater detail in VI.A.3: Confirmation of the Plan.

#### 1. *Voting Procedures*

Under the Bankruptcy Code, the only classes that are entitled to vote to accept or reject a plan are classes of claims or equity interests that are impaired under the plan. Accordingly, classes of claims or interests that are not impaired are not entitled to vote on the plan. Creditors that hold claims in more than one impaired class are entitled to vote separately in each class. Such a creditor will receive a separate ballot for all of its claims in each class (in accordance with the records of the Clerk of the Court) and should complete and sign each ballot separately. A creditor who asserts a claim in more than one class and who has not been provided with sufficient ballots may photocopy the ballot received and file multiple ballots.

Votes on the plan will be counted only with respect to claims: (a) that are listed on the Debtors' Schedules of Assets and Liabilities other than as disputed, contingent or unliquidated; or (b) for which a proof of claim was filed on or before the bar date set by the Court for the filing of proofs of claim (except for certain claims expressly excluded from that bar date or which are allowed by Court order). However, any vote by a holder of a claim will not be counted if such claim has been disallowed or is the subject of an unresolved objection, absent an order of the Court allowing such claim for voting purposes pursuant to 11 U.S.C. § 502 and Bankruptcy Rule 3018.

Voting on the plan by each holder of a claim or interest in an impaired class is important. After carefully reviewing the plan and disclosure statement, each holder of such a claim or interest should vote on the enclosed ballot either to accept or to reject the plan, and then return the ballot by mail to the Debtors' attorney by the deadline previously established by the court.

Any ballot that does not appropriately indicate acceptance or rejection of the plan will not be counted. A ballot that is not received by the deadline will not be counted.

If a ballot is damaged, lost, or missing, a replacement ballot may be obtained by sending a written request to the Debtors' attorney.

#### 2. *Acceptance*

The Bankruptcy Code defines acceptance of a plan by an impaired class of claims as acceptance by the holders of at least two-thirds in dollar amount, and more than one-half in number, of the claims of that class which actually cast ballots. The Bankruptcy Code defines acceptance of a plan by an impaired class of equity interests as acceptance by holders of at least two thirds in number of the equity interests of that class that actually cast ballots. If no creditor or interest holder in an impaired class votes, then that class has not accepted the plan.

### 3. *Confirmation*

11 U.S.C. § 1129(a) establishes conditions for the confirmation of a plan. These conditions are too numerous and detailed to be fully explained here. Parties are encouraged to seek independent legal counsel to answer any questions concerning the Chapter 11 process. Among the several conditions for confirmation of a plan under 11 U.S.C. § 1129(a) are these:

(1)  Each class of impaired creditors and interest must accept the plan, as described in paragraph VI.A.2, above.

(2)  Either each holder of a claim or interest in a class must accept the plan, or the plan must provide at least as much value as would be received upon liquidation under Chapter 7 of the Bankruptcy Code.

### 4. *Modification*

The Debtors reserve the right to modify or withdraw the plan at any time before confirmation.

### 5. *Effect of confirmation*

If the plan is confirmed by the Court:

(1)  Its terms are binding on the Debtors, all creditors, shareholders and other parties in interest, regardless of whether they have accepted the plan.

(2)  Except as provided in the plan:

(a)  In the case of a corporation that is reorganizing and continuing business:

i)  All claims and interests will be discharged.

ii)  Creditors and shareholders will be prohibited from asserting their claims against or interest in the debtor or its assets.

(b)  In the case of a corporation that is liquidating and not continuing its business:

i)  Claims and interests will not be discharged.

ii)  Creditors and shareholders will not be prohibited from asserting their claims against or interests in the debtor or its assets.

(c)  In the case of an individual or husband and wife:

i)  Claims will be discharged, except as provided in 11 U.S.C. §§ 523 and 1141(d).

ii) Creditors will be prohibited from asserting their claims except as to those debts which are not discharged or dischargeable under 11 U.S.C. §§ 523 and 1141(d).

Paragraphs VI.A.5.(2)(a) and VI.A.5.(2)(c) apply in these Chapter 11 Cases.

### 6. *Additional Information*

Under the Plan, the impaired Classes are Classes 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11 and 12.

IN ORDER FOR YOUR VOTE TO BE COUNTED, YOUR BALLOT MUST BE COMPLETED PROPERLY AS DESCRIBED IN THIS DISCLOSURE STATEMENT AND IN ACCORDANCE WITH THE BALLOT AND THE VOTING INSTRUCTIONS ON THE BALLOT AND RECEIVED BY THE DEBTORS' ATTORNEY NO LATER THAN THE VOTING DEADLINE.

By signing and returning the Ballot, each holder of a Claim entitled to vote will also be confirming that (i) such holder and/or agents acting on its behalf have had the opportunity to ask questions of and receive answers from the Debtors concerning the terms of the Plan and other related matters; (ii) the Debtors have made available to such holder or its agents all documents and information relating to the Plan and related matters reasonably requested by or on behalf of such holder; and (iii) except for information provided by the Debtors or their agents in writing, such holder has not relied on any statements made or other information received from any person with respect to the Plan.

Voting on the Plan by each holder of a Claim or interest in an impaired class is important. After carefully reviewing the Plan and Disclosure Statement, each holder of such a Claim or interest should vote on the enclosed ballot either to accept or to reject the Plan, and then return the ballot by mail to the Debtors by the deadline previously established by the Court.

### 7. *Waivers of Defects, Irregularities, Etc.*

Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility, acceptance, and revocation or withdrawal of Ballots will be determined by the Debtors in their sole discretion, which determination will be final and binding. As indicated below under "Withdrawal of Ballots; Revocation," effective withdrawals of Ballots must be delivered to the Debtors prior to the Voting Deadline. The Debtors reserve the absolute right to contest the validity of any such withdrawal. The Debtors also reserve the right to reject any and all Ballots not in proper form, the acceptance of which would, in their opinion or that of their counsel, be unlawful. The Debtors further reserve the right to waive any defects or irregularities or conditions of delivery as to any particular Ballot. Unless waived, any defects or irregularities in connection with deliveries of Ballots must be cured within such time as the Debtors or the Bankruptcy Court determines. Neither of the Debtors nor any other person will be under any duty to provide notification of defects or irregularities with respect to delivery of Ballots nor will any of them incur any liabilities for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of such Ballots will not be deemed to have been made until such irregularities have been cured or waived.

8. *Withdrawal of Ballots; Revocation*

Any party who has delivered a valid Ballot for the acceptance or rejection of the Plan may withdraw such acceptance or rejection by delivering a written notice of withdrawal to counsel for the Debtors at any time before the Voting Deadline.  A notice of withdrawal, to be valid, must (i) contain the description of the Claim(s) to which it relates and the aggregate principal amount represented by such Claim(s), (ii) be signed by the withdrawing party in the same manner as the Ballot being withdrawn, (iii) contain a certification that the withdrawing party owns the Claim(s) and possesses the right to withdraw the Ballot sought to be withdrawn, and (iv) be received by counsel for the Debtors in a timely manner at the address set forth below.

Unless otherwise directed by the Bankruptcy Court, a purported notice of withdrawal of a Ballot that is not received in a timely manner by counsel for the Debtors will not be effective to withdraw a previously cast Ballot.

9. *Further Information; Additional Copies*

IF A BALLOT IS DAMAGED, LOST OR MISSING, A REPLACEMENT BALLOT MAY BE OBTAINED BY SENDING A WRITTEN REQUEST TO COUNSEL FOR THE DEBTORS  IF YOU HAVE ANY QUESTIONS ABOUT THE PROCEDURE FOR VOTING YOUR CLAIM OR WITH RESPECT TO THE PACKET OF MATERIALS THAT YOU HAVE RECEIVED, OR IF YOU WISH TO OBTAIN AN ADDITIONAL COPY OF THE PLAN, THIS DISCLOSURE STATEMENT OR ANY APPENDICES OR EXHIBITS TO SUCH DOCUMENTS, PLEASE CONTACT HANNAH MUFSON MCCOLLUM, 24901 NORTHWESTERN HWY., SUITE 444, SOUTHFIELD, MICHIGAN, 48075, OR BY TELEPHONE AT (248) 350-8220.


VII.    CONFIRMATION OF THE PLAN

A.  Acceptance

To confirm the Plan, the Bankruptcy Code requires that the Bankruptcy Court make a series of findings concerning the Plan and the Debtors, including that: (i) the Plan classifies Claims and Equity Interests in a permissible manner; (ii) the Plan complies with applicable provisions of the Bankruptcy Code; (iii) the Debtors complied with applicable provisions of the Bankruptcy Code; (iv) the Plan has been accepted by the requisite votes of holders of Claims (except to the extent that confirmation is available under section 1129(b) of the Bankruptcy Code); (v) the Plan has been proposed in good faith and not by any means forbidden by law; (vi) the disclosure required by section 1125 of the Bankruptcy Code has been made; (vii) the Plan is feasible and confirmation will likely not be followed by the liquidation or the need for further financial reorganization of the Debtors, unless such liquidation or reorganization is proposed in the Plan; (viii) the Plan is in the "best interests" of all holders of Claims in an impaired Class by providing to such holders on account of their Claims property of a value, as of the Effective Date, that is not less than the amount that such holder would receive or retain in a chapter 7 liquidation, unless each holder of a Claim in such Class has accepted the Plan; (ix) all fees and expenses payable under 28 U.S.C. § 1930 (fees owing to the bankruptcy clerk and the United States

Trustee) have been paid or the Plan provides for their payment on the Effective Date; and (x) if applicable, the Plan provides for the continuation after the Effective Date of all retiree benefits, as defined under section 1114 of the Bankruptcy Code, at the level established prior to confirmation for the duration of the period that the Debtor has obligated itself to provide such benefits.

Section 1126(c) of the Bankruptcy Code defines acceptance of a plan by a class of impaired claims as acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of claims in that Class, but for that purpose counts only those who actually vote to accept or reject the plan. Thus, a class will have voted to accept the Plan if two-thirds (2/3) in amount and a majority in number actually voting cast their Ballots in favor of acceptance.

### B. Best Interests Test

Notwithstanding acceptance of the Plan by the requisite majorities of the holders of Claims in Classes entitled to vote, in order to confirm the Plan, the Bankruptcy Court must independently determine that the Plan is in the best interests of all Classes impaired by the Plan. In order to Confirm the Plan, the Bankruptcy Court must find that the Plan provides to each Entity that rejects the Plan a recovery which has a value at least equal to the value of the distribution that each such Entity would receive if all of the Debtors' assets which are property of their estate were liquidated under Chapter 7 of the Bankruptcy Code.

To calculate what creditors would recover in a Chapter 7 liquidation, the Bankruptcy Court must first determine the aggregate dollar amount that would be generated from the Debtors' remaining assets if the Chapter 11 Cases were converted to Chapter 7 and the assets were liquidated by a trustee in bankruptcy. Upon liquidation, the potential distribution available to creditors may be reduced (a) by the costs of liquidation under Chapter 7, which costs would include the compensation of a trustee, disposition expenses, including possible transfer taxes which may not be payable under Chapter 11, all unpaid expenses incurred by the Debtors during the Chapter 11 Cases (such as compensation of professionals), litigation costs (if any), and Claims arising during the pendency of the Chapter 11 Cases and the Chapter 7 liquidation proceedings, and (b) to the extent of the value of the Collateral securing the Claims of secured creditors. There may be included Chapter 11 Administrative Expense Claims for the failure of the Debtors to fulfill post-petition contracts, if any. These Claims would have to be paid in full out of the liquidation proceeds before the balance, if any, would be made available to pay unsecured creditors.

The Debtors have prepared a Liquidation Analysis to show the anticipated distribution to creditors in a Chapter 7 liquidation of the Debtors. As demonstrated in the Liquidation Analysis, it is anticipated that creditors would receive far less in a Chapter 7 liquidation than they would under the Plan, and, therefore, this requirement will easily be satisfied.

### C. Nonconsensual Confirmation

The Bankruptcy Code contains provisions for confirmation of a plan even if the plan is not accepted by all impaired classes, as long as at least one impaired class of claims has voted to

accept the plan. These "cramdown" provisions are set forth in Section 1129(b) of the Bankruptcy Code.

The Plan may be confirmed pursuant to the cramdown provisions if, in addition to satisfying other requirements of section 1129 of the Bankruptcy Code, the Plan: (i) "does not discriminate unfairly" and (ii) "is fair and equitable with respect to each Class of claims or equity interests that is impaired under, and has not accepted, the Plan." As used by the Bankruptcy Code, the phrases "discriminate unfairly" and "fair and equitable" have meanings unique to bankruptcy law.

The requirement that a plan "not discriminate unfairly" means that a dissenting class must be treated equally with respect to other classes of equal rank. A plan does not discriminate unfairly if claims or interests in different classes but with similar priorities and characteristics receive or retain property of a similar value under a plan. A plan may provide for different treatment for different classes if the claims or interests in such classes have different priorities or characteristics.

By establishing separate Classes for the holders of each type of Claim and Equity Interest and by treating each holder of a Claim and Equity Interest in each Class the same, the Debtors submit that the Plan does not "discriminate unfairly" with respect to any Class of Claims or Equity Interests. The Plan separately classifies the Debtors' ongoing secured obligations and their remaining unsecured obligations separately. Should the Debtors seek to cramdown the Plan because an impaired Class has voted to reject the Plan, they believe the Plan is fair and equitable, because each secured creditor will receive the approximate value of its collateral through the Plan, or will continue to receive payments under applicable contract documents. Further, to the extent that unsecured creditors are in a separate class, this classification is appropriate because the Claims in these Classes have entirely different characteristics and may be treated differently.

The "fair and equitable" standard, also known as the "absolute priority rule," has different meanings with respect to secured and unsecured claims. With respect to secured claims, for a plan to be fair and equitable, the plan may provide, among other things, that the holder of such claims retain the liens securing those claims to the extent of the allowed amount of such claims, and that such holder receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim of a value, as of the effective date of the plan, of at least the value of such holder's interest in the estate's interest in such property. Alternatively, a plan may provide for the realization by the holders of secured claims of the indubitable equivalent of such claims.

With respect to a class of unsecured creditors, a plan may be fair and equitable if it provides that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date, equal to the allowed amount of the claim, or if it provides that the holder of a claim or interest that is junior to the claims of such class will not receive or retain distributions or interests under the plan on account of such junior claim or interest any property.

Here, with respect to Realty, the Plan satisfies the absolute priority rule because Mr. Roberts, Realty's sole owner, is waiving his claim against Realty. As Realty owes Mr. Roberts approximately $1.35 million dollars, this claims waiver is substantial. Further, Mr. Roberts

would, had this bankruptcy not been filed, be entitled to a share of future commissions generated by Realty.  Mr. Roberts is also waiving this right as part of the Plan.  Finally, as to Mr. Roberts himself, because he is an individual debtor, the absolute priority rule does not apply.  As a result, the Debtors have satisfied the absolute priority rule.  Mr. Roberts further believes that he has satisfied the "fair and equitable" standard by committing his disposable monthly income for the next five years to creditor payments under the Plan.  The Debtors reserve the right to amend the Plan or to seek confirmation under Section 1129(b) of the Bankruptcy Code in the event any impaired Class votes to reject the Plan.  However, the Debtors anticipate that all impaired Classes of Claims will vote to accept the Plan.

D. Feasibility

The Bankruptcy Code permits a plan to be confirmed if it is not likely to be followed by liquidation or the need for further financial reorganization unless such liquidation or reorganization is proposed in the Plan.  The Debtors have prepared financial projections and believe that the financial restructuring provided for by the Plan will provide them with a sustainable long-term capital structure, positioning them for a return to profitability and future growth.  The Debtors anticipate that the Projections will demonstrate that the feasibility requirement under the Bankruptcy Code will be met.

VIII.   ALTERNATIVES TO CONFIRMATION AND CONSUMMATION OF THE PLAN

If the Plan is not confirmed and consummated, the alternatives include (i) liquidation under Chapter 7 of the Bankruptcy Code, and (ii) the preparation and presentation of an alternative plan of reorganization.

A. Liquidation Under Chapter 7

If no Chapter 11 plan can be confirmed, this case may be converted to a case under Chapter 7 of the Bankruptcy Code, in which a trustee would be elected or appointed to liquidate the Debtors' assets, subject to their claims of exemption and their right to reaffirm debts.  A discussion of the anticipated effect that a Chapter 7 liquidation would have on the recoveries of holders of Claims is set forth above in Section VII.B.  The Debtors believe that liquidation under Chapter 7 would result in, among other things, lower distributions being made to creditors than those provided in the Plan, and that no or few assets would be available to distribute to general creditors.

B. Alternative Plan of Reorganization

If the Plan is not confirmed, the Debtors (or any other party in interest once the Debtors' exclusivity period has expired) could attempt to formulate a different plan of reorganization. The Debtors believe that this Plan is the best result for all interested parties.  The Plan, in the Debtors' opinion, represents the best alternative to protect the interests of creditors and parties in interest.

IX.     CERTAIN FACTORS TO BE CONSIDERED

    A.  Risks of Bankruptcy

        1.  *Objection to Classifications*

Section 1122 of the Bankruptcy Code provides that a plan may place a claim or an interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class.  The Debtors believe that the classification of Claims and Equity Interests under the Plan complies with the requirements set forth in the Bankruptcy Code.  However, there can be no assurance that the Bankruptcy Court would reach the same conclusion.

The Plan separately classifies Claims into six Classes.  The claims in these Classes have different characteristics and it is therefore appropriate for such claims to be separately classified.

        2.  *Risk of Non-Confirmation of the Plan*

Even if all Classes entitled to vote accept the Plan, the Plan might not be confirmed by the Bankruptcy Court.  As discussed above, Section 1129 of the Bankruptcy Code sets forth the requirements for confirmation and requires, among other things, that the confirmation of a plan of reorganization is not likely to be followed by the liquidation or the need for further financial reorganization, and that the value of distributions to dissenting creditors and equity security holders not be less than the value of distributions such creditors and equity security holders would receive if the Debtors' non-exempt assets were liquidated under Chapter 7 of the Bankruptcy Code.  The Debtors believe that the Plan satisfies all the requirements for Confirmation of a plan of reorganization under the Bankruptcy Code.  There can be no assurance, however, that the Bankruptcy Court will conclude that the requirements for Confirmation of the Plan have been satisfied.

    B.  Risks Associated with the Reorganization

Factors that could negatively impact the Debtors include, without limitation: loss of employment, a further drop in the value of real estate, a further slow-down of the economy, a further reduction in jobs and/or income in the region, and/or rising energy costs.  Any one or more these factors, if occurring, may adversely affect projected operating results and financial condition.

    C.  Risks Relating to Cash for Plan Distributions

The Debtors' ability to fund Cash distributions under the Plan, and therefore consummate the Plan in its present form, is dependent on their income from their employment.


X.      CONCLUSION

RALPH ROBERTS REALTY, LLC AND RALPH R. ROBERTS BELIEVE THAT THE PLAN PROVIDES THE BEST RECOVERIES POSSIBLE FOR HOLDERS OF CLAIMS AGAINST THEM AND STRONGLY RECOMMEND THAT YOU VOTE TO ACCEPT THE PLAN.

Dated: June 13, 2012

RALPH ROBERTS REALTY, LLC
BY: Ralph R. Roberts
ITS: President

-and-

Ralph R. Roberts

**TABLE OF EXHIBITS**

Exhibit A          Potential Preference Actions – Non-Insiders

Exhibit B          Potential Preference Actions – Insiders

Exhibit C          List of Executory Contracts and Leases to be Rejected

Exhibit D          Threatened and Pending Litigation

Exhibit E          Retained Causes of Action

Exhibit F          2009, 2010 and 2011 Financial Statements

# EXHIBIT A

## POTENTIAL PREFERENCE ACTIONS – NON-INSIDERS

| Name | Amount Paid in Preference Period |
|---|---|
| Bryan Flint | $8,085.06 |
| Deborah Bjorkley | $6,630.00 |
| Pacer, Inc. | $10,569.28 |
| Re/Max Classic | $7,050.00 |
| Sterling Limited Partnership | $9,648.46 |
| Walid Bast | $6,715.50 |
|  |  |
| JPMorgan Chase Bank, N.A. (second mortgage) | $7,149.00 |

The Debtors believe that the above potentially preferential transfers are subject to statutory defenses, including, but not limited to, ordinary course and new value as those terms are defined in 11 U.S.C. §547.

# EXHIBIT B

## POTENTIAL PREFERENCE ACTIONS – INSIDERS

| Name | Amount Paid in Preference Period |
|------|----------------------------------|
| Ralph Roberts | $60,380.00 |

The Debtors believe that the above potentially preferential/fraudulent transfers are subject to statutory defenses, including, but not limited to, ordinary course and new value as those terms are defined in 11 U.S.C. §547 and were provided in exchange for services of reasonably equivalent value, as referenced in 11 U.S.C. §548.

# EXHIBIT C

## THREATENED AND PENDING LITIGATION

| Case Caption | Case Number |
|---|---|
| Charles Ferarolis, *et al.* v. Ralph R. Roberts, *et al.* | 2011-000782-CK (Macomb County Circuit Court |
| Bryan Legree v Jerone Turner, *et al.* | 11-4713 (16th Judicial Circuit, State of MI) <br> 11-07001 (MIEB removed adversary proceeding number) |
| Miscellaneous collection actions on behalf of properties for which Ralph Roberts Realty, LLC is a property manager, including, but not limited to: <br><br> Ralph Roberts Realty, LLC v Moyer <br> Ralph Roberts Realty, LLC v Lowe <br> Ralph Roberts Realty, LLC v Reemer <br> Ralph Roberts Realty, LLC v Armstrong <br> Ralph Roberts Realty, LLC v Manaia Capital Mgmt. <br> Ralph Roberts Realty, LLC v Almaki <br> Ralph Roberts Realty, LLC v Davis <br> Ralph Roberts Realty, LLC v Nowak <br> Ralph Roberts Realty, LLC v Bush <br> Ralph Roberts Realty, LLC v Bellman | Various |
| American Construction Enterprises, LLC *et al.* v. Michigan Foreclosure Freedom, *et al.* | 2011-003977-CH (Macomb County Circuit Court) |
| LeVaasseur Dyer & Associates P.C. v. Ralph R. Roberts | 12-0164-CK (45A Judicial Circuit, State of MI) |

# EXHIBIT D

## EXECUTORY CONTRACTS AND LEASES TO BE REJECTED

NONE.

# EXHIBIT E

# RESERVED CAUSES OF ACTION

| Potential Litigation Counterparty | Amount of Potential Claim | Subject to defenses? |
|---|---|---|
| Bryan Flint | $8,085.06 | Yes; Mr. Flint is an employee of Realty, and thus these payments were on account of claims that would otherwise be entitled to priority as well as subject to ordinary course and new value defenses. The Debtors do not intend to pursue this claim, although reserve the right to do so by including it on this exhibit. |
| Deborah Bjorkley | $6,630.00 | Yes; Ms. Bjorkley is an employee of Realty, and thus these payments were on account of claims that would otherwise be entitled to priority as well as subject to ordinary course and new value defenses. The Debtors do not intend to pursue this claim, although reserve the right to do so by including it on this exhibit. |
| Pacer, Inc. | $10,569.28 | Yes; ordinary course, subsequent new value |
| Re/Max Classic | $7,050.00 | The Debtors have not analyzed the potential defenses to this claim |
| Sterling Limited Partnership | $9,648.46 | Yes; CIA/COD defense (payment was for rent), ordinary course, subsequent new value |
| Walid Bast | $6,715.50 | The Debtors have not analyzed the potential defenses to this claim |
| JPMorgan Chase Bank, N.A. (second mortgage) | $7,149.00 | Yes; creditor is secured, although not in property owned by either of the Debtors |
| Jon Savoy | $150,000 | Account receivable; subject to potential collectability issues |

| | | |
|---|---|---|
| Butch Hassig | $100,000 | Account receivable; subject to potential collectability issues |
| Dennis Stevens | $10,000 | Account receivable; subject to potential collectability issues |
| 1836 Brys | $1,153 | Account receivable; subject to potential collectability issues |
| Adam Residential Properties | $3,500 | Account receivable; subject to potential collectability issues |
| Prime Residential Properties | $7,500 | Account receivable; subject to potential collectability issues |
| Ryan Residential Properties | $2,500 | Account receivable; subject to potential collectability issues |
| Charles Ferarolis, *et al.*(as reflected in caption of currently pending Macomb County state court case) | Unknown | Action for accounting of amounts paid, amounts applied to interest and principal, potential misapplication of payments, and wrongful refusal to apply appropriate setoffs against debt |
| Ralph R. Roberts | $117,000 | Yes; Mr. Roberts received these payments as an employee of Realty and these payments were on account of claims that would otherwise be entitled to priority as well as subject to ordinary course and new value defenses. The Debtors do not intend to pursue this claim, although reserve the right to do so by including it on this exhibit. |

# EXHIBIT F

## PRE PETITION FINANCIAL INFORMATION

Form **1065**

Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income

For calendar year 2009, or tax year beginning _____ , 2009,
ending _____ , 20 ____ .
► See separate instructions.

OMB No. 1545-0099

**2009**

| A Principal business activity | | Name of partnership | | D Employer identification number |
|---|---|---|---|---|
| SALES | Use the IRS label. Other- wise, print or type. | RALPH ROBERTS REALTY, L.L.C. | | 20-2660635 |
| B Principal product or service | | Number, street, and room or suite number. If a P.O. box, see the instructions. | | E Date business started |
| REAL ESTATE | | 18299 TARA DRIVE | | 03/15/05 |
| C Business code number | | City or town          State    ZIP code | | F Total assets (see instrs) |
| 531210 | | CLINTON TOWNSHIP        MI 48036-3632 | | $ 99,926. |

G Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return
(6) ☐ Technical termination - also check (1) or (2)

H Check accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ► _____

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year.............. ► 2

J Check if Schedules C and M-3 are attached ........................................... ☐

Caution. *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | | | |
|---|---|---|---|
| **I N C O M E** | 1a Gross receipts or sales ........................................ | 1a | 277,371. | |
| | b Less returns and allowances .................................... | 1b | | 1c | 277,371. |
| | 2 Cost of goods sold (Schedule A, line 8) ........................................ | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c ........................................ | 3 | 277,371. |
| | 4 Ordinary income (loss) from other partnerships, estates, and trusts *(attach statement)* ........................................ | 4 | |
| | 5 Net farm profit (loss) *(attach Schedule F (Form 1040))* ........................................ | 5 | |
| | 6 Net gain (loss) from Form 4797, Part II, line 17 *(attach Form 4797)* ........................... | 6 | |
| | 7 Other income (loss) *(attach statement)* ........................................ | 7 | |
| | 8 **Total income (loss).** Combine lines 3 through 7 ........................................ | 8 | 277,371. |

| | | | |
|---|---|---|---|
| **D E D U C T I O N S** (SEE INSTRUCTIONS FOR LIMITATIONS) | 9 Salaries and wages (other than to partners) (less employment credits) .................... | 9 | 16,143. |
| | 10 Guaranteed payments to partners ........................................ | 10 | |
| | 11 Repairs and maintenance ........................................ | 11 | 579. |
| | 12 Bad debts ........................................ | 12 | |
| | 13 Rent ........................................ | 13 | |
| | 14 Taxes and licenses ........................................ | 14 | 1,375. |
| | 15 Interest ........................................ | 15 | |
| | 16a Depreciation *(if required, attach Form 4562)* ........................ | 16a | 1,983. | |
| | b Less depreciation reported on Schedule A and elsewhere on return ..... | 16b | | 16c | 1,983. |
| | 17 Depletion (**Do not deduct oil and gas depletion.**) ........................................ | 17 | |
| | 18 Retirement plans, etc ........................................ | 18 | |
| | 19 Employee benefit programs ........................................ | 19 | |
| | 20 Other deductions *(attach statement)* ................................ ● STMT | 20 | 179,722. |
| | 21 **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20 ......... | 21 | 199,802. |
| | 22 **Ordinary business income (loss).** Subtract line 21 from line 8 ................................ | 22 | 77,569. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

► _____
Signature of general partner or limited liability company member manager

► _____
Date

May the IRS discuss this return with the preparer shown below (see instrs)? ☒ Yes ☐ No

| **Paid Preparer's Use Only** | Preparer's signature | | Date | | Check if self- employed ► ☒ | Preparer's SSN or PTIN 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 |
|---|---|---|---|---|---|---|
| | Firm's name (or yours if self-employed), address, and ZIP code | ► SIRIANNI & COMPANY, PLLC | | | | |
| | | 2898 PHEASANT RING DR | | | EIN ► 26-2721789 | |
| | | ROCHESTER HILLS        MI 48309-2857 | | | Phone no. (248) 375-5201 | |

BAA For Privacy Act and Paperwork Reduction Act Notice, see separate instructions.

PTPA0112 02/24/10

Form **1065** (2009)

## Schedule A Cost of Goods Sold (see the instructions)

| | | | |
|---|---|---|---|
| 1 | Inventory at beginning of year | 1 | |
| 2 | Purchases less cost of items withdrawn for personal use | 2 | |
| 3 | Cost of labor | 3 | |
| 4 | Additional section 263A costs *(attach statement)* | 4 | |
| 5 | Other costs *(attach statement)* | 5 | |
| 6 | **Total.** Add lines 1 through 5 | 6 | |
| 7 | Inventory at end of year | 7 | |
| 8 | **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2 | 8 | |

9a Check all methods used for valuing closing inventory:

 (i) ☐ Cost as described in Regulations section 1.471-3

 (ii) ☐ Lower of cost or market as described in Regulations section 1.471-4

 (iii) ☐ Other (specify method used and attach explanation) ►

 b Check this box if there was a writedown of 'subnormal' goods as described in Regulations section 1.471-2(c) ► ☐

 c Check this box if the LIFO inventory method was adopted this tax year for any goods (if checked, attach Form 970) ► ☐

 d Do the rules of section 263A (for properly produced or acquired for resale) apply to the partnership? ☐ Yes ☐ No

 e Was there any change in determining quantities, cost, or valuations between opening and closing inventory? ☐ Yes ☐ No

 If 'Yes,' attach explanation .

## Schedule B Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |

a ☐ Domestic general partnership  b ☐ Domestic limited partnership

c ☒ Domestic limited liability company d ☐ Domestic limited liability partnership

e ☐ Foreign partnership  f ☐ Other .... ►

| | | Yes | No |
|---|---|---|---|
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? | | X |
| 3 | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | X | |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership | | X |
| 4 | At the end of the tax year, did the partnership: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (iv) below | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | Yes | No |
|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (v) below | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |

PTPA0112 02/24/10  Form 1065 (2009)

| | Yes | No |
|---|---|---|
| 5 Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details ........ | | X |
| 6 Does this partnership satisfy **all four** of the following conditions? | | |
| a The partnership's total receipts for the tax year were less than $250,000. | | |
| b The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d The partnership is not filing and is not required to file Schedule M-3 ...................................................... | X | |
| If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 Is this partnership a publicly traded partnership as defined in section 469(k)(2)?.......................................... | | X |
| 8 During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt?............................................................................ | | X |
| 9 Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction?................................................................................................ | | X |
| 10 At any time during calendar year 2009, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If 'Yes,' enter the name of the foreign country.. ► | | X |
| 11 At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions.................................................................. | | X |
| 12a Is the partnership making, or had it previously made (and not revoked), a section 754 election?............................ | | X |
| See instructions for details regarding section 754 election. | | |
| b Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions................................. | | X |
| c Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions ...................... | | X |
| 13 Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than entities wholly-owned by the partnership throughout the tax year) ..................................................................................................... ► ☐ | | |
| 14 At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in a partnership property?.................................................................................................... | | X |
| 15 If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ► | | |
| 16 Does the partnership have any foreign partners? If 'Yes,' enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ► | | X |
| 17 Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ..................................................................................................................... ► | | |

**Designation of Tax Matters Partner** (see the instructions)
Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ► | RALPH R. ROBERTS | Identifying number of TMP ► | ▓▓▓▓▓▓▓▓ |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative ► | | Phone number of TMP ► | (586) 751-0000 |
| Address of designated TMP ► | 18299 TARA DR. CLINTON TOWNSHIP, MI 48036-3632 | | |

Form **1065** (2009)

| Schedule K | Partners' Distributive Share Items | | Total amount |
|---|---|---|---|
| **Income (Loss)** | 1 Ordinary business income (loss) (page 1, line 22) | 1 | 77,569. |
| | 2 Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a Other gross rental income (loss) | 3a | |
| | b Expenses from other rental activities (attach stmt) | 3b | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 Guaranteed payments | 4 | |
| | 5 Interest income | 5 | 12. |
| | 6 Dividends: a Ordinary dividends | 6a | |
| | b Qualified dividends | 6b | |
| | 7 Royalties | 7 | |
| | 8 Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | 8 | |
| | 9a Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | 9a | |
| | b Collectibles (28%) gain (loss) | 9b | |
| | c Unrecaptured section 1250 gain (attach statement) | 9c | |
| | 10 Net section 1231 gain (loss) (attach Form 4797) | 10 | |
| | 11 Other income (loss) (see instructions) Type ► | 11 | |
| **Deductions** | 12 Section 179 deduction (attach Form 4562) | 12 | |
| | 13a Contributions | 13a | |
| | b Investment interest expense | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ► _____ (2) Amount ► | 13c (2) | |
| | d Other deductions (see instructions) Type ► | 13d | |
| **Self-Employ-ment** | 14a Net earnings (loss) from self-employment | 14a | 77,569. |
| | b Gross farming or fishing income | 14b | |
| | c Gross nonfarm income | 14c | 277,371. |
| **Credits** | 15a Low-income housing credit (section 42(j)(5)) | 15a | |
| | b Low-income housing credit (other) | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 15c | |
| | d Other rental real estate credits (see instructions). Type ► | 15d | |
| | e Other rental credits (see instructions) Type ► | 15e | |
| | f Other credits (see instructions) Type ► | 15f | |
| **Foreign Trans-actions** | 16a Name of country or U.S. possession ... ► | | |
| | b Gross income from all sources | 16b | |
| | c Gross income sourced at partner level | 16c | |
| | Foreign gross income sourced at partnership level | | |
| | d Passive category ► _____ e General category ► _____ f Other ► | 16f | |
| | Deductions allocated and apportioned at partner level | | |
| | g Interest expense ► _____ h Other ► | 16h | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i Passive category ► _____ j General category ► _____ k Other ► | 16k | |
| | l Total foreign taxes (check one): ► Paid ☐ Accrued ☐ | 16l | |
| | m Reduction in taxes available for credit (attach statement) | 16m | |
| | n Other foreign tax information (attach statement) | 16n | |
| **Alternative Minimum Tax (AMT) Items** | 17a Post-1986 depreciation adjustment | 17a | 496. |
| | b Adjusted gain or loss | 17b | |
| | c Depletion (other than oil and gas) | 17c | |
| | d Oil, gas, and geothermal properties— gross income | 17d | |
| | e Oil, gas, and geothermal properties— deductions | 17e | |
| | f Other AMT items (attach stmt) | 17f | |
| **Other Infor-mation** | 18a Tax-exempt interest income | 18a | |
| | b Other tax-exempt income | 18b | |
| | c Nondeductible expenses | 18c | 5,651. |
| | 19a Distributions of cash and marketable securities | 19a | |
| | b Distributions of other property | 19b | |
| | 20a Investment income | 20a | 12. |
| | b Investment expenses | 20b | |
| | c Other items and amounts (attach stmt) | | |

BAA Form **1065** (2009)

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d and 16l. | | | | 1 | 77,581. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| a General partners | | | | | | |
| b Limited partners | | 776. | | 76,805. | | |

## Schedule L  Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 7,278. | | 91,996. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach stmt) | | | | |
| 7 Mortgage and real estate loans | | | | |
| 8 Other investments (attach stmt) | | | | |
| 9a Buildings and other depreciable assets | | | 9,913. | |
| b Less accumulated depreciation | | | 1,983. | 7,930. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 13 Other assets (attach stmt) | | | | |
| 14 Total assets | | 7,278. | | 99,926. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach stmt) . . Ln.17.Stmt | | 49,756. | | 89,725. |
| 18 All nonrecourse loans | | 77,948. | | 58,697. |
| 19 Mortgages, notes, bonds payable in 1 year or more | | | | |
| 20 Other liabilities (attach stmt) | | | | |
| 21 Partners' capital accounts | | -120,426. | | -48,496. |
| 22 Total liabilities and capital | | 7,278. | | 99,926. |

## Schedule M-1  Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | 71,930. | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a | Tax-exempt interest . . . $ _ _ _ _ _ _ _ | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | 7 | Deductions included on Schedule K, lines 1 through 13d and 16l, not charged against book income this year (itemize): | |
| 3 Guaranteed pmts (other than health insurance) | | a | Depreciation . . . . . $ _ _ _ _ _ _ _ _ | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| a Depreciation . . . . . . $ _ _ _ _ _ _ _ | | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| b Travel and entertainment . . . . . $ _ _ _ _ _ 5,651. | | 8 | Add lines 6 and 7 | |
| | 5,651. | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). | |
| 5 Add lines 1 through 4 | 77,581. | | Subtract line 8 from line 5 | 77,581. |

## Schedule M-2  Analysis of Partners' Capital Accounts

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | -120,426. | 6 | Distributions:  a Cash | |
| 2 Capital contributed: a Cash | | | b Property | |
| b Property | | 7 | Other decreases (itemize): _ _ _ _ _ _ _ _ | |
| 3 Net income (loss) per books | 71,930. | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| 4 Other increases (itemize): _ _ _ _ _ _ _ | | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | |
| | | 8 | Add lines 6 and 7 | |
| 5 Add lines 1 through 4 | -48,496. | 9 | Balance at end of year. Subtract line 8 from line 5 | -48,496. |

Form 1065 (2009)

**SCHEDULE B-1**
(Form 1065)
(December 2009)
Department of the Treasury
Internal Revenue Service

# Information on Partners Owning 50% or More of the Partnership

► Attach to Form 1065. See instructions.

OMB No. 1545-0099

| Name of partnership | Employer identification number (EIN) |
|---|---|
| RALPH ROBERTS REALTY, L.L.C. | 20-2660635 |

## Part I — Entities Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| ROWLAND FAMILY L.L.C. | 32-0075236 | LCC | United States | 99.0000 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## Part II — Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

BAA For Paperwork Reduction Act Notice, see the instructions for Form 1065.

Cat. No. 49842K

Schedule B-1 (Form 1065) (12-2009)

Form **4562**

Department of the Treasury
Internal Revenue Service    (99)

**Depreciation and Amortization**
(Including Information on Listed Property)

► See separate instructions.    ► Attach to your tax return.

OMB No. 1545-0172

**2009**

Attachment
Sequence No. **67**

Name(s) shown on return

RALPH ROBERTS REALTY, L.L.C.

Identifying number

20-2660635

Business or activity to which this form relates

Form 1065 Line 22

### Part I  Election To Expense Certain Property Under Section 179
Note: If you have any listed property, complete Part V before you complete Part I.

| | | | | |
|---|---|---|---|---|
| 1 | Maximum amount. See the instructions for a higher limit for certain businesses. | | 1 | $250,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | | 3 | $800,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0-. | | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | | |
|---|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | 7 | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2008 Form 4562 | | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | | 12 | |
| 13 | Carryover of disallowed deduction to 2010. Add lines 9 and 10, less line 12 ► | 13 | | |

Note: Do not use Part II or Part III below for listed property. Instead, use Part V.

### Part II  Special Depreciation Allowance and Other Depreciation (Do not include listed property) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

### Part III  MACRS Depreciation (Do not include listed property) (See instructions)

#### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2009 | 17 | |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ► ☐ | | |

#### Section B — Assets Placed in Service During 2009 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | 9,913. | 5.0 yrs | HY | 200 DB | 1,983. |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

#### Section C — Assets Placed in Service During 2009 Tax Year Using the Alternative Depreciation System

| (a) | (b) | (c) | (d) | (e) | (f) | (g) |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

### Part IV  Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 1,983. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

**Part V**   **Listed Property** (Include automobiles, certain other vehicles, cellular telephones, certain computers, and property used for entertainment, recreation, or amusement.)

**Note:** *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A — Depreciation and Other Information (Caution:** *See the instructions for limits for passenger automobiles.***)**

**24a** Do you have evidence to support the business/investment use claimed? .......... [ ] Yes [ ] No **24b** If 'Yes,' is the evidence written? ...... [ ] Yes [ ] No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| **25** Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) .......................... **25** | | | | | | | | |
| **26** Property used more than 50% in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **27** Property used 50% or less in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| **28** Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1.................. **28** | | | | | | | | |
| **29** Add amounts in column (i), line 26. Enter here and on line 7, page 1............................... | | | | | | | **29** | |

**Section B — Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other 'more than 5% owner,' or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| **30** Total business/investment miles driven during the year (**do not** include commuting miles) ...................... | | | | | | | | | | | | |
| **31** Total commuting miles driven during the year ........ | | | | | | | | | | | | |
| **32** Total other personal (noncommuting) miles driven ................................. | | | | | | | | | | | | |
| **33** Total miles driven during the year. Add lines 30 through 32 ...................... | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| **34** Was the vehicle available for personal use during off-duty hours?.................... | | | | | | | | | | | | |
| **35** Was the vehicle used primarily by a more than 5% owner or related person? ......... | | | | | | | | | | | | |
| **36** Is another vehicle available for personal use? ................................. | | | | | | | | | | | | |

**Section C — Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| **37** Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees?..................................................................... | | |
| **38** Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners................. | | |
| **39** Do you treat all use of vehicles by employees as personal use?........................................... | | |
| **40** Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received?.................................................... | | |
| **41** Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) ................... | | |
| **Note:** *If your answer to 37, 38, 39, 40, or 41 is 'Yes,' do not complete Section B for the covered vehicles.* | | |

**Part VI**   **Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| **42** Amortization of costs that begins during your 2009 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| **43** Amortization of costs that began before your 2009 tax year.............................................. **43** | | | | | |
| **44** **Total.** Add amounts in column (f). See the instructions for where to report................................... **44** | | | | | |

## Schedule K-1
(Form 1065)

### 2009

Department of the Treasury
Internal Revenue Service

For calendar year 2009, or tax
year beginning _____ , 2009
ending _____ , _____

## Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

| | Final K-1 | | Amended K-1 | OMB No. 1545-0099 |

### Part III  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| Part I | Information About the Partnership |

**A** Partnership's employer identification number
20-2660635

**B** Partnership's name, address, city, state, and ZIP code
RALPH ROBERTS REALTY, L.L.C.
18299 TARA DRIVE
CLINTON TOWNSHIP, MI 48036-3632

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

| Part II | Information About the Partner |

**E** Partner's identifying number
32-0075236

**F** Partner's name, address, city, state, and ZIP code
ROWLAND FAMILY, L.L.C.
18299 TARA DR.
CLINTON TOWNSHIP, MI 48036-3632

**G** ☒ General partner or LLC member-manager  ☐ Limited partner or other LLC member

**H** ☒ Domestic partner  ☐ Foreign partner

**I** What type of entity is this partner? PARTNERSHIP

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 100.00000 % | 99.00000 % |
| Loss | 100.00000 % | 99.00000 % |
| Capital | 100.00000 % | 99.00000 % |

**K** Partner's share of liabilities at year end:
Nonrecourse ........................ $ 58,110.
Qualified nonrecourse financing........ $ 88,828.
Recourse ............................ $ _____

**L** Partner's capital account analysis:
Beginning capital account ............. $ -120,426.
Capital contributed during the year..... $ _____
Current year increase (decrease) ....... $ 71,211.
Withdrawals and distributions......... $ _____
Ending capital account ................. $ -49,215.

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If 'Yes', attach statement (see instructions)

| 1 | Ordinary business income (loss) | 76,793. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | 12. |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| 14 | Self-employment earnings (loss) | |
| A | | 76,793. |
| C | | 274,597. |

| 15 | Credits |
| 16 | Foreign transactions |
| 17 | Alternative minimum tax (AMT) items |
| A | 491. |
| 18 | Tax-exempt income and nondeductible expenses |
| C | 5,594. |
| 19 | Distributions |
| 20 | Other information |
| A | 12. |

*See attached statement for additional information.

(vertical: FORINS USE ONLY)

12-53023-tjt  Doc 35  Filed 06/13/12  Entered 06/13/12 19:08:48  Page 83 of 120

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

**1 Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | Report on |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

**2 Net rental real estate income (loss)** — See the Partner's Instructions

**3 Other net rental income (loss)**

| | |
|---|---|
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |

**4 Guaranteed payments** — Schedule E, line 28, column (j)
**5 Interest income** — Form 1040, line 8a
**6 a Ordinary dividends** — Form 1040, line 9a
**6 b Qualified dividends** — Form 1040, line 9b
**7 Royalties** — Schedule E, line 4
**8 Net short-term capital gain (loss)** — Schedule D, line 5, column (f)
**9 a Net long-term capital gain (loss)** — Schedule D, line 12, column (f)
**9 b Collectibles (28%) gain (loss)** — 28% Rate Gain Worksheet, line 4 (Schedule D Instructions)
**9 c Unrecaptured section 1250 gain** — See the Partner's Instructions
**10 Net section 1231 gain (loss)** — See the Partner's Instructions

**11 Other income (loss)**
Code

| | |
|---|---|
| **A** Other portfolio income (loss) | See the Partner's Instructions |
| **B** Involuntary conversions | See the Partner's Instructions |
| **C** Section 1256 contracts and straddles | Form 6781, line 1 |
| **D** Mining exploration costs recapture | See Pub 535 |
| **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| **F** Other income (loss) | See the Partner's Instructions |

**12 Section 179 deduction** — See the Partner's Instructions

**13 Other deductions**

| | |
|---|---|
| **A** Cash contributions (50%) | ⎤ |
| **B** Cash contributions (30%) | |
| **C** Noncash contributions (50%) | |
| **D** Noncash contributions (30%) | See the Partner's Instructions |
| **E** Capital gain property to a 50% organization (30%) | |
| **F** Capital gain property (20%) | |
| **G** Contributions (100%) | ⎦ |
| **H** Investment interest expense | Form 4952, line 1 |
| **I** Deductions — royalty income | Schedule E, line 18 |
| **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| **L** Deductions — portfolio (other) | Schedule A, line 28 |
| **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| **N** Educational assistance benefits | See the Partner's Instructions |
| **O** Dependent care benefits | Form 2441, line 14 |
| **P** Preproductive period expenses | See the Partner's Instructions |
| **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| **R** Pensions and IRAs | See the Partner's Instructions |
| **S** Reforestation expense deduction | See the Partner's Instructions |
| **T** Domestic production activities information | See Form 8903 Instructions |
| **U** Qualified production activities income | Form 8903, line 7 |
| **V** Employer's W-2 wages | Form 8903, line 15 |
| **W** Other deductions | See the Partner's Instructions |

**14 Self-employment earnings (loss)**
Note. *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*

| | |
|---|---|
| **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| **B** Gross farming or fishing income | See the Partner's Instructions |
| **C** Gross non-farm income | See the Partner's Instructions |

**15 Credits**

| | |
|---|---|
| **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | See the Partner's Instructions |
| **B** Low-income housing credit (other) from pre-2008 buildings | See the Partner's Instructions |
| **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | Form 8586, line 11 |
| **D** Low-income housing credit (other) from post-2007 buildings | Form 8586, line 11 |
| **E** Qualified rehabilitation expenditures (rental real estate) | ⎤ See the Partner's Instructions |
| **F** Other rental real estate credits | |
| **G** Other rental credits | ⎦ |
| **H** Undistributed capital gains credit | Form 1040, line 70; check box a |
| **I** Alcohol and cellulosic biofuel fuels credit | Form 6478, line 7 |
| **J** Work opportunity credit | Form 5884, line 3 |

| | Report on |
|---|---|
| **K** Disabled access credit | See the Partner's Instructions |
| **L** Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| **M** Credit for increasing research activities | See the Partner's Instructions |
| **N** Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| **O** Backup withholding | Form 1040, line 61 |
| **P** Other credits | See the Partner's Instructions |

**16 Foreign transactions**

| | |
|---|---|
| **A** Name of country or U.S. possession | ⎤ |
| **B** Gross income from all sources | Form 1116, Part I |
| **C** Gross income sourced at partner level | ⎦ |

*Foreign gross income sourced at partnership level*

| | |
|---|---|
| **D** Passive category | ⎤ |
| **E** General category | Form 1116, Part I |
| **F** Other | ⎦ |

*Deductions allocated and apportioned at partner level*

| | |
|---|---|
| **G** Interest expense | Form 1116, Part I |
| **H** Other | Form 1116, Part I |

*Deductions allocated and apportioned at partnership level to foreign source income*

| | |
|---|---|
| **I** Passive category | ⎤ |
| **J** General category | Form 1116, Part I |
| **K** Other | ⎦ |

*Other information*

| | |
|---|---|
| **L** Total foreign taxes paid | Form 1116, Part II |
| **M** Total foreign taxes accrued | Form 1116, Part II |
| **N** Reduction in taxes available for credit | Form 1116, line 12 |
| **O** Foreign trading gross receipts | Form 8873 |
| **P** Extraterritorial income exclusion | Form 8873 |
| **Q** Other foreign transactions | See the Partner's Instructions |

**17 Alternative minimum tax (AMT) items**

| | |
|---|---|
| **A** Post-1986 depreciation adjustment | ⎤ |
| **B** Adjusted gain or loss | |
| **C** Depletion (other than oil & gas) | See the Partner's Instructions and the Instructions for Form 6251 |
| **D** Oil, gas, & geothermal — gross income | |
| **E** Oil, gas, & geothermal — deductions | |
| **F** Other AMT items | ⎦ |

**18 Tax-exempt income and nondeductible expenses**

| | |
|---|---|
| **A** Tax-exempt interest income | Form 1040, line 8b |
| **B** Other tax-exempt income | See the Partner's Instructions |
| **C** Nondeductible expenses | See the Partner's Instructions |

**19 Distributions**

| | |
|---|---|
| **A** Cash and marketable securities | ⎤ |
| **B** Distribution subject to section 737 | See Partner's Instructions |
| **C** Other property | ⎦ |

**20 Other information**

| | |
|---|---|
| **A** Investment income | Form 4952, line 4a |
| **B** Investment expenses | Form 4952, line 5 |
| **C** Fuel tax credit information | Form 4136 |
| **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| **E** Basis of energy property | See the Partner's Instructions |
| **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| **H** Recapture of investment credit | Form 4255 |
| **I** Recapture of other credits | See the Partner's Instructions |
| **J** Look-back interest — completed long-term contracts | See Form 8697 |
| **K** Look-back interest — income forecast method | See Form 8866 |
| **L** Dispositions of property with section 179 deductions | ⎤ |
| **M** Recapture of section 179 deduction | |
| **N** Interest expense for corporate partners | |
| **O** Section 453(l)(3) information | |
| **P** Section 453A(c) information | |
| **Q** Section 1260(b) information | |
| **R** Interest allocable to production expenditures | See the Partner's Instructions |
| **S** CCF nonqualified withdrawals | |
| **T** Depletion information — oil and gas | |
| **U** Amortization of reforestation costs | |
| **V** Unrelated business taxable income | |
| **W** Precontribution gain (loss) | |
| **X** Section 108(i) information | |
| **Y** Other information | ⎦ |

Schedule K-1 (Form 1065) 2009

## Schedule K-1
**(Form 1065)**

Department of the Treasury
Internal Revenue Service

### 2009

For calendar year 2009, or tax
year beginning _____, 2009
ending _____ , _____

## Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

OMB No. 1545-0099

| ☐ Final K-1 | ☐ Amended K-1 |

### Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | |
|---|---|---|
| **1** Ordinary business income (loss) 776. | **15** Credits | |
| **2** Net rental real estate income (loss) | | |
| **3** Other net rental income (loss) | **16** Foreign transactions | |
| **4** Guaranteed payments | | |
| **5** Interest income 0. | | |
| **6a** Ordinary dividends | | |
| **6b** Qualified dividends | | |
| **7** Royalties | | |
| **8** Net short-term capital gain (loss) | | |
| **9a** Net long-term capital gain (loss) | **17** Alternative minimum tax (AMT) items A 5. | |
| **9b** Collectibles (28%) gain (loss) | | |
| **9c** Unrecaptured section 1250 gain | | |
| **10** Net section 1231 gain (loss) | **18** Tax-exempt income and nondeductible expenses C 57. | |
| **11** Other income (loss) | | |
| **12** Section 179 deduction | **19** Distributions | |
| **13** Other deductions | **20** Other information A 0. | |
| **14** Self-employment earnings (loss) A 776. C 2,774. | | |

*See attached statement for additional information.

---

### Part I — Information About the Partnership

**A** Partnership's employer identification number
20-2660635

**B** Partnership's name, address, city, state, and ZIP code
RALPH ROBERTS REALTY, L.L.C.
18299 TARA DRIVE
CLINTON TOWNSHIP, MI 48036-3632

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code
RALPH R. ROBERTS
18299 TARA DR.
CLINTON TOWNSHIP, MI 48036-3632

**G** ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

**H** ☒ Domestic partner ☐ Foreign partner

**I** What type of entity is this partner? INDIVIDUAL

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 1.00000 % | 1.00000 % |
| Loss | 1.00000 % | 1.00000 % |
| Capital | 1.00000 % | 1.00000 % |

**K** Partner's share of liabilities at year end:
Nonrecourse ........................ $ 587.
Qualified nonrecourse financing ........ $ 897.
Recourse ........................... $ _____

**L** Partner's capital account analysis:
Beginning capital account ............ $ _____
Capital contributed during the year ..... $ _____
Current year increase (decrease) ...... $ 719.
Withdrawals and distributions ......... $ _____
Ending capital account ............... $ 719.

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If 'Yes', attach statement (see instructions)

*(vertical text)* FOR IRS USE ONLY

BAA **For Paperwork Reduction Act Notice, see Instructions for Form 1065.**
Schedule K-1 (Form 1065) 2009
PTPA0312  08/14/09

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

**1  Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | *Report on* |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

**2  Net rental real estate income (loss)**    See the Partner's Instructions

**3  Other net rental income (loss)**
| | |
|---|---|
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |

**4  Guaranteed payments**    Schedule E, line 28, column (j)
**5  Interest income**    Form 1040, line 8a
**6 a Ordinary dividends**    Form 1040, line 9a
**6 b Qualified dividends**    Form 1040, line 9b
**7  Royalties**    Schedule E, line 4
**8  Net short-term capital gain (loss)**    Schedule D, line 5, column (f)
**9 a Net long-term capital gain (loss)**    Schedule D, line 12, column (f)
**9 b Collectibles (28%) gain (loss)**    28% Rate Gain Worksheet, line 4 (Schedule D Instructions)
**9 c Unrecaptured section 1250 gain**    See the Partner's Instructions
**10  Net section 1231 gain (loss)**    See the Partner's Instructions

**11  Other income (loss)**
*Code*
| A | Other portfolio income (loss) | See the Partner's Instructions |
|---|---|---|
| B | Involuntary conversions | See the Partner's Instructions |
| C | Section 1256 contracts and straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub 535 |
| E | Cancellation of debt | Form 1040, line 21 or Form 982 |
| F | Other income (loss) | See the Partner's Instructions |

**12  Section 179 deduction**    See the Partner's Instructions

**13  Other deductions**
| A | Cash contributions (50%) | |
|---|---|---|
| B | Cash contributions (30%) | |
| C | Noncash contributions (50%) | |
| D | Noncash contributions (30%) | See the Partner's Instructions |
| E | Capital gain property to a 50% organization (30%) | |
| F | Capital gain property (20%) | |
| G | Contributions (100%) | |
| H | Investment interest expense | Form 4952, line 1 |
| I | Deductions — royalty income | Schedule E, line 18 |
| J | Section 59(e)(2) expenditures | See the Partner's Instructions |
| K | Deductions — portfolio (2% floor) | Schedule A, line 23 |
| L | Deductions — portfolio (other) | Schedule A, line 28 |
| M | Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| N | Educational assistance benefits | See the Partner's Instructions |
| O | Dependent care benefits | Form 2441, line 14 |
| P | Preproductive period expenses | See the Partner's Instructions |
| Q | Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| R | Pensions and IRAs | See the Partner's Instructions |
| S | Reforestation expense deduction | See the Partner's Instructions |
| T | Domestic production activities information | See Form 8903 Instructions |
| U | Qualified production activities income | Form 8903, line 7 |
| V | Employer's W-2 wages | Form 8903, line 15 |
| W | Other deductions | See the Partner's Instructions |

**14  Self-employment earnings (loss)**

Note. *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*

| A | Net earnings (loss) from self-employment | Schedule SE, Section A or B |
|---|---|---|
| B | Gross farming or fishing income | See the Partner's Instructions |
| C | Gross non-farm income | See the Partner's Instructions |

**15  Credits**
| A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | See the Partner's Instructions |
|---|---|---|
| B | Low-income housing credit (other) from pre-2008 buildings | See the Partner's Instructions |
| C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | Form 8586, line 11 |
| D | Low-income housing credit (other) from post-2007 buildings | Form 8586, line 11 |
| E | Qualified rehabilitation expenditures (rental real estate) | See the Partner's Instructions |
| F | Other rental real estate credits | |
| G | Other rental credits | |
| H | Undistributed capital gains credit | Form 1040, line 70; check box a |
| I | Alcohol and cellulosic biofuel fuels credit | Form 6478, line 7 |
| J | Work opportunity credit | Form 5884, line 3 |

| | *Code* | *Report on* |
|---|---|---|
| K | Disabled access credit | See the Partner's Instructions |
| L | Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| M | Credit for increasing research activities | See the Partner's Instructions |
| N | Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| O | Backup withholding | Form 1040, line 61 |
| P | Other credits | See the Partner's Instructions |

**16  Foreign transactions**
| A | Name of country or U.S. possession | |
|---|---|---|
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at partner level | |

*Foreign gross income sourced at partnership level*
| D | Passive category | |
|---|---|---|
| E | General category | Form 1116, Part I |
| F | Other | |

*Deductions allocated and apportioned at partner level*
| G | Interest expense | Form 1116, Part I |
|---|---|---|
| H | Other | Form 1116, Part I |

*Deductions allocated and apportioned at partnership level to foreign source income*
| I | Passive category | |
|---|---|---|
| J | General category | Form 1116, Part I |
| K | Other | |

*Other information*
| L | Total foreign taxes paid | Form 1116, Part II |
|---|---|---|
| M | Total foreign taxes accrued | Form 1116, Part II |
| N | Reduction in taxes available for credit | Form 1116, line 12 |
| O | Foreign trading gross receipts | Form 8873 |
| P | Extraterritorial income exclusion | Form 8873 |
| Q | Other foreign transactions | See the Partner's Instructions |

**17  Alternative minimum tax (AMT) items**
| A | Post-1986 depreciation adjustment | |
|---|---|---|
| B | Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| C | Depletion (other than oil & gas) | |
| D | Oil, gas, & geothermal — gross income | |
| E | Oil, gas, & geothermal — deductions | |
| F | Other AMT items | |

**18  Tax-exempt income and nondeductible expenses**
| A | Tax-exempt interest income | Form 1040, line 8b |
|---|---|---|
| B | Other tax-exempt income | See the Partner's Instructions |
| C | Nondeductible expenses | See the Partner's Instructions |

**19  Distributions**
| A | Cash and marketable securities | |
|---|---|---|
| B | Distribution subject to section 737 | See Partner's Instructions |
| C | Other property | |

**20  Other information**
| A | Investment income | Form 4952, line 4a |
|---|---|---|
| B | Investment expenses | Form 4952, line 5 |
| C | Fuel tax credit information | Form 4136 |
| D | Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| E | Basis of energy property | See the Partner's Instructions |
| F | Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| G | Recapture of low-income housing credit (other) | Form 8611, line 8 |
| H | Recapture of investment credit | Form 4255 |
| I | Recapture of other credits | See the Partner's Instructions |
| J | Look-back interest — completed long-term contracts | See Form 8697 |
| K | Look-back interest — income forecast method | See Form 8866 |
| L | Dispositions of property with section 179 deductions | |
| M | Recapture of section 179 deduction | |
| N | Interest expense for corporate partners | |
| O | Section 453(l)(3) information | |
| P | Section 453A(c) information | |
| Q | Section 1260(b) information | |
| R | Interest allocable to production expenditures | See the Partner's Instructions |
| S | CCF nonqualified withdrawals | |
| T | Depletion information — oil and gas | |
| U | Amortization of reforestation costs | |
| V | Unrelated business taxable income | |
| W | Precontribution gain (loss) | |
| X | Section 108(i) information | |
| Y | Other information | |

Form 1065, Line 20
**Other deductions**

| | |
|---|---:|
| ACCOUNTING | 151. |
| ADVERTISING | 2,243. |
| AUTOMOBILE AND TRUCK EXPENSE | 5,012. |
| BANK CHARGES | 982. |
| COMMISSIONS | 36,338. |
| COMPUTER SERVICES AND SUPPLIES | 15,576. |
| DUES AND SUBSCRIPTIONS | 1,154. |
| EQUIPMENT RENT | 5,276. |
| INSURANCE | 2,310. |
| LEGAL AND PROFESSIONAL | 30,496. |
| MEALS AND ENTERTAINMENT (50%) | 5,651. |
| OFFICE EXPENSE | 15,531. |
| OUTSIDE SERVICES | 51,019. |
| PERMITS AND FEES | 3,295. |
| POSTAGE | 857. |
| TELEPHONE | 3,831. |

Total                                                      179,722.

Form 1065, Schedule L, Line 17
**Other Current Liabilities**

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---:|---:|
| DEPOSITS | 6,000. | 46,000. |
| LOANS FROM AFFILIATED COMPANIES | 43,756. | 16,048. |
| MORTGAGE TAX & INSURANCE ESCROWS | 0. | 27,677. |
| Total | 49,756. | 89,725. |

Form **1065**

Department of the Treasury
Internal Revenue Service

# U.S. Return of Partnership Income
For calendar year 2010, or tax year beginning _____, 2010,
ending _____, 20 ___
► See separate instructions.

OMB No. 1545-0099

**2010**

| A Principal business activity | | Name of partnership | | D Employer identification number |
|---|---|---|---|---|
| SALES | | RALPH ROBERTS REALTY, L.L.C. | | 20-2660635 |
| B Principal product or service | Print or type. | Number, street, and room or suite number. If a P.O. box, see the instructions. | | E Date business started |
| REAL ESTATE | | 12900 HALL RD. SUITE 190 | | 03/15/05 |
| C Business code number | | City or town      State  ZIP code | | F Total assets (see instrs) |
| 531210 | | STERLING HEIGHTS      MI 48313 | | $      436,194. |

G Check applicable boxes: **(1)** ☐ Initial return **(2)** ☐ Final return **(3)** ☐ Name change **(4)** ☒ Address change **(5)** ☒ Amended return
**(6)** ☐ Technical termination — also check (1) or (2)

H Check accounting method: **(1)** ☒ Cash **(2)** ☐ Accrual **(3)** ☐ Other (specify) ► _____

I Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ► _____ 2

J Check if Schedules C and M-3 are attached ............................................. ☐

**Caution.** *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | | | | |
|---|---|---|---|---|
| **I N C O M E** | 1a Gross receipts or sales................................. | 1a | 968,897. | |
| | b Less returns and allowances............................. | 1b | | 1c | 968,897. |
| | 2 Cost of goods sold (Schedule A, line 8)........................... | | 2 | |
| | 3 Gross profit. Subtract line 2 from line 1c............................ | | 3 | 968,897. |
| | 4 Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) ............................ | | 4 | |
| | 5 Net farm profit (loss) (attach Schedule F (Form 1040)) ................ | | 5 | |
| | 6 Net gain (loss) from Form 4797, Part II, line 17(attach Form 4797) ........ | | 6 | |
| | 7 Other income (loss) (attach statement) ............................ | | 7 | |
| | 8 **Total income (loss).** Combine lines 3 through 7 .................. | | 8 | 968,897. |

| | | | | |
|---|---|---|---|---|
| **DEDUCTIONS** (SEE INSTRUCTIONS FOR LIMITATIONS) | 9 Salaries and wages (other than to partners) (less employment credits)........ | | 9 | 225,657. |
| | 10 Guaranteed payments to partners.............................. | | 10 | |
| | 11 Repairs and maintenance .................................. | | 11 | |
| | 12 Bad debts ........................................... | | 12 | |
| | 13 Rent ............................................... | | 13 | 12,676. |
| | 14 Taxes and licenses ..................................... | | 14 | 29,482. |
| | 15 Interest ............................................. | | 15 | 412. |
| | 16a Depreciation (if required, attach Form 4562) ........ | 16a | 13,038. | | |
| | b Less depreciation reported on Schedule A and elsewhere on return ..... | 16b | | 16c | 13,038. |
| | 17 Depletion **(Do not deduct oil and gas depletion.)** .................. | | 17 | |
| | 18 Retirement plans, etc .................................... | | 18 | |
| | 19 Employee benefit programs................................. | | 19 | 15,000. |
| | 20 Other deductions (attach statement) .......................... *.. STMT | 20 | 484,418. |
| | 21 **Total deductions.** Add the amounts shown in the far right column for lines 9 through 20............. | | 21 | 780,683. |
| | 22 **Ordinary business income (loss).** Subtract line 21 from line 8.................. | | 22 | 188,214. |

**Sign Here**

Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge.

► _____      _____
Signature of general partner or limited liability company member manager      Date

May the IRS discuss this return with the preparer shown below (see instrs)? ☒ Yes ☐ No

| | Print/Type preparer's name | Preparer's signature | Date | Check ☒ if self-employed | PTIN |
|---|---|---|---|---|---|
| **Paid Preparer Use Only** | JOSEPH P. SIRIANNI, C.P.A. | | | | P22008933 |
| | Firm's name ► SIRIANNI & COMPANY, PLLC | | | Firm's EIN ► 26-2721789 | |
| | Firm's address ► 2898 PHEASANT RING DR | | | | |
| | ROCHESTER HILLS      MI 48309-2857 | | | Phone no. (248) 375-5201 | |

BAA For Paperwork Reduction Act Notice, see separate instructions.      PTPA0112 01/18/11      Form **1065** (2010)

## Schedule A   Cost of Goods Sold (see the instructions)

| | | |
|---|---|---|
| 1 Inventory at beginning of year.................................................... | 1 | |
| 2 Purchases less cost of items withdrawn for personal use......................... | 2 | |
| 3 Cost of labor.................................................................. | 3 | |
| 4 Additional section 263A costs (attach statement)................................ | 4 | |
| 5 Other costs (attach statement)................................................. | 5 | |
| 6 **Total.** Add lines 1 through 5................................................ | 6 | |
| 7 Inventory at end of year...................................................... | 7 | |
| 8 **Cost of goods sold.** Subtract line 7 from line 6. Enter here and on page 1, line 2.......................... | 8 | |

9a Check all methods used for valuing closing inventory:

(i) ☐   Cost as described in Regulations section 1.471-3

(ii) ☐   Lower of cost or market as described in Regulations section 1.471-4

(iii) ☐   Other (specify method used and attach explanation)............. ▶

b Check this box if there was a writedown of 'subnormal' goods as described in Regulations section 1.471-2(c)................. ▶ ☐

c Check this box if the LIFO inventory method was adopted this tax year for any good *(if checked, attach Form 970)* ........... ▶ ☐

d Do the rules of section 263A (for property produced or acquired for resale) apply to the partnership?.................. ☐ Yes ☐ No

e Was there any change in determining quantities, cost, or valuations between opening and closing inventory?.......... ☐ Yes ☐ No

If 'Yes,' attach explanation .

## Schedule B   Other Information

| | | | | Yes | No |
|---|---|---|---|---|---|
| 1 What type of entity is filing this return? Check the applicable box: | | | | | |

a ☐   Domestic general partnership     b ☐   Domestic limited partnership

c ☒   Domestic limited liability company     d ☐   Domestic limited liability partnership

e ☐   Foreign partnership     f ☐   Other .... ▶

| | Yes | No |
|---|---|---|
| 2 At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? ................................................... | | X |
| 3 At the end of the tax year: | | |
| a Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership................................................ | X | |
| b Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership.................................. | | X |
| 4 At the end of the tax year, did the partnership: | | |
| a Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (iv) below ......................................... | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |

| | | | | | Yes | No |
|---|---|---|---|---|---|---|
| b Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (v) below .......................................... | | | | | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |

Form 1065 (2010)

| | | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details . . . . . . . | | X |
| 6 | Does this partnership satisfy all four of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | X | |
| | If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| 10 | At any time during calendar year 2010, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If 'Yes,' enter the name of the foreign country.. ► | | X |
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions. | | X |
| 12 a | Is the partnership making, or had it previously made (and not revoked), a section 754 election? . . . . . . . . . . . . . . . . . . . . . . | | X |
| | See instructions for details regarding section 754 election. | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions. . . . . . . . . . . . . . . . . . . . . . | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions . . . . . . . . . . . . . . . . . | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than entities wholly-owned by the partnership throughout the tax year) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in a partnership property? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ► | | |
| 16 | Does the partnership have any foreign partners? If 'Yes,' enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ► | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ► | | |

**Designation of Tax Matters Partner** (see the instructions)
Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| | | | |
|---|---|---|---|
| Name of designated TMP ► | RALPH R. ROBERTS | Identifying number of TMP ► | ▬▬▬▬▬ |
| If the TMP is an entity, name of TMP representative ► | | Phone number of TMP ► | (586) 751-0000 |
| Address of designated TMP ► | 18299 TARA DR. CLINTON TOWNSHIP, MI 48036-3632 | | |

Form 1065 (2010)

## Schedule K   Partners' Distributive Share Items

| | | | | Total amount |
|---|---|---|---|---|
| | 1 Ordinary business income (loss) (page 1, line 22) | | 1 | 188,214. |
| | 2 Net rental real estate income (loss) (attach Form 8825) | | 2 | |
| | 3a Other gross rental income (loss) | 3a | | |
| | b Expenses from other rental activities (attach stmt) | 3b | | |
| | c Other net rental income (loss). Subtract line 3b from line 3a | | 3c | |
| Income (Loss) | 4 Guaranteed payments | | 4 | 15,000. |
| | 5 Interest income | | 5 | |
| | 6 Dividends: a Ordinary dividends | | 6a | |
| | b Qualified dividends | 6b | | |
| | 7 Royalties | | 7 | |
| | 8 Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | | 8 | |
| | 9a Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | | 9a | |
| | b Collectibles (28%) gain (loss) | 9b | | |
| | c Unrecaptured section 1250 gain (attach statement) | 9c | | |
| | 10 Net section 1231 gain (loss) (attach Form 4797) | | 10 | |
| | 11 Other income (loss) (see instructions)   Type ► | | 11 | |
| Deduc-tions | 12 Section 179 deduction (attach Form 4562) | | 12 | |
| | 13a Contributions.......Cash contributions (50%) | | 13a | 1,190. |
| | b Investment interest expense | | 13b | |
| | c Section 59(e)(2) expenditures: (1) Type ► _____ (2) Amount ► | | 13c (2) | |
| | d Other deductions (see instructions) Type ►MEDICAL INSURANCE PAYMENTS FOR PARTNERS | | 13d | 15,000. |
| Self-Employ-ment | 14a Net earnings (loss) from self-employment | | 14a | 203,214. |
| | b Gross farming or fishing income | | 14b | |
| | c Gross nonfarm income | | 14c | 968,897. |
| Credits | 15a Low-income housing credit (section 42(j)(5)) | | 15a | |
| | b Low-income housing credit (other) | | 15b | |
| | c Qualified rehabilitation expenditures (rental real estate)(attach Form 3468) | | 15c | |
| | d Other rental real estate credits (see instructions) . Type ► _____ | | 15d | |
| | e Other rental credits (see instructions) .......... Type ► _____ | | 15e | |
| | f Other credits (see instructions) ................ Type ► _____ | | 15f | |
| Foreign Trans-actions | 16a Name of country or U.S. possession ... ► _____ | | | |
| | b Gross income from all sources | | 16b | |
| | c Gross income sourced at partner level | | 16c | |
| | Foreign gross income sourced at partnership level | | | |
| | d Passive category ► _____ e General category ► _____ f Other ...... ► | | 16f | |
| | Deductions allocated and apportioned at partner level | | | |
| | g Interest expense ► _____ h Other | | 16h | |
| | Deductions allocated and apportioned at partnership level to foreign source income | | | |
| | i Passive category ► _____ j General category ► _____ k Other ...... ► | | 16k | |
| | l Total foreign taxes (check one): ► Paid ☐   Accrued ☐ | | 16l | |
| | m Reduction in taxes available for credit (attach statement) | | 16m | |
| | n Other foreign tax information (attach statement) | | | |
| Alternative Minimum Tax (AMT) Items | 17a Post-1986 depreciation adjustment | | 17a | 644. |
| | b Adjusted gain or loss | | 17b | |
| | c Depletion (other than oil and gas) | | 17c | |
| | d Oil, gas, and geothermal properties— gross income | | 17d | 4 |
| | e Oil, gas, and geothermal properties— deductions | | 17e | |
| | f Other AMT items (attach stmt) | | 17f | |
| Other Infor-mation | 18a Tax-exempt interest income | | 18a | |
| | b Other tax-exempt income | | 18b | |
| | c Nondeductible expenses | | 18c | 10,442. |
| | 19a Distributions of cash and marketable securities | | 19a | |
| | b Distributions of other property | | 19b | |
| | 20a Investment income | | 20a | |
| | b Investment expenses | | 20b | |
| | c Other items and amounts (attach stmt) | | | |

BAA      Form **1065** (2010)

## Analysis of Net Income (Loss)

| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l. | | | | 1 | 187,024. |
|---|---|---|---|---|---|---|

| 2 | Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|---|
| a | General partners .... | | | | | | |
| b | Limited partners .... | | 37,405. | | 149,619. | | |

## Schedule L   Balance Sheets per Books

| Assets | | Beginning of tax year | | End of tax year | |
|---|---|---|---|---|---|
| | | (a) | (b) | (c) | (d) |
| 1 | Cash ............................... | | 91,996. | | 248,829. |
| 2a | Trade notes and accounts receivable ........ | | | | |
| b | Less allowance for bad debts .............. | | | | |
| 3 | Inventories ........................... | | | | |
| 4 | U.S. government obligations ............... | | | | |
| 5 | Tax-exempt securities ..................... | | | | |
| 6 | Other current assets (attach stmt) .... Ln. 6. Stmt | | 0. | | 172,419. |
| 7 | Mortgage and real estate loans............. | | | | |
| 8 | Other investments (attach stmt) ........... | | | | |
| 9a | Buildings and other depreciable assets...... | 9,913. | | 27,178. | |
| b | Less accumulated depreciation............. | 1,983. | 7,930. | 15,021. | 12,157. |
| 10a | Depletable assets ........................ | | | | |
| b | Less accumulated depletion............... | | | | |
| 11 | Land (net of any amortization) ............. | | | | |
| 12a | Intangible assets (amortizable only) ........ | | | | |
| b | Less accumulated amortization............. | | | | |
| 13 | Other assets (attach stmt) .... Ln. 13. Stmt | | 0. | | 2,789. |
| 14 | Total assets .............................. | | 99,926. | | 436,194. |
| | **Liabilities and Capital** | | | | |
| 15 | Accounts payable ........................ | | | | |
| 16 | Mortgages, notes, bonds payable in less than 1 year .... | | | | |
| 17 | Other current liabilities (attach stmt) .. Ln. 17. Stmt | | 89,725. | | 233,130. |
| 18 | All nonrecourse loans ..................... | | 58,697. | | |
| 19 | Mortgages, notes, bonds payable in 1 year or more ..... | | | | 74,978. |
| 20 | Other liabilities (attach stmt) .............. | | | | |
| 21 | Partners' capital accounts ................. | | -48,496. | | 128,086. |
| 22 | Total liabilities and capital ................. | | 99,926. | | 436,194. |

## Schedule M-1   Reconciliation of Income (Loss) per Books With Income (Loss) per Return
**Note.** Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| 1 | Net income (loss) per books............. | 176,582. | 6 | Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | |
|---|---|---|---|---|---|
| 2 | Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | | a Tax-exempt interest ... $ _ _ _ _ _ _ _ _ _ _ | |
| 3 | Guaranteed pmts (other than health insurance) ..... | | 7 | Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | |
| 4 | Expenses recorded on books this year not included on Schedule K, lines 1 through 13d, and 16l (itemize): | | | a Depreciation ..... $ _ _ _ _ _ _ _ _ _ _ | |
| | a Depreciation ...... $ _ _ _ _ _ _ _ _ _ _ | | | | |
| | b Travel and entertainment ..... $ _ _ _ _ _ 10,442. | 10,442. | 8 | Add lines 6 and 7 ......................... | |
| 5 | Add lines 1 through 4 ................... | 187,024. | 9 | Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 ........ | 187,024. |

## Schedule M-2   Analysis of Partners' Capital Accounts

| 1 | Balance at beginning of year ............ | -48,496. | 6 | Distributions: a Cash .................... | |
|---|---|---|---|---|---|
| 2 | Capital contributed: a Cash ............. | | | b Property ............... | |
| | b Property ......... | | 7 | Other decreases (itemize): _ _ _ _ _ _ _ _ _ | |
| 3 | Net income (loss) per books............. | 176,582. | | | |
| 4 | Other increases (itemize): _ _ _ _ _ _ _ _ _ | | 8 | Add lines 6 and 7 ......................... | |
| 5 | Add lines 1 through 4 ................... | 128,086. | 9 | Balance at end of year. Subtract line 8 from line 5 .... | 128,086. |

# Information on Partners Owning 50% or More of the Partnership

► Attach to Form 1065. See instructions.

OMB No. 1545-0099

| Name of partnership | Employer identification number (EIN) |
|---|---|
| RALPH ROBERTS REALTY, L.L.C. | 20-2660635 |

## Part I — Entities Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| ROWLAND FAMILY L.L.C. | 32-0075236 | LCC | United States | 99.0000 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## Part II — Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

BAA For Paperwork Reduction Act Notice, see the instructions for Form 1065.          Cat. No. 49842K          Schedule B-1 (Form 1065) (12-2009)

Form **4562**

Department of the Treasury
Internal Revenue Service     (99)

**Depreciation and Amortization**
(Including Information on Listed Property)

► See separate instructions.     ► Attach to your tax return.

OMB No. 1545-0172

**2010**

Attachment
Sequence No. **67**

Name(s) shown on return

RALPH ROBERTS REALTY, L.L.C.

Identifying number

20-2660635

Business or activity to which this form relates

Form 1065 Line 22

**Part I** **Election To Expense Certain Property Under Section 179**
Note: *If you have any listed property, complete Part V before you complete Part I.*

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | 1 | 500,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | 2,000,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 | 7 | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the smaller of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2009 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2011. Add lines 9 and 10, less line 12 ........ ► 13 | | |

Note: *Do not use Part II or Part III below for listed property. Instead, use Part V.*

**Part II** **Special Depreciation Allowance and Other Depreciation** (Do not include listed property) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | 8,633. |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

**Part III** **MACRS Depreciation** (Do not include listed property) (See instructions)

**Section A**

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2010 | 17 | 3,172. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ► ☐ | | |

**Section B — Assets Placed in Service During 2010 Tax Year Using the General Depreciation System**

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | 8,632. | 7.0 yrs | HY | 200 DB | 1,233. |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

**Section C — Assets Placed in Service During 2010 Tax Year Using the Alternative Depreciation System**

| | | | | | | |
|---|---|---|---|---|---|---|
| 20a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

**Part IV** **Summary** (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 13,038. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs | 23 | |

BAA For Paperwork Reduction Act Notice, see separate instructions.     FDIZ0812  12/08/10     Form **4562** (2010)

**Part V** Listed Property (Include automobiles, certain other vehicles, certain computers, and property used for entertainment, recreation, or amusement.)

**Note:** *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A – Depreciation and Other Information (Caution:** *See the instructions for limits for passenger automobiles.***)**

| 24a Do you have evidence to support the business/investment use claimed? | | | Yes | | No | 24b If 'Yes,' is the evidence written? | | Yes | No |

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) ................................. 25 | | | | | | | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |

| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1................. | 28 | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1............................................... | | 29 |

**Section B – Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other 'more than 5% owner,' or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**do not** include commuting miles) ......................... | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year........ | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven................................. | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 ......................... | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 34 Was the vehicle available for personal use during off-duty hours?...................... | | | | | | | | | | | | |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? .......... | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? ................................ | | | | | | | | | | | | |

**Section C – Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees?................................................................. | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners................ | | |
| 39 Do you treat all use of vehicles by employees as personal use?............................................................ | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received?........................................................... | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) ................... | | |

**Note:** *If your answer to 37, 38, 39, 40, or 41 is 'Yes,' do not complete Section B for the covered vehicles.*

**Part VI** Amortization

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2010 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2010 tax year ......................................... 43 | | | | | |
| 44 Total. Add amounts in column (f). See the instructions for where to report................................... 44 | | | | | |

Form **8879-PE**

**IRS e-file Signature Authorization for Form 1065**

OMB No. 1545-2042

For calendar year 2010, or tax year beginning _ _ _ _ _ _ _ , 2010,
ending _ _ _ _ _ _ . _ _ _ _ .

▶ See instructions. Do not send to the IRS. Keep for your records.

**2010**

Department of the Treasury
Internal Revenue Service

| Name of partnership | Employer identification number |
|---|---|
| RALPH ROBERTS REALTY, L.L.C. | 20-2660635 |

### Part I  Tax Return Information (Whole dollars only)

| | | | |
|---|---|---|---|
| 1 | Gross receipts or sales less returns and allowances (Form 1065, line 1c)............................... | 1 | 968,897. |
| 2 | Gross profit (Form 1065, line 3) ...................................................... | 2 | 968,897. |
| 3 | Ordinary business income (loss) (Form 1065, line 22)........................................ | 3 | 188,214. |
| 4 | Net rental real estate income (loss) (Form 1065, Schedule K, line 2)............................. | 4 | |
| 5 | Other net rental income (loss) (Form 1065, Schedule K, line 3c)................................ | 5 | |

### Part II  Declaration and Signature Authorization of General Partner or Limited Liability Company Member Manager (Be sure to get a copy of the partnership's return)

Under penalties of perjury, I declare that I am a general partner or limited liability company member manager of the above partnership and that I have examined a copy of the partnership's 2010 electronic return of partnership income and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the partnership's electronic tax return. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission and **(b)** the reason for any delay in processing the return. I have selected a personal identification number (PIN) as my signature for the partnership's electronic income tax return.

General Partner or Limited Liability Company Member Manager's PIN: check one box only

☐  I authorize _____ to enter my PIN _____ as my signature on the
ERO firm name                         do not enter all zeros
partnership's 2010 electronically filed income tax return.

☒  As a general partner or limited liability company member manager of the partnership, I will enter my PIN as my signature on the partnership's 2010 electronically filed income tax return.

General partner or limited liability company member manager's signature ▶ _____

Title ▶ LLC MEMBER                                          Date ▶ _____

### Part III  Certification and Authentication

ERO's EFIN/PIN. Enter your six-digit EFIN followed by your five-digit self-selected PIN.    40273722240
                                                         do not enter all zeros

I certify that the above numeric entry is my PIN, which is my signature on the 2010 electronically filed income tax return for the partnership indicated above. I confirm that I am submitting this return in accordance with the requirements of Pub 3112, IRS e-file Application and Participation, and Pub 4163, Modernized e-File (MeF) Information for Authorized IRS e-file Providers for Business Returns.

ERO's signature ▶ _____    Date ▶ 02/29/2012

**ERO Must Retain This Form — See Instructions
Do Not Submit This Form to the IRS Unless Requested To Do So**

BAA  For Paperwork Reduction Act Notice, see instructions.                              Form 8879-PE (2010)

**Schedule K-1**
(Form 1065)

**2010**

For calendar year 2010, or tax
year beginning _____ , 2010
ending _____ , ____

Department of the Treasury
Internal Revenue Service

| Final K-1 | X Amended K-1 | OMB No. 1545-0099 |

**Partner's Share of Income, Deductions, Credits, etc.**

► See separate instructions.

### Part I — Information About the Partnership

**A** Partnership's employer identification number
20-2660635

**B** Partnership's name, address, city, state, and ZIP code
RALPH ROBERTS REALTY, L.L.C.
12900 HALL RD. SUITE 190
STERLING HEIGHTS, MI 48313

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's identifying number
32-0075236

**F** Partner's name, address, city, state, and ZIP code
ROWLAND FAMILY, L.L.C.
12900 HALL RD.
SUITE 190
STERLING HEIGHTS, MI 48313

**G** ☒ General partner or LLC member-manager ☐ Limited partner or other LLC member

**H** ☒ Domestic partner ☐ Foreign partner

**I** What type of entity is this partner? PARTNERSHIP

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 80.00000 % | 80.00000 % |
| Loss | 80.00000 % | 80.00000 % |
| Capital | 80.00000 % | 80.00000 % |

**K** Partner's share of liabilities at year end:

| | |
|---|---|
| Nonrecourse ........................ $ | 186,504. |
| Qualified nonrecourse financing........ $ | 59,982. |
| Recourse ........................... $ | |

**L** Partner's capital account analysis:

| | |
|---|---|
| Beginning capital account ............ $ | -49,215. |
| Capital contributed during the year..... $ | |
| Current year increase (decrease) ...... $ | 141,266. |
| Withdrawals and distributions.......... $ | |
| Ending capital account............... $ | 92,051. |

☒ Tax basis ☐ GAAP ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes ☒ No
If 'Yes', attach statement (see instructions)

### Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | |
|---|---|---|
| 1 | Ordinary business income (loss) | 150,571. |
| 2 | Net rental real estate income (loss) | |
| 3 | Other net rental income (loss) | |
| 4 | Guaranteed payments | |
| 5 | Interest income | |
| 6a | Ordinary dividends | |
| 6b | Qualified dividends | |
| 7 | Royalties | |
| 8 | Net short-term capital gain (loss) | |
| 9a | Net long-term capital gain (loss) | |
| 9b | Collectibles (28%) gain (loss) | |
| 9c | Unrecaptured section 1250 gain | |
| 10 | Net section 1231 gain (loss) | |
| 11 | Other income (loss) | |
| 12 | Section 179 deduction | |
| 13 | Other deductions | |
| | A | 952. |
| 14 | Self-employment earnings (loss) | |
| | A | 150,571. |
| | C | 775,118. |

| 15 | Credits |
|---|---|
| 16 | Foreign transactions |
| 17 | Alternative minimum tax (AMT) items |
| | A | 515. |
| 18 | Tax-exempt income and nondeductible expenses |
| | C | 8,354. |
| 19 | Distributions |
| 20 | Other information |

*See attached statement for additional information.

**F O R**

**I R S**

**U S E**

**O N L Y**

PTPA0312  01/25/11

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.



**1** Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | Report on |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

**2** Net rental real estate income (loss) — See the Partner's Instructions
**3** Other net rental income (loss)

| | |
|---|---|
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |

**4** Guaranteed payments — Schedule E, line 28, column (j)
**5** Interest income — Form 1040, line 8a
**6a** Ordinary dividends — Form 1040, line 9a
**6b** Qualified dividends — Form 1040, line 9b
**7** Royalties — Schedule E, line 4
**8** Net short-term capital gain (loss) — Schedule D, line 5, column (f)
**9a** Net long-term capital gain (loss) — Schedule D, line 12, column (f)
**9b** Collectibles (28%) gain (loss) — 28% Rate Gain Worksheet, line 4 (Schedule D Instructions)
**9c** Unrecaptured section 1250 gain — See the Partner's Instructions
**10** Net section 1231 gain (loss) — See the Partner's Instructions
**11** Other income (loss)

Code
| | |
|---|---|
| **A** Other portfolio income (loss) | See the Partner's Instructions |
| **B** Involuntary conversions | See the Partner's Instructions |
| **C** Section 1256 contracts and straddles | Form 6781, line 1 |
| **D** Mining exploration costs recapture | See Pub 535 |
| **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| **F** Other income (loss) | See the Partner's Instructions |

**12** Section 179 deduction — See the Partner's Instructions
**13** Other deductions

| | |
|---|---|
| **A** Cash contributions (50%) | |
| **B** Cash contributions (30%) | |
| **C** Noncash contributions (50%) | |
| **D** Noncash contributions (30%) | See the Partner's Instructions |
| **E** Capital gain property to a 50% organization (30%) | |
| **F** Capital gain property (20%) | |
| **G** Contributions (100%) | |
| **H** Investment interest expense | Form 4952, line 1 |
| **I** Deductions — royalty income | Schedule E, line 18 |
| **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| **L** Deductions — portfolio (other) | Schedule A, line 28 |
| **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| **N** Educational assistance benefits | See the Partner's Instructions |
| **O** Dependent care benefits | Form 2441, line 12 |
| **P** Preproductive period expenses | See the Partner's Instructions |
| **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| **R** Pensions and IRAs | See the Partner's Instructions |
| **S** Reforestation expense deduction | See the Partner's Instructions |
| **T** Domestic production activities information | See Form 8903 Instructions |
| **U** Qualified production activities income | Form 8903, line 7b |
| **V** Employer's Form W-2 wages | Form 8903, line 17 |
| **W** Other deductions | See the Partner's Instructions |

**14** Self-employment earnings (loss)

Note. *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*

| | |
|---|---|
| **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| **B** Gross farming or fishing income | See the Partner's Instructions |
| **C** Gross non-farm income | See the Partner's Instructions |

**15** Credits

| | |
|---|---|
| **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | See the Partner's Instructions |
| **B** Low-income housing credit (other) from pre-2008 buildings | See the Partner's Instructions |
| **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | Form 8586, line 11 |
| **D** Low-income housing credit (other) from post-2007 buildings | Form 8586, line 11 |
| **E** Qualified rehabilitation expenditures (rental real estate) | See the Partner's Instructions |
| **F** Other rental real estate credits | |
| **G** Other rental credits | |
| **H** Undistributed capital gains credit | Form 1040, line 71; check box a |
| **I** Alcohol and cellulosic biofuel fuels credit | Form 6478, line 8 |
| **J** Work opportunity credit | Form 5884, line 3 |

| Code | Report on |
|---|---|
| **K** Disabled access credit | See the Partner's Instructions |
| **L** Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| **M** Credit for increasing research activities | See the Partner's Instructions |
| **N** Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| **O** Backup withholding | Form 1040, line 61 |
| **P** Other credits | See the Partner's Instructions |

**16** Foreign transactions

| | |
|---|---|
| **A** Name of country or U.S. possession | |
| **B** Gross income from all sources | Form 1116, Part I |
| **C** Gross income sourced at partner level | |

*Foreign gross income sourced at partnership level*
| | |
|---|---|
| **D** Passive category | |
| **E** General category | Form 1116, Part I |
| **F** Other | |

*Deductions allocated and apportioned at partner level*
| | |
|---|---|
| **G** Interest expense | Form 1116, Part I |
| **H** Other | Form 1116, Part I |

*Deductions allocated and apportioned at partnership level to foreign source income*
| | |
|---|---|
| **I** Passive category | |
| **J** General category | Form 1116, Part I |
| **K** Other | |

*Other information*
| | |
|---|---|
| **L** Total foreign taxes paid | Form 1116, Part II |
| **M** Total foreign taxes accrued | Form 1116, Part II |
| **N** Reduction in taxes available for credit | Form 1116, line 12 |
| **O** Foreign trading gross receipts | Form 8873 |
| **P** Extraterritorial income exclusion | Form 8873 |
| **Q** Other foreign transactions | See the Partner's Instructions |

**17** Alternative minimum tax (AMT) items

| | |
|---|---|
| **A** Post-1986 depreciation adjustment | |
| **B** Adjusted gain or loss | See the Partner's Instructions and the Instructions for Form 6251 |
| **C** Depletion (other than oil & gas) | |
| **D** Oil, gas, & geothermal — gross income | |
| **E** Oil, gas, & geothermal — deductions | |
| **F** Other AMT items | |

**18** Tax-exempt income and nondeductible expenses

| | |
|---|---|
| **A** Tax-exempt interest income | Form 1040, line 8b |
| **B** Other tax-exempt income | See the Partner's Instructions |
| **C** Nondeductible expenses | See the Partner's Instructions |

**19** Distributions

| | |
|---|---|
| **A** Cash and marketable securities | |
| **B** Distribution subject to section 737 | See the Partner's Instructions |
| **C** Other property | |

**20** Other information

| | |
|---|---|
| **A** Investment income | Form 4952, line 4a |
| **B** Investment expenses | Form 4952, line 5 |
| **C** Fuel tax credit information | Form 4136 |
| **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| **E** Basis of energy property | See the Partner's Instructions |
| **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| **H** Recapture of investment credit | Form 4255 |
| **I** Recapture of other credits | See the Partner's Instructions |
| **J** Look-back interest — completed long-term contracts | See Form 8697 |
| **K** Look-back interest — income forecast method | See Form 8866 |
| **L** Dispositions of property with section 179 deductions | |
| **M** Recapture of section 179 deduction | |
| **N** Interest expense for corporate partners | |
| **O** Section 453(l)(3) information | |
| **P** Section 453A(c) information | |
| **Q** Section 1260(b) information | See the Partner's Instructions |
| **R** Interest allocable to production expenditures | |
| **S** CCF nonqualified withdrawals | |
| **T** Depletion information — oil and gas | |
| **U** Amortization of reforestation costs | |
| **V** Unrelated business taxable income | |
| **W** Precontribution gain (loss) | |
| **X** Section 108(i) information | |
| **Y** Other information | |

Schedule K-1 (Form 1065) 2010

Schedule K-1 (ROWLAND FAMILY, L.L.C.), Supplemental Information
**Supplemental Information**

_____  _____

_____  _____

_____  _____

_____  _____

_____  _____

This Schedule K-1 is from an Eligible Small Business.  _____

# Schedule K-1
(Form 1065)

## 2010

For calendar year 2010, or tax

Department of the Treasury
Internal Revenue Service

year beginning _____ , 2010
ending _____ , _____

## Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

| | Final K-1 | ☒ Amended K-1 | OMB No. 1545-0099 |

### Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| | | | |
|---|---|---|---|
| 1 | Ordinary business income (loss) | 15 | Credits |
| | 37,643. | | |
| 2 | Net rental real estate income (loss) | | |
| 3 | Other net rental income (loss) | 16 | Foreign transactions |
| 4 | Guaranteed payments | | |
| | 15,000. | | |
| 5 | Interest income | | |
| 6a | Ordinary dividends | | |
| 6b | Qualified dividends | | |
| 7 | Royalties | | |
| 8 | Net short-term capital gain (loss) | | |
| 9a | Net long-term capital gain (loss) | 17 | Alternative minimum tax (AMT) items |
| | | A | 129. |
| 9b | Collectibles (28%) gain (loss) | | |
| 9c | Unrecaptured section 1250 gain | | |
| 10 | Net section 1231 gain (loss) | 18 | Tax-exempt income and nondeductible expenses |
| 11 | Other income (loss) | C | 2,088. |
| | | 19 | Distributions |
| 12 | Section 179 deduction | | |
| 13 | Other deductions | | |
| | A 238. | 20 | Other information |
| | M 15,000. | | |
| 14 | Self-employment earnings (loss) | | |
| | A 52,643. | | |
| | C 193,779. | | |

### Part I — Information About the Partnership

**A** Partnership's employer identification number
20-2660635

**B** Partnership's name, address, city, state, and ZIP code
RALPH ROBERTS REALTY, L.L.C.
12900 HALL RD. SUITE 190
STERLING HEIGHTS, MI 48313

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code
RALPH R. ROBERTS
18299 TARA DR.
CLINTON TOWNSHIP, MI 48036-3632

**G** ☒ General partner or LLC member-manager  ☐ Limited partner or other LLC member

**H** ☒ Domestic partner  ☐ Foreign partner

**I** What type of entity is this partner? INDIVIDUAL

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 20.00000 % | 20.00000 % |
| Loss | 20.00000 % | 20.00000 % |
| Capital | 20.00000 % | 20.00000 % |

**K** Partner's share of liabilities at year end:
Nonrecourse .................... $ 46,626.
Qualified nonrecourse financing...... $ 14,996.
Recourse .......................... $ _____

**L** Partner's capital account analysis:
Beginning capital account ............ $ 719.
Capital contributed during the year..... $ _____
Current year increase (decrease) ...... $ 35,316.
Withdrawals and distributions.......... $ _____
Ending capital account................ $ 36,035.

☒ Tax basis  ☐ GAAP  ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes  ☒ No
If 'Yes', attach statement (see instructions)

*See attached statement for additional information.

FOR IRS USE ONLY

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.    Schedule K-1 (Form 1065) 2010
12-53023-tjt    Doc 35    Filed 06/13/12    Entered 06/13/12 19:08:48    Page 101 of 120
PTPA0312 01/25/11

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

| Code | | Report on |
|---|---|---|
| **1** | **Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows. | |
| | | *Report on* |
| | Passive loss | See the Partner's Instructions |
| | Passive income | Schedule E, line 28, column (g) |
| | Nonpassive loss | Schedule E, line 28, column (h) |
| | Nonpassive income | Schedule E, line 28, column (j) |
| **2** | **Net rental real estate income (loss)** | See the Partner's Instructions |
| **3** | **Other net rental income (loss)** | |
| | Net income | Schedule E, line 28, column (g) |
| | Net loss | See the Partner's Instructions |
| **4** | **Guaranteed payments** | Schedule E, line 28, column (j) |
| **5** | **Interest income** | Form 1040, line 8a |
| **6a** | **Ordinary dividends** | Form 1040, line 9a |
| **6b** | **Qualified dividends** | Form 1040, line 9b |
| **7** | **Royalties** | Schedule E, line 4 |
| **8** | **Net short-term capital gain (loss)** | Schedule D, line 5, column (f) |
| **9a** | **Net long-term capital gain (loss)** | Schedule D, line 12, column (f) |
| **9b** | **Collectibles (28%) gain (loss)** | 28% Rate Gain Worksheet, line 4 (Schedule D Instructions) |
| **9c** | **Unrecaptured section 1250 gain** | See the Partner's Instructions |
| **10** | **Net section 1231 gain (loss)** | See the Partner's Instructions |
| **11** | **Other income (loss)** | |
| | *Code* | |
| | **A** Other portfolio income (loss) | See the Partner's Instructions |
| | **B** Involuntary conversions | See the Partner's Instructions |
| | **C** Section 1256 contracts and straddles | Form 6781, line 1 |
| | **D** Mining exploration costs recapture | See Pub 535 |
| | **E** Cancellation of debt | Form 1040, line 21 or Form 982 |
| | **F** Other income (loss) | See the Partner's Instructions |
| **12** | **Section 179 deduction** | See the Partner's Instructions |
| **13** | **Other deductions** | |
| | **A** Cash contributions (50%) | ⎤ |
| | **B** Cash contributions (30%) | |
| | **C** Noncash contributions (50%) | |
| | **D** Noncash contributions (30%) | See the Partner's Instructions |
| | **E** Capital gain property to a 50% organization (30%) | |
| | **F** Capital gain property (20%) | |
| | **G** Contributions (100%) | ⎦ |
| | **H** Investment interest expense | Form 4952, line 1 |
| | **I** Deductions — royalty income | Schedule E, line 18 |
| | **J** Section 59(e)(2) expenditures | See the Partner's Instructions |
| | **K** Deductions — portfolio (2% floor) | Schedule A, line 23 |
| | **L** Deductions — portfolio (other) | Schedule A, line 28 |
| | **M** Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| | **N** Educational assistance benefits | See the Partner's Instructions |
| | **O** Dependent care benefits | Form 2441, line 12 |
| | **P** Preproductive period expenses | See the Partner's Instructions |
| | **Q** Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| | **R** Pensions and IRAs | See the Partner's Instructions |
| | **S** Reforestation expense deduction | See the Partner's Instructions |
| | **T** Domestic production activities information | See Form 8903 Instructions |
| | **U** Qualified production activities income | Form 8903, line 7b |
| | **V** Employer's Form W-2 wages | Form 8903, line 17 |
| | **W** Other deductions | See the Partner's Instructions |
| **14** | **Self-employment earnings (loss)** | |
| *Note. If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.* | | |
| | **A** Net earnings (loss) from self-employment | Schedule SE, Section A or B |
| | **B** Gross farming or fishing income | See the Partner's Instructions |
| | **C** Gross non-farm income | See the Partner's Instructions |
| **15** | **Credits** | |
| | **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | See the Partner's Instructions |
| | **B** Low-income housing credit (other) from pre-2008 buildings | See the Partner's Instructions |
| | **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings | Form 8586, line 11 |
| | **D** Low-income housing credit (other) from post-2007 buildings | Form 8586, line 11 |
| | **E** Qualified rehabilitation expenditures (rental real estate) | ⎤ See the Partner's Instructions |
| | **F** Other rental real estate credits | |
| | **G** Other rental credits | ⎦ |
| | **H** Undistributed capital gains credit | Form 1040, line 71; check box a |
| | **I** Alcohol and cellulosic biofuel fuels credit | Form 6478, line 8 |
| | **J** Work opportunity credit | Form 5884, line 3 |

| Code | | Report on |
|---|---|---|
| | **K** Disabled access credit | See the Partner's Instructions |
| | **L** Empowerment zone and renewal community employment credit | Form 8844, line 3 |
| | **M** Credit for increasing research activities | See the Partner's Instructions |
| | **N** Credit for employer social security and Medicare taxes | Form 8846, line 5 |
| | **O** Backup withholding | Form 1040, line 61 |
| | **P** Other credits | See the Partner's Instructions |
| **16** | **Foreign transactions** | |
| | **A** Name of country or U.S. possession | ⎤ |
| | **B** Gross income from all sources | — Form 1116, Part I |
| | **C** Gross income sourced at partner level | ⎦ |
| | *Foreign gross income sourced at partnership level* | |
| | **D** Passive category | ⎤ |
| | **E** General category | — Form 1116, Part I |
| | **F** Other | ⎦ |
| | *Deductions allocated and apportioned at partner level* | |
| | **G** Interest expense | Form 1116, Part I |
| | **H** Other | Form 1116, Part I |
| | *Deductions allocated and apportioned at partnership level to foreign source income* | |
| | **I** Passive category | ⎤ |
| | **J** General category | — Form 1116, Part I |
| | **K** Other | ⎦ |
| | *Other information* | |
| | **L** Total foreign taxes paid | Form 1116, Part II |
| | **M** Total foreign taxes accrued | Form 1116, Part II |
| | **N** Reduction in taxes available for credit | Form 1116, line 12 |
| | **O** Foreign trading gross receipts | Form 8873 |
| | **P** Extraterritorial income exclusion | Form 8873 |
| | **Q** Other foreign transactions | See the Partner's Instructions |
| **17** | **Alternative minimum tax (AMT) items** | |
| | **A** Post-1986 depreciation adjustment | ⎤ |
| | **B** Adjusted gain or loss | See the Partner's |
| | **C** Depletion (other than oil & gas) | Instructions and |
| | **D** Oil, gas, & geothermal — gross income | the Instructions for |
| | **E** Oil, gas, & geothermal — deductions | Form 6251 |
| | **F** Other AMT items | ⎦ |
| **18** | **Tax-exempt income and nondeductible expenses** | |
| | **A** Tax-exempt interest income | Form 1040, line 8b |
| | **B** Other tax-exempt income | See the Partner's Instructions |
| | **C** Nondeductible expenses | See the Partner's Instructions |
| **19** | **Distributions** | |
| | **A** Cash and marketable securities | ⎤ |
| | **B** Distribution subject to section 737 | — See the Partner's Instructions |
| | **C** Other property | ⎦ |
| **20** | **Other information** | |
| | **A** Investment income | Form 4952, line 4a |
| | **B** Investment expenses | Form 4952, line 5 |
| | **C** Fuel tax credit information | Form 4136 |
| | **D** Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| | **E** Basis of energy property | See the Partner's Instructions |
| | **F** Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| | **G** Recapture of low-income housing credit (other) | Form 8611, line 8 |
| | **H** Recapture of investment credit | Form 4255 |
| | **I** Recapture of other credits | See the Partner's Instructions |
| | **J** Look-back interest — completed long-term contracts | See Form 8697 |
| | **K** Look-back interest — income forecast method | See Form 8866 |
| | **L** Dispositions of property with section 179 deductions | ⎤ |
| | **M** Recapture of section 179 deduction | |
| | **N** Interest expense for corporate partners | |
| | **O** Section 453(l)(3) information | |
| | **P** Section 453A(c) information | |
| | **Q** Section 1260(b) information | See the Partner's |
| | **R** Interest allocable to production expenditures | Instructions |
| | **S** CCF nonqualified withdrawals | |
| | **T** Depletion information — oil and gas | |
| | **U** Amortization of reforestation costs | |
| | **V** Unrelated business taxable income | |
| | **W** Precontribution gain (loss) | |
| | **X** Section 108(i) information | |
| | **Y** Other information | ⎦ |

Schedule K-1 (RALPH R. ROBERTS), Supplemental Information
**Supplemental Information**

This Schedule K-1 is from an Eligible Small Business.

Form 1065, Line 20
**Other deductions**

| | |
|---|---:|
| ACCOUNTING | 1,083. |
| ADVERTISING | 30,931. |
| AUTOMOBILE AND TRUCK EXPENSE | 34,720. |
| BANK CHARGES | 316. |
| COMMISSIONS | 202,876. |
| COMPUTER SERVICES AND SUPPLIES | 20,306. |
| CREDIT AND COLLECTION COSTS | 27,269. |
| DUES AND SUBSCRIPTIONS | 2,625. |
| EQUIPMENT RENT | 5,315. |
| INSURANCE | 5,597. |
| LEGAL AND PROFESSIONAL | 46,836. |
| MEALS AND ENTERTAINMENT (50%) | 10,442. |
| OFFICE EXPENSE | 33,162. |
| OUTSIDE SERVICES | 42,302. |
| PERMITS AND FEES | 10,556. |
| POSTAGE | 1,028. |
| TELEPHONE | 8,699. |
| UTILITIES | 355. |

Total                                             484,418.

Form 1065, Schedule L, Line 6
**Other Current Assets**

| Other Current Assets: | Beginning of tax year | End of tax year |
|---|---:|---:|
| DEPOSITS | 0. | 1,606. |
| LOANS TO PARTNER AND AFFILIATES | 0. | 170,813. |
| Total | 0. | 172,419. |

Form 1065, Schedule L, Line 13
**Other Assets**

| Other Assets: | Beginning of tax year | End of tax year |
|---|---:|---:|
| RENT SECURITY DEPOSIT | 0. | 2,789. |
| Total | 0. | 2,789. |

Form 1065, Schedule L, Line 17
**Other Current Liabilities**

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---:|---:|
| DEPOSITS | 46,000. | 204,386. |
| LOANS FROM AFFILIATED COMPANIES | 16,048. | 0. |
| MORTGAGE TAX & INSURANCE ESCROWS | 27,677. | 28,744. |

| Form **1065** | | **U.S. Return of Partnership Income** | | | OMB No. 1545-0099 |
|---|---|---|---|---|---|
| Department of the Treasury Internal Revenue Service | | For calendar year 2011, or tax year beginning _____ , 2011, ending _____ , 20 ____. ▶ See separate instructions. | | | **2011** |

| **A** Principal business activity | | Name of partnership | | | **D** Employer identification number |
|---|---|---|---|---|---|
| SALES | | RALPH ROBERTS REALTY, L.L.C. | | | 20-2660635 |
| **B** Principal product or service | Print or type. | Number, street, and room or suite number. If a P.O. box, see the instructions. | | | **E** Date business started |
| REAL ESTATE | | 12900 HALL RD. SUITE 190 | | | 03/15/05 |
| **C** Business code number | | City or town | State | ZIP code | **F** Total assets (see instrs) |
| 531210 | | STERLING HEIGHTS | MI | 48313 | $ 757,655. |

**G** Check applicable boxes: (1) ☐ Initial return (2) ☐ Final return (3) ☐ Name change (4) ☐ Address change (5) ☐ Amended return
(6) ☐ Technical termination — also check (1) or (2)

**H** Check accounting method: (1) ☒ Cash (2) ☐ Accrual (3) ☐ Other (specify) ▶ _____

**I** Number of Schedules K-1. Attach one for each person who was a partner at any time during the tax year ▶ _____ 2

**J** Check if Schedules C and M-3 are attached ........................................................ ☐

Caution. *Include only trade or business income and expenses on lines 1a through 22 below. See the instructions for more information.*

| | | | | | |
|---|---|---|---|---|---|
| **I N C O M E** | **1a** Merchant card and third-party payments (including amounts reported on Form(s) 1099-K). For 2011, enter -0- .................. | | **1a** | 0. | |
| | **b** Gross receipts or sales not reported on line 1a (see instructions) | | **1b** | 1,239,966. | |
| | **c** Total. Add lines 1a and 1b. .................................. | | **1c** | 1,239,966. | |
| | **d** Returns and allowances plus any other adjustments to line 1a (see inst). | | **1d** | | |
| | **e** Subtract line 1d from line 1c. ................................ | | **1e** | 1,239,966. | |
| | **2** Cost of goods sold (attach Form 1125-A) ........................ | | **2** | | |
| | **3** Gross profit. Subtract line 2 from line 1e .......................... | | **3** | | 1,239,966. |
| | **4** Ordinary income (loss) from other partnerships, estates, and trusts (attach statement) ......................................... | | **4** | | |
| | **5** Net farm profit (loss) (attach Schedule F (Form 1040)). ............... | | **5** | | |
| | **6** Net gain (loss) from Form 4797, Part II, line 17 (attach Form 4797)...... | | **6** | | |
| | **7** Other income (loss) (attach statement) ......................................... | | **7** | | |
| | **8** Total income (loss). Combine lines 3 through 7 ...................... | | **8** | | 1,239,966. |
| **S E E   I N S T R S   F O R   L I M I T A T I O N S** (DEDUCTIONS) | **9** Salaries and wages (other than to partners) (less employment credits)........... | | **9** | | 350,282. |
| | **10** Guaranteed payments to partners .................................. | | **10** | | |
| | **11** Repairs and maintenance ........................................ | | **11** | | 580. |
| | **12** Bad debts ..................................................... | | **12** | | |
| | **13** Rent .......................................................... | | **13** | | 24,047. |
| | **14** Taxes and licenses ............................................. | | **14** | | 43,766. |
| | **15** Interest ....................................................... | | **15** | | |
| | **16a** Depreciation (if required, attach Form 4562) ............ **16a** 6,516. | | | | |
| | **b** Less depreciation reported on Form 1125-A and elsewhere on return. **16b** | | **16c** | | 6,516. |
| | **17** Depletion (**Do not deduct oil and gas depletion.**) .................... | | **17** | | |
| | **18** Retirement plans, etc ........................................... | | **18** | | |
| | **19** Employee benefit programs ...................................... | | **19** | | 14,250. |
| | **20** Other deductions (attach statement) .......................... STMT | | **20** | | 668,073. |
| | **21** Total deductions. Add the amounts shown in the far right column for lines 9 through 20 .............. | | **21** | | 1,107,514. |
| | **22** Ordinary business income (loss). Subtract line 21 from line 8 ...................... | | **22** | | 132,452. |

| **Sign Here** | Under penalties of perjury, I declare that I have examined this return, including accompanying schedules and statements, and to the best of my knowledge and belief, it is true, correct, and complete. Declaration of preparer (other than general partner or limited liability company member manager) is based on all information of which preparer has any knowledge. | | |
|---|---|---|---|
| | ▶ _____ Signature of general partner or limited liability company member manager | _____ Date | May the IRS discuss this return with the preparer shown below (see instrs)? ☒ Yes ☐ No |

| **Paid Preparer Use Only** | Print/Type preparer's name JOSEPH P. SIRIANNI, C.P.A. | Preparer's signature | Date | Check ☒ if self-employed | PTIN P22008933 |
|---|---|---|---|---|---|
| | Firm's name ▶ SIRIANNI & COMPANY, PLLC | | | Firm's EIN ▶ | 26-2721789 |
| | Firm's address ▶ 2898 PHEASANT RING DR | | | | |
| | ROCHESTER HILLS | MI | 48309-2857 | Phone no. | (248) 375-5201 |

BAA For Paperwork Reduction Act Notice, see separate instructions. Form **1065** (2011)

## Schedule B    Other Information

| | | Yes | No |
|---|---|---|---|
| 1 | What type of entity is filing this return? Check the applicable box: | | |

a ☐ Domestic general partnership    b ☐ Domestic limited partnership
c ☒ Domestic limited liability company    d ☐ Domestic limited liability partnership
e ☐ Foreign partnership    f ☐ Other ...... ► _____

| | | Yes | No |
|---|---|---|---|
| 2 | At any time during the tax year, was any partner in the partnership a disregarded entity, a partnership (including an entity treated as a partnership), a trust, an S corporation, an estate (other than an estate of a deceased partner), or a nominee or similar person? ..................................................................................... | | X |
| 3 | At the end of the tax year: | | |
| a | Did any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, or tax-exempt organization, or any foreign government own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership..................................................................... | X | |
| b | Did any individual or estate own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership? For rules of constructive ownership, see instructions. If 'Yes,' attach Schedule B-1, Information on Partners Owning 50% or More of the Partnership................................................................................. | | X |
| 4 | At the end of the tax year, did the partnership: | | |
| a | Own directly 20% or more, or own, directly or indirectly, 50% or more of the total voting power of all classes of stock entitled to vote of any foreign or domestic corporation? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (iv) below .......................................................................................... | | X |

| (i) Name of Corporation | (ii) Employer Identification Number (if any) | (iii) Country of Incorporation | (iv) Percentage Owned in Voting Stock |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

| | | Yes | No |
|---|---|---|---|
| b | Own directly an interest of 20% or more, or own, directly or indirectly, an interest of 50% or more in the profit, loss, or capital in any foreign or domestic partnership (including an entity treated as a partnership) or in the beneficial interest of a trust? For rules of constructive ownership, see instructions. If 'Yes,' complete (i) through (v) below ...................................... | | X |

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

PTPA0112  10/27/11                                              Form **1065** (2011)

| | | Yes | No |
|---|---|---|---|
| 5 | Did the partnership file Form 8893, Election of Partnership Level Tax Treatment, or an election statement under section 6231(a)(1)(B)(ii) for partnership-level tax treatment, that is in effect for this tax year? See Form 8893 for more details ........ | | X |
| 6 | Does this partnership satisfy **all four** of the following conditions? | | |
| a | The partnership's total receipts for the tax year were less than $250,000. | | |
| b | The partnership's total assets at the end of the tax year were less than $1 million. | | |
| c | Schedules K-1 are filed with the return and furnished to the partners on or before the due date (including extensions) for the partnership return. | | |
| d | The partnership is not filing and is not required to file Schedule M-3 ............................................. | X | |
| | If 'Yes,' the partnership is not required to complete Schedules L, M-1, and M-2; Item F on page 1 of Form 1065; or Item L on Schedule K-1. | | |
| 7 | Is this partnership a publicly traded partnership as defined in section 469(k)(2)?.................................. | | X |
| 8 | During the tax year, did the partnership have any debt that was cancelled, was forgiven, or had the terms modified so as to reduce the principal amount of the debt?................................................................... | | X |
| 9 | Has this partnership filed, or is it required to file, Form 8918, Material Advisor Disclosure Statement, to provide information on any reportable transaction? .............................................................................. | | X |
| 10 | At any time during calendar year 2011, did the partnership have an interest in or a signature or other authority over a financial account in a foreign country (such as a bank account, securities account, or other financial account)? See the instructions for exceptions and filing requirements for Form TD F 90-22.1, Report of Foreign Bank and Financial Accounts. If 'Yes,' enter the name of the foreign country.. ► | | X |
| 11 | At any time during the tax year, did the partnership receive a distribution from, or was it the grantor of, or transferor to, a foreign trust? If 'Yes,' the partnership may have to file Form 3520, Annual Return To Report Transactions With Foreign Trusts and Receipt of Certain Foreign Gifts. See instructions................................................................ | | X |
| 12a | Is the partnership making, or had it previously made (and not revoked), a section 754 election?.......................... | | X |
| | See instructions for details regarding section 754 election. | | |
| b | Did the partnership make for this tax year an optional basis adjustment under section 743(b) or 734(b)? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions................................. | | X |
| c | Is the partnership required to adjust the basis of partnership assets under section 743(b) or 734(b) because of a substantial built-in loss (as defined under section 743(d)) or substantial basis reduction (as defined under section 734(d))? If 'Yes,' attach a statement showing the computation and allocation of the basis adjustment. See instructions ..................... | | X |
| 13 | Check this box if, during the current or prior tax year, the partnership distributed any property received in a like-kind exchange or contributed such property to another entity (other than disregarded entities wholly-owned by the partnership throughout the tax year)................................................................ ► ☐ | | |
| 14 | At any time during the tax year, did the partnership distribute to any partner a tenancy-in-common or other undivided interest in a partnership property?................................................................................... | | X |
| 15 | If the partnership is required to file Form 8858, Information Return of U.S. Persons With Respect To Foreign Disregarded Entities, enter the number of Forms 8858 attached. See instructions ► | | |
| 16 | Does the partnership have any foreign partners? If 'Yes,' enter the number of Forms 8805, Foreign Partner's Information Statement of Section 1446 Withholding Tax, filed for this partnership. ► | | X |
| 17 | Enter the number of Forms 8865, Return of U.S. Persons With Respect to Certain Foreign Partnerships, attached to this return ...................................................................................................... ► | | |
| 18a | Did you make any payments in 2011 that would require you to file Form(s) 1099? See instructions.......................... | X | |
| b | If 'Yes,' did you or will you file all required Form(s) 1099?................................................... | X | |
| 19 | Enter the number of Form(s) 5471, Information Return of U.S. Persons With Respect To Certain Foreign Corporations, attached to this return ................................................................................. ► | | |

**Designation of Tax Matters Partner** (see the instructions)
Enter below the general partner designated as the tax matters partner (TMP) for the tax year of this return:

| Name of designated TMP ► | RALPH R. ROBERTS | Identifying number of TMP ► | ▓▓▓▓▓▓▓▓▓ |
|---|---|---|---|
| If the TMP is an entity, name of TMP representative ► | | Phone number of TMP ► | (586) 751-0000 |
| Address of designated TMP ► | 18299 TARA DR. CLINTON TOWNSHIP, MI 48036-3632 | | |

Form **1065** (2011)

PTPA0112 10/27/11

## Schedule K   Partners' Distributive Share Items

| | | | | Total amount |
|---|---|---|---|---:|
| Income (Loss) | 1 | Ordinary business income (loss) (page 1, line 22) | 1 | 132,452. |
| | 2 | Net rental real estate income (loss) (attach Form 8825) | 2 | |
| | 3a | Other gross rental income (loss) ............ 3a | | |
| | b | Expenses from other rental activities (attach stmt) ...... 3b | | |
| | c | Other net rental income (loss). Subtract line 3b from line 3a | 3c | |
| | 4 | Guaranteed payments | 4 | |
| | 5 | Interest income | 5 | |
| | 6 | Dividends: a Ordinary dividends | 6a | |
| | | b Qualified dividends ............ 6b | | |
| | 7 | Royalties | 7 | |
| | 8 | Net short-term capital gain (loss) (attach Schedule D (Form 1065)) | 8 | |
| | 9a | Net long-term capital gain (loss) (attach Schedule D (Form 1065)) | 9a | |
| | b | Collectibles (28%) gain (loss) ............ 9b | | |
| | c | Unrecaptured section 1250 gain (attach statement) ...... 9c | | |
| | 10 | Net section 1231 gain (loss) (attach Form 4797) | 10 | |
| | 11 | Other income (loss) (see instructions)    Type ► | 11 | |
| Deductions | 12 | Section 179 deduction (attach Form 4562) | 12 | |
| | 13a | Contributions ............ Cash contributions (50%) ...... | 13a | 910. |
| | b | Investment interest expense | 13b | |
| | c | Section 59(e)(2) expenditures: (1) Type ► _____ (2) Amount ► | 13c (2) | |
| | d | Other deductions (see instructions) Type ► | 13d | |
| Self-Employ-ment | 14a | Net earnings (loss) from self-employment | 14a | 132,452. |
| | b | Gross farming or fishing income | 14b | |
| | c | Gross nonfarm income | 14c | 1,239,966. |
| Credits | 15a | Low-income housing credit (section 42(j)(5)) | 15a | |
| | b | Low-income housing credit (other) | 15b | |
| | c | Qualified rehabilitation expenditures (rental real estate) (attach Form 3468) | 15c | |
| | d | Other rental real estate credits (see instructions). Type ► | 15d | |
| | e | Other rental credits (see instructions) ........ Type ► | 15e | |
| | f | Other credits (see instructions) ........ Type ► | 15f | |
| Foreign Trans-actions | 16a | Name of country or U.S. possession ... ► | | |
| | b | Gross income from all sources | 16b | |
| | c | Gross income sourced at partner level | 16c | |
| | | Foreign gross income sourced at partnership level | | |
| | d | Passive category ► _____ e General category ► _____ f Other ......► | 16f | |
| | | Deductions allocated and apportioned at partner level | | |
| | g | Interest expense ► _____ h Other | 16h | |
| | | Deductions allocated and apportioned at partnership level to foreign source income | | |
| | i | Passive category ► _____ j General category ► _____ k Other ......► | 16k | |
| | l | Total foreign taxes (check one): ► Paid ☐     Accrued ☐ | 16l | |
| | m | Reduction in taxes available for credit (attach statement) | 16m | |
| | n | Other foreign tax information (attach statement) | | |
| Alternative Minimum Tax (AMT) Items | 17a | Post-1986 depreciation adjustment | 17a | 134. |
| | b | Adjusted gain or loss | 17b | |
| | c | Depletion (other than oil and gas) | 17c | |
| | d | Oil, gas, and geothermal properties— gross income | 17d | |
| | e | Oil, gas, and geothermal properties— deductions | 17e | |
| | f | Other AMT items (attach stmt) | 17f | |
| Other Infor-mation | 18a | Tax-exempt interest income | 18a | |
| | b | Other tax-exempt income | 18b | |
| | c | Nondeductible expenses | 18c | *10,087. |
| | 19a | Distributions of cash and marketable securities | 19a | |
| | b | Distributions of other property | 19b | |
| | 20a | Investment income | 20a | |
| | b | Investment expenses | 20b | |
| | c | Other items and amounts (attach stmt) | | |

## Analysis of Net Income (Loss)

| | | | | | | |
|---|---|---|---|---|---|---|
| 1 | Net income (loss). Combine Schedule K, lines 1 through 11. From the result, subtract the sum of Schedule K, lines 12 through 13d, and 16l | | | | **1** | 131,542. |

| 2 Analysis by partner type: | (i) Corporate | (ii) Individual (active) | (iii) Individual (passive) | (iv) Partnership | (v) Exempt organization | (vi) Nominee/Other |
|---|---|---|---|---|---|---|
| **a** General partners | | | | | | |
| **b** Limited partners | | 26,308. | | 105,234. | | |

## Schedule L — Balance Sheets per Books

| Assets | Beginning of tax year (a) | (b) | End of tax year (c) | (d) |
|---|---|---|---|---|
| 1 Cash | | 248,829. | | 464,788. |
| 2a Trade notes and accounts receivable | | | | |
| b Less allowance for bad debts | | | | |
| 3 Inventories | | | | |
| 4 U.S. government obligations | | | | |
| 5 Tax-exempt securities | | | | |
| 6 Other current assets (attach stmt) .... Ln. 6. Stmt | | 1,606. | | 6,932. |
| 7a Loans to partners (or persons related to partners) | | 170,813. | | 275,006. |
| b Mortgage and real estate loans | | | | |
| 8 Other investments (attach stmt) | | | | |
| 9a Buildings and other depreciable assets | 27,178. | | 29,677. | |
| b Less accumulated depreciation | 15,021. | 12,157. | 21,537. | 8,140. |
| 10a Depletable assets | | | | |
| b Less accumulated depletion | | | | |
| 11 Land (net of any amortization) | | | | |
| 12a Intangible assets (amortizable only) | | | | |
| b Less accumulated amortization | | | | |
| 13 Other assets (attach stmt) .... Ln. 13. Stmt | | 2,789. | | 2,789. |
| 14 Total assets | | 436,194. | | 757,655. |
| **Liabilities and Capital** | | | | |
| 15 Accounts payable | | | | |
| 16 Mortgages, notes, bonds payable in less than 1 year | | | | |
| 17 Other current liabilities (attach stmt) .. Ln. 17. Stmt | | 233,130. | | 440,636. |
| 18 All nonrecourse loans | | | | |
| 19a Loans from partners (or persons related to partners) | | | | 67,478. |
| b Mortgages, notes, bonds payable in 1 year or more | | 74,978. | | |
| 20 Other liabilities (attach stmt) | | | | |
| 21 Partners' capital accounts | | 128,086. | | 249,541. |
| 22 Total liabilities and capital | | 436,194. | | 757,655. |

## Schedule M-1 Reconciliation of Income (Loss) per Books With Income (Loss) per Return

Note. Schedule M-3 may be required instead of Schedule M-1 (see instructions).

| | | | | |
|---|---|---|---|---|
| 1 Net income (loss) per books | 121,455. | 6 Income recorded on books this year not included on Schedule K, lines 1 through 11 (itemize): | | |
| 2 Income included on Schedule K, lines 1, 2, 3c, 5, 6a, 7, 8, 9a, 10, and 11, not recorded on books this year (itemize): | | a Tax-exempt interest ... $ _ _ _ _ _ _ _ | | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | 7 Deductions included on Schedule K, lines 1 through 13d, and 16l, not charged against book income this year (itemize): | | |
| 3 Guaranteed pmts (other than health insurance) | | | | |
| 4 Expenses recorded on books this year not included on Schedule K, lines 1 through 13d and 16l (itemize): | | a Depreciation ..... $ _ _ _ _ _ _ _ _ _ | | |
| a Depreciation ...... $ _ _ _ _ _ _ _ _ _ | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| b Travel and entertainment ..... $ _ _ _ _ 10,087. | | 8 Add lines 6 and 7 | | |
| _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | 10,087. | 9 Income (loss) (Analysis of Net Income (Loss), line 1). Subtract line 8 from line 5 | | 131,542. |
| 5 Add lines 1 through 4 | 131,542. | | | |

## Schedule M-2 Analysis of Partners' Capital Accounts

| | | | | |
|---|---|---|---|---|
| 1 Balance at beginning of year | 128,086. | 6 Distributions: a Cash | | |
| 2 Capital contributed: a Cash | | b Property | | |
| b Property | | 7 Other decreases (itemize): _ _ _ _ _ _ _ | | |
| 3 Net income (loss) per books | 121,455. | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| 4 Other increases (itemize): _ _ _ _ _ _ _ _ | | _ _ _ _ _ _ _ _ _ _ _ _ _ _ _ | | |
| | | 8 Add lines 6 and 7 | | |
| 5 Add lines 1 through 4 | 249,541. | 9 Balance at end of year. Subtract line 8 from line 5 | | 249,541. |

FTA0134 09/08/11      Form **1065** (2011)

# Information on Partners Owning 50% or More of the Partnership

► **Attach to Form 1065. See instructions.**

OMB No. 1545-0099

| Name of partnership | Employer identification number (EIN) |
|---|---|
| RALPH ROBERTS REALTY, L.L.C. | 20-2660635 |

## Part I — Entities Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3a)

Complete columns (i) through (v) below for any foreign or domestic corporation, partnership (including any entity treated as a partnership), trust, tax-exempt organization, or any foreign government that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Entity | (ii) Employer Identification Number (if any) | (iii) Type of Entity | (iv) Country of Organization | (v) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|---|
| ROWLAND FAMILY L.L.C. | 32-0075236 | LCC | US | 99.0000 |
| | | | | |
| | | | | |
| | | | | |
| | | | | |
| | | | | |

## Part II — Individuals or Estates Owning 50% or More of the Partnership (Form 1065, Schedule B, Question 3b)

Complete columns (i) through (iv) below for any individual or estate that owns, directly or indirectly, an interest of 50% or more in the profit, loss, or capital of the partnership (see instructions).

| (i) Name of Individual or Estate | (ii) Identifying Number (if any) | (iii) Country of Citizenship (see instructions) | (iv) Maximum Percentage Owned in Profit, Loss, or Capital |
|---|---|---|---|
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |
| | | | |

**BAA For Paperwork Reduction Act Notice, see the instructions for Form 1065.**

Schedule B-1 (Form 1065) (12-2011)

Form **4562**

Department of the Treasury
Internal Revenue Service    (99)

## Depreciation and Amortization
### (Including Information on Listed Property)

► See separate instructions.    ► Attach to your tax return.

OMB No. 1545-0172

**2011**

Attachment
Sequence No.  **179**

| Name(s) shown on return | Identifying number |
|---|---|
| RALPH ROBERTS REALTY, L.L.C. | 20-2660635 |

Business or activity to which this form relates

Form 1065 Line 22

**Part I** Election To Expense Certain Property Under Section 179
Note: *If you have any listed property, complete Part V before you complete Part I.*

| | | | |
|---|---|---|---|
| 1 | Maximum amount (see instructions) | 1 | 500,000. |
| 2 | Total cost of section 179 property placed in service (see instructions) | 2 | |
| 3 | Threshold cost of section 179 property before reduction in limitation (see instructions) | 3 | 2,000,000. |
| 4 | Reduction in limitation. Subtract line 3 from line 2. If zero or less, enter -0- | 4 | |
| 5 | Dollar limitation for tax year. Subtract line 4 from line 1. If zero or less, enter -0-. If married filing separately, see instructions | 5 | |

| 6 | (a) Description of property | (b) Cost (business use only) | (c) Elected cost |
|---|---|---|---|
| | | | |
| | | | |

| | | | |
|---|---|---|---|
| 7 | Listed property. Enter the amount from line 29 ........ 7 | | |
| 8 | Total elected cost of section 179 property. Add amounts in column (c), lines 6 and 7 | 8 | |
| 9 | Tentative deduction. Enter the **smaller** of line 5 or line 8 | 9 | |
| 10 | Carryover of disallowed deduction from line 13 of your 2010 Form 4562 | 10 | |
| 11 | Business income limitation. Enter the smaller of business income (not less than zero) or line 5 (see instrs) | 11 | |
| 12 | Section 179 expense deduction. Add lines 9 and 10, but do not enter more than line 11 | 12 | |
| 13 | Carryover of disallowed deduction to 2012. Add lines 9 and 10, less line 12 ........ ► 13 | | |

Note: *Do not use Part II or Part III below for listed property. Instead, use Part V.*

**Part II** Special Depreciation Allowance and Other Depreciation (Do not include listed property) (See instructions.)

| | | | |
|---|---|---|---|
| 14 | Special depreciation allowance for qualified property (other than listed property) placed in service during the tax year (see instructions) | 14 | 2,499. |
| 15 | Property subject to section 168(f)(1) election | 15 | |
| 16 | Other depreciation (including ACRS) | 16 | |

**Part III** MACRS Depreciation (Do not include listed property) (See instructions.)

### Section A

| | | | |
|---|---|---|---|
| 17 | MACRS deductions for assets placed in service in tax years beginning before 2011 | 17 | 4,017. |
| 18 | If you are electing to group any assets placed in service during the tax year into one or more general asset accounts, check here ........ ► ☐ | | |

### Section B — Assets Placed in Service During 2011 Tax Year Using the General Depreciation System

| (a) Classification of property | (b) Month and year placed in service | (c) Basis for depreciation (business/investment use only — see instructions) | (d) Recovery period | (e) Convention | (f) Method | (g) Depreciation deduction |
|---|---|---|---|---|---|---|
| 19 a 3-year property | | | | | | |
| b 5-year property | | | | | | |
| c 7-year property | | | | | | |
| d 10-year property | | | | | | |
| e 15-year property | | | | | | |
| f 20-year property | | | | | | |
| g 25-year property | | | 25 yrs | | S/L | |
| h Residential rental property | | | 27.5 yrs | MM | S/L | |
| | | | 27.5 yrs | MM | S/L | |
| i Nonresidential real property | | | 39 yrs | MM | S/L | |
| | | | | MM | S/L | |

### Section C — Assets Placed in Service During 2011 Tax Year Using the Alternative Depreciation System

| | | | | | | |
|---|---|---|---|---|---|---|
| 20 a Class life | | | | | S/L | |
| b 12-year | | | 12 yrs | | S/L | |
| c 40-year | | | 40 yrs | MM | S/L | |

**Part IV** Summary (See instructions.)

| | | | |
|---|---|---|---|
| 21 | Listed property. Enter amount from line 28 | 21 | |
| 22 | Total. Add amounts from line 12, lines 14 through 17, lines 19 and 20 in column (g), and line 21. Enter here and on the appropriate lines of your return. Partnerships and S corporations — see instructions | 22 | 6,516. |
| 23 | For assets shown above and placed in service during the current year, enter the portion of the basis attributable to section 263A costs ........ 23 | | |

BAA For Paperwork Reduction Act Notice, see separate instructions.    FDIZ0812 05/20/11    Form 4562 (2011)

**Part V** **Listed Property** (Include automobiles, certain other vehicles, certain computers, and property used for entertainment, recreation, or amusement.)

Note: *For any vehicle for which you are using the standard mileage rate or deducting lease expense, complete only 24a, 24b, columns (a) through (c) of Section A, all of Section B, and Section C if applicable.*

**Section A — Depreciation and Other Information (Caution:** *See the instructions for limits for passenger automobiles.***)**

24 a Do you have evidence to support the business/investment use claimed? . . . . . . . . . . | Yes | | No | 24b If 'Yes,' is the evidence written? . . . . . . | Yes | | No

| (a) Type of property (list vehicles first) | (b) Date placed in service | (c) Business/ investment use percentage | (d) Cost or other basis | (e) Basis for depreciation (business/investment use only) | (f) Recovery period | (g) Method/ Convention | (h) Depreciation deduction | (i) Elected section 179 cost |
|---|---|---|---|---|---|---|---|---|
| 25 Special depreciation allowance for qualified listed property placed in service during the tax year and used more than 50% in a qualified business use (see instructions) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | | | 25 | | |
| 26 Property used more than 50% in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 27 Property used 50% or less in a qualified business use: | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| | | | | | | | | |
| 28 Add amounts in column (h), lines 25 through 27. Enter here and on line 21, page 1. . . . . . . . . . . . . . . . . | | | | | | 28 | | |
| 29 Add amounts in column (i), line 26. Enter here and on line 7, page 1. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | | | | 29 | |

**Section B — Information on Use of Vehicles**

Complete this section for vehicles used by a sole proprietor, partner, or other 'more than 5% owner,' or related person. If you provided vehicles to your employees, first answer the questions in Section C to see if you meet an exception to completing this section for those vehicles.

| | (a) Vehicle 1 | | (b) Vehicle 2 | | (c) Vehicle 3 | | (d) Vehicle 4 | | (e) Vehicle 5 | | (f) Vehicle 6 | |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 30 Total business/investment miles driven during the year (**do not** include commuting miles) . . . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 31 Total commuting miles driven during the year . . . . . . . . | | | | | | | | | | | | |
| 32 Total other personal (noncommuting) miles driven . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 33 Total miles driven during the year. Add lines 30 through 32 . . . . . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No | Yes | No |
| 34 Was the vehicle available for personal use during off-duty hours? . . . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |
| 35 Was the vehicle used primarily by a more than 5% owner or related person? . . . . . . . . | | | | | | | | | | | | |
| 36 Is another vehicle available for personal use? . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | | | | | | | | | |

**Section C — Questions for Employers Who Provide Vehicles for Use by Their Employees**

Answer these questions to determine if you meet an exception to completing Section B for vehicles used by employees who are not more than 5% owners or related persons (see instructions).

| | Yes | No |
|---|---|---|
| 37 Do you maintain a written policy statement that prohibits all personal use of vehicles, including commuting, by your employees? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 38 Do you maintain a written policy statement that prohibits personal use of vehicles, except commuting, by your employees? See the instructions for vehicles used by corporate officers, directors, or 1% or more owners. . . . . . . . . . . . . . . | | |
| 39 Do you treat all use of vehicles by employees as personal use? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 40 Do you provide more than five vehicles to your employees, obtain information from your employees about the use of the vehicles, and retain the information received? . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | |
| 41 Do you meet the requirements concerning qualified automobile demonstration use? (See instructions.) . . . . . . . . . . . . . . . . . | | |
| Note: *If your answer to 37, 38, 39, 40, or 41 is 'Yes,' do not complete Section B for the covered vehicles.* | | |

**Part VI** **Amortization**

| (a) Description of costs | (b) Date amortization begins | (c) Amortizable amount | (d) Code section | (e) Amortization period or percentage | (f) Amortization for this year |
|---|---|---|---|---|---|
| 42 Amortization of costs that begins during your 2011 tax year (see instructions): | | | | | |
| | | | | | |
| | | | | | |
| 43 Amortization of costs that began before your 2011 tax year . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | | | | 43 | |
| 44 Total. Add amounts in column (f). See the instructions for where to report . . . . . . . . . . . . . . . . . . . | | | | 44 | |

FDIZ0812 05/20/11

Form 4562 (2011)

Form **8879-PE**

Department of the Treasury
Internal Revenue Service

# IRS *e-file* Signature Authorization
## for Form 1065

For calendar year 2011, or tax year beginning _ _ _ _ _ _ _ _, 2011,
ending _ _ _ _ _ _ _, _ _ _ _.
▶ See instructions. Do not send to the IRS. Keep for your records.

OMB No. 1545-2042

**2011**

| Name of partnership | Employer identification number |
|---|---|
| RALPH ROBERTS REALTY, L.L.C. | 20-2660635 |

**Part I** Return Information (Whole dollars only)

| | | | |
|---|---|---|---:|
| 1 | Gross receipts or sales less returns and allowances (Form 1065, line 1e)..................... | **1** | 1,239,966. |
| 2 | Gross profit (Form 1065, line 3)............................................................ | **2** | 1,239,966. |
| 3 | Ordinary business income (loss) (Form 1065, line 22)....................................... | **3** | 132,452. |
| 4 | Net rental real estate income (loss) (Form 1065, Schedule K, line 2)....................... | **4** | |
| 5 | Other net rental income (loss) (Form 1065, Schedule K, line 3c)............................ | **5** | |

**Part II** Declaration and Signature Authorization of General Partner or Limited Liability Company Member Manager (Be sure to get a copy of the partnership's return)

Under penalties of perjury, I declare that I am a general partner or limited liability company member manager of the above partnership and that I have examined a copy of the partnership's 2011 electronic return of partnership income and accompanying schedules and statements and to the best of my knowledge and belief, it is true, correct, and complete. I further declare that the amounts in Part I above are the amounts shown on the copy of the partnership's electronic return of partnership income. I consent to allow my electronic return originator (ERO), transmitter, or intermediate service provider to send the partnership's return to the IRS and to receive from the IRS **(a)** an acknowledgement of receipt or reason for rejection of the transmission and **(b)** the reason for any delay in processing the return. I have selected a personal identification number (PIN) as my signature for the partnership's electronic return of partnership income.

**General Partner or Limited Liability Company Member Manager's PIN: check one box only**

☐   I authorize _____ to enter my PIN _____ as my signature on the
                    ERO firm name                             **do not enter all zeros**
             partnership's 2011 electronically filed return of partnership income.

☒   As a general partner or limited liability company member manager of the partnership, I will enter my PIN as my signature on the
             partnership's 2011 electronically filed return of partnership income.

General partner or limited liability company member manager's signature ▶ _____

Title ▶ LLC MEMBER _____     Date ▶ _____

**Part III** Certification and Authentication

**ERO's EFIN/PIN.** Enter your six-digit EFIN followed by your five-digit self-selected PIN.    40273722240
                                                                **do not enter all zeros**

I certify that the above numeric entry is my PIN, which is my signature on the 2011 electronically filed return of partnership income for the partnership indicated above. I confirm that I am submitting this return in accordance with the requirements of Pub 3112, *IRS e-file* Application and Participation, and Pub 4163, Modernized e-File (MeF) Information for Authorized IRS *e-file* Providers for Business Returns.

ERO's signature ▶ _____    Date   ▶ 02/29/2012

**ERO Must Retain This Form— See Instructions**
**Do Not Submit This Form to the IRS Unless Requested To Do So**

**BAA  For Paperwork Reduction Act Notice, see instructions.**             Form 8879-PE (2011)

PTPA0901   11/22/11

| Schedule K-1 (Form 1065) | **2011** | ☐ Final K-1   ☐ Amended K-1 | OMB No. 1545-0099 |

Department of the Treasury
Internal Revenue Service

For calendar year 2011, or tax
year beginning _____ , 2011
ending _____ , 

**Partner's Share of Income, Deductions, Credits, etc.** ► See separate instructions.

**Part III**  Partner's Share of Current Year Income, Deductions, Credits, and Other Items

| **Part I** Information About the Partnership | | |
|---|---|---|

**A** Partnership's employer identification number
20-2660635

**B** Partnership's name, address, city, state, and ZIP code
RALPH ROBERTS REALTY, L.L.C.
12900 HALL RD.  SUITE 190
STERLING HEIGHTS, MI 48313

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

| **Part II** Information About the Partner |
|---|

**E** Partner's identifying number
32-0075236

**F** Partner's name, address, city, state, and ZIP code
ROWLAND FAMILY, L.L.C.
12900 HALL RD.
SUITE 190
STERLING HEIGHTS, MI 48313

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I** What type of entity is this partner? PARTNERSHIP

**J** Partner's share of profit, loss, and capital (see instructions):

|  | Beginning | Ending |
|---|---|---|
| Profit | 80.00000 % | 80.00000 % |
| Loss | 80.00000 % | 80.00000 % |
| Capital | 80.00000 % | 80.00000 % |

**K** Partner's share of liabilities at year end:
Nonrecourse .......................... $ 406,491.
Qualified nonrecourse financing....... $
Recourse ............................. $

**L** Partner's capital account analysis:
Beginning capital account ............. $ 92,051.
Capital contributed during the year..... $
Current year increase (decrease) ...... $ 97,164.
Withdrawals and distributions.......... $
Ending capital account ................ $ 189,215.

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If 'Yes', attach statement (see instructions)

| 1 Ordinary business income (loss)   105,962. | 15 Credits |
| 2 Net rental real estate income (loss) | |
| 3 Other net rental income (loss) | 16 Foreign transactions |
| 4 Guaranteed payments | |
| 5 Interest income | |
| 6a Ordinary dividends | |
| 6b Qualified dividends | |
| 7 Royalties | |
| 8 Net short-term capital gain (loss) | |
| 9a Net long-term capital gain (loss) | 17 Alternative minimum tax (AMT) items   A   107. |
| 9b Collectibles (28%) gain (loss) | |
| 9c Unrecaptured section 1250 gain | |
| 10 Net section 1231 gain (loss) | 18 Tax-exempt income and nondeductible expenses |
| 11 Other income (loss) | C   8,070. |
| | 19 Distributions |
| 12 Section 179 deduction | |
| 13 Other deductions   A   728. | 20 Other information |
| 14 Self-employment earnings (loss)   A   105,962. | |
| C   991,973. | |

*See attached statement for additional information.

F
O
R

I
R
S

U
S
E

O
N
L
Y

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

**1** Ordinary business income (loss). Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | *Report on* |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

**2** Net rental real estate income (loss)    See the Partner's Instructions
**3** Other net rental income (loss)
   Net income    Schedule E, line 28, column (g)
   Net loss    See the Partner's Instructions
**4** Guaranteed payments    Schedule E, line 28, column (j)
**5** Interest income    Form 1040, line 8a
**6a** Ordinary dividends    Form 1040, line 9a
**6b** Qualified dividends    Form 1040, line 9b
**7** Royalties    Schedule E, line 3b
**8** Net short-term capital gain (loss)    Schedule D, line 5
**9a** Net long-term capital gain (loss)    Schedule D, line 12
**9b** Collectibles (28%) gain (loss)    28% Rate Gain Worksheet, line 4 (Schedule D Instructions)
**9c** Unrecaptured section 1250 gain    See the Partner's Instructions
**10** Net section 1231 gain (loss)    See the Partner's Instructions
**11** Other income (loss)
   *Code*
   **A** Other portfolio income (loss)    See the Partner's Instructions
   **B** Involuntary conversions    See the Partner's Instructions
   **C** Section 1256 contracts and straddles    Form 6781, line 1
   **D** Mining exploration costs recapture    See Pub 535
   **E** Cancellation of debt    Form 1040, line 21 or Form 982
   **F** Other income (loss)    See the Partner's Instructions
**12** Section 179 deduction    See the Partner's Instructions
**13** Other deductions
   **A** Cash contributions (50%)
   **B** Cash contributions (30%)
   **C** Noncash contributions (50%)
   **D** Noncash contributions (30%) — See the Partner's Instructions
   **E** Capital gain property to a 50% organization (30%)
   **F** Capital gain property (20%)
   **G** Contributions (100%)
   **H** Investment interest expense    Form 4952, line 1
   **I** Deductions — royalty income    Schedule E, line 19
   **J** Section 59(e)(2) expenditures    See the Partner's Instructions
   **K** Deductions — portfolio (2% floor)    Schedule A, line 23
   **L** Deductions — portfolio (other)    Schedule A, line 28
   **M** Amounts paid for medical insurance    Schedule A, line 1 or Form 1040, line 29
   **N** Educational assistance benefits    See the Partner's Instructions
   **O** Dependent care benefits    Form 2441, line 12
   **P** Preproductive period expenses    See the Partner's Instructions
   **Q** Commercial revitalization deduction from rental real estate activities    See Form 8582 Instructions
   **R** Pensions and IRAs    See the Partner's Instructions
   **S** Reforestation expense deduction    See the Partner's Instructions
   **T** Domestic production activities information    See Form 8903 Instructions
   **U** Qualified production activities income    Form 8903, line 7b
   **V** Employer's Form W-2 wages    Form 8903, line 17
   **W** Other deductions    See the Partner's Instructions
**14** Self-employment earnings (loss)

Note. *If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*

   **A** Net earnings (loss) from self-employment    Schedule SE, Section A or B
   **B** Gross farming or fishing income    See the Partner's Instructions
   **C** Gross non-farm income    See the Partner's Instructions
**15** Credits
   **A** Low-income housing credit (section 42(j)(5)) from pre-2008 buildings
   **B** Low-income housing credit (other) from pre-2008 buildings
   **C** Low-income housing credit (section 42(j)(5)) from post-2007 buildings    See the Partner's
   **D** Low-income housing credit (other) from post-2007 buildings    Instructions
   **E** Qualified rehabilitation expenditures (rental real estate)
   **F** Other rental real estate credits
   **G** Other rental credits
   **H** Undistributed capital gains credit    Form 1040, line 71; check box a
   **I** Alcohol and cellulosic biofuel fuels credit    See the Partner's Instructions

*Code*    *Report on*
   **J** Work opportunity credit
   **K** Disabled access credit
   **L** Empowerment zone and renewal community employment credit    See the Partner's
   **M** Credit for increasing research activities    Instructions
   **N** Credit for employer social security and Medicare taxes
   **O** Backup withholding    Form 1040, line 62
   **P** Other credits    See the Partner's Instructions
**16** Foreign transactions
   **A** Name of country or U.S. possession
   **B** Gross income from all sources — Form 1116, Part I
   **C** Gross income sourced at partner level
   *Foreign gross income sourced at partnership level*
   **D** Passive category
   **E** General category — Form 1116, Part I
   **F** Other
   *Deductions allocated and apportioned at partner level*
   **G** Interest expense    Form 1116, Part I
   **H** Other    Form 1116, Part I
   *Deductions allocated and apportioned at partnership level to foreign source income*
   **I** Passive category
   **J** General category — Form 1116, Part I
   **K** Other
   *Other information*
   **L** Total foreign taxes paid    Form 1116, Part II
   **M** Total foreign taxes accrued    Form 1116, Part II
   **N** Reduction in taxes available for credit    Form 1116, line 12
   **O** Foreign trading gross receipts    Form 8873
   **P** Extraterritorial income exclusion    Form 8873
   **Q** Other foreign transactions    See the Partner's Instructions
**17** Alternative minimum tax (AMT) items
   **A** Post-1986 depreciation adjustment
   **B** Adjusted gain or loss    See the Partner's
   **C** Depletion (other than oil & gas)    Instructions and
   **D** Oil, gas, & geothermal — gross income    the Instructions for
   **E** Oil, gas, & geothermal — deductions    Form 6251
   **F** Other AMT items
**18** Tax-exempt income and nondeductible expenses
   **A** Tax-exempt interest income    Form 1040, line 8b
   **B** Other tax-exempt income    See the Partner's Instructions
   **C** Nondeductible expenses    See the Partner's Instructions
**19** Distributions
   **A** Cash and marketable securities
   **B** Distribution subject to section 737 — See the Partner's Instructions
   **C** Other property
**20** Other information
   **A** Investment income    Form 4952, line 4a
   **B** Investment expenses    Form 4952, line 5
   **C** Fuel tax credit information    Form 4136
   **D** Qualified rehabilitation expenditures (other than rental real estate)    See the Partner's Instructions
   **E** Basis of energy property    See the Partner's Instructions
   **F** Recapture of low-income housing credit (section 42(j)(5))    Form 8611, line 8
   **G** Recapture of low-income housing credit (other)    Form 8611, line 8
   **H** Recapture of investment credit    Form 4255
   **I** Recapture of other credits    See the Partner's Instructions
   **J** Look-back interest — completed long-term contracts    See Form 8697
   **K** Look-back interest — income forecast method    See Form 8866
   **L** Dispositions of property with section 179 deductions
   **M** Recapture of section 179 deduction
   **N** Interest expense for corporate partners
   **O** Section 453(l)(3) information
   **P** Section 453A(c) information
   **Q** Section 1260(b) information    See the Partner's
   **R** Interest allocable to production expenditures    Instructions
   **S** CCF nonqualified withdrawals
   **T** Depletion information — oil and gas
   **U** Amortization of reforestation costs
   **V** Unrelated business taxable income
   **W** Precontribution gain (loss)
   **X** Section 108(i) information

PTPA0312  08/18/11                                          Schedule **K-1** (Form 1065) 2011

Schedule K-1 (ROWLAND FAMILY, L.L.C.), Supplemental Information
**Supplemental Information**

This Schedule K-1 is from an Eligible Small Business.

**651111**

| **Schedule K-1** (Form 1065) | **2011** | ☐ Final K-1   ☐ Amended K-1 | OMB No. 1545-0099 |

Department of the Treasury
Internal Revenue Service

For calendar year 2011, or tax
year beginning _____ , 2011
ending _____

## Partner's Share of Income, Deductions, Credits, etc.

► See separate instructions.

| **Part III** Partner's Share of Current Year Income, Deductions, Credits, and Other Items |

| | | |
|---|---|---|
| **1** Ordinary business income (loss) | **15** Credits | |
| 26,490. | | |
| **2** Net rental real estate income (loss) | | |
| **3** Other net rental income (loss) | **16** Foreign transactions | |
| **4** Guaranteed payments | | |
| **5** Interest income | | |
| **6a** Ordinary dividends | | |
| **6b** Qualified dividends | | |
| **7** Royalties | | |
| **8** Net short-term capital gain (loss) | | |
| **9a** Net long-term capital gain (loss) | **17** Alternative minimum tax (AMT) items | |
| | A        27. | |
| **9b** Collectibles (28%) gain (loss) | | |
| **9c** Unrecaptured section 1250 gain | | |
| **10** Net section 1231 gain (loss) | **18** Tax-exempt income and nondeductible expenses | |
| **11** Other income (loss) | C        2,017. | |
| | **19** Distributions | |
| **12** Section 179 deduction | | |
| **13** Other deductions | **20** Other information | |
| A        182. | | |
| **14** Self-employment earnings (loss) | | |
| A        26,490. | | |
| C        247,993. | | |

### Part I  Information About the Partnership

**A** Partnership's employer identification number
20-2660635

**B** Partnership's name, address, city, state, and ZIP code
RALPH ROBERTS REALTY, L.L.C.
12900 HALL RD.  SUITE 190
STERLING HEIGHTS, MI 48313

**C** IRS Center where partnership filed return
CINCINNATI, OH

**D** ☐ Check if this is a publicly traded partnership (PTP)

### Part II  Information About the Partner

**E** Partner's identifying number

**F** Partner's name, address, city, state, and ZIP code
RALPH R. ROBERTS
18299 TARA DR.
CLINTON TOWNSHIP, MI 48036-3632

**G** ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

**H** ☒ Domestic partner   ☐ Foreign partner

**I** What type of entity is this partner? INDIVIDUAL

**J** Partner's share of profit, loss, and capital (see instructions):

| | Beginning | Ending |
|---|---|---|
| Profit | 20.00000 % | 20.00000 % |
| Loss | 20.00000 % | 20.00000 % |
| Capital | 20.00000 % | 20.00000 % |

**K** Partner's share of liabilities at year end:
Nonrecourse ......................... $     101,623.
Qualified nonrecourse financing........ $ _____
Recourse ............................. $ _____

**L** Partner's capital account analysis:
Beginning capital account ............. $     36,035.
Capital contributed during the year..... $ _____
Current year increase (decrease) ...... $     24,291.
Withdrawals and distributions.......... $ _____
Ending capital account................ $     60,326.

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book
☐ Other (explain)

**M** Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No
If 'Yes', attach statement (see instructions)

*See attached statement for additional information.

F
O
R

I
R
S

U
S
E

O
N
L
Y

This list identifies the codes used on Schedule K-1 for all partners and provides summarized reporting information for partners who file Form 1040. For detailed reporting and filing information, see the separate Partner's Instructions for Schedule K-1 and the instructions for your income tax return.

**1  Ordinary business income (loss).** Determine whether the income (loss) is passive or nonpassive and enter on your return as follows.

| | *Report on* |
|---|---|
| Passive loss | See the Partner's Instructions |
| Passive income | Schedule E, line 28, column (g) |
| Nonpassive loss | Schedule E, line 28, column (h) |
| Nonpassive income | Schedule E, line 28, column (j) |

**2  Net rental real estate income (loss)**    See the Partner's Instructions

**3  Other net rental income (loss)**
| | |
|---|---|
| Net income | Schedule E, line 28, column (g) |
| Net loss | See the Partner's Instructions |

**4  Guaranteed payments**    Schedule E, line 28, column (j)
**5  Interest income**    Form 1040, line 8a
**6 a Ordinary dividends**    Form 1040, line 9a
**6 b Qualified dividends**    Form 1040, line 9b
**7  Royalties**    Schedule E, line 3b
**8  Net short-term capital gain (loss)**    Schedule D, line 5
**9 a Net long-term capital gain (loss)**    Schedule D, line 12
**9 b Collectibles (28%) gain (loss)**    28% Rate Gain Worksheet, line 4 (Schedule D Instructions)
**9 c Unrecaptured section 1250 gain**    See the Partner's Instructions
**10  Net section 1231 gain (loss)**    See the Partner's Instructions
**11  Other income (loss)**
Code
| A | Other portfolio income (loss) | See the Partner's Instructions |
|---|---|---|
| B | Involuntary conversions | See the Partner's Instructions |
| C | Section 1256 contracts and straddles | Form 6781, line 1 |
| D | Mining exploration costs recapture | See Pub 535 |
| E | Cancellation of debt | Form 1040, line 21 or Form 982 |
| F | Other income (loss) | See the Partner's Instructions |

**12  Section 179 deduction**    See the Partner's Instructions
**13  Other deductions**
| A | Cash contributions (50%) | ⎤ |
|---|---|---|
| B | Cash contributions (30%) | |
| C | Noncash contributions (50%) | |
| D | Noncash contributions (30%) | See the Partner's Instructions |
| E | Capital gain property to a 50% organization (30%) | |
| F | Capital gain property (20%) | |
| G | Contributions (100%) | ⎦ |
| H | Investment interest expense | Form 4952, line 1 |
| I | Deductions — royalty income | Schedule E, line 19 |
| J | Section 59(e)(2) expenditures | See the Partner's Instructions |
| K | Deductions — portfolio (2% floor) | Schedule A, line 23 |
| L | Deductions — portfolio (other) | Schedule A, line 28 |
| M | Amounts paid for medical insurance | Schedule A, line 1 or Form 1040, line 29 |
| N | Educational assistance benefits | See the Partner's Instructions |
| O | Dependent care benefits | Form 2441, line 12 |
| P | Preproductive period expenses | See the Partner's Instructions |
| Q | Commercial revitalization deduction from rental real estate activities | See Form 8582 Instructions |
| R | Pensions and IRAs | See the Partner's Instructions |
| S | Reforestation expense deduction | See the Partner's Instructions |
| T | Domestic production activities information | See Form 8903 Instructions |
| U | Qualified production activities income | Form 8903, line 7b |
| V | Employer's Form W-2 wages | Form 8903, line 17 |
| W | Other deductions | See the Partner's Instructions |

**14  Self-employment earnings (loss)**
*Note. If you have a section 179 deduction or any partner-level deductions, see the Partner's Instructions before completing Schedule SE.*
| A | Net earnings (loss) from self-employment | Schedule SE, Section A or B |
|---|---|---|
| B | Gross farming or fishing income | See the Partner's Instructions |
| C | Gross non-farm income | See the Partner's Instructions |

**15  Credits**
| A | Low-income housing credit (section 42(j)(5)) from pre-2008 buildings | ⎤ |
|---|---|---|
| B | Low-income housing credit (other) from pre-2008 buildings | |
| C | Low-income housing credit (section 42(j)(5)) from post-2007 buildings | See the Partner's Instructions |
| D | Low-income housing credit (other) from post-2007 buildings | |
| E | Qualified rehabilitation expenditures (rental real estate) | |
| F | Other rental real estate credits | |
| G | Other rental credits | ⎦ |
| H | Undistributed capital gains credit | Form 1040, line 71; check box a |
| I | Alcohol and cellulosic biofuel fuels credit | See the Partner's Instructions |

Code
| J | Work opportunity credit | ⎤ |
|---|---|---|
| K | Disabled access credit | |
| L | Empowerment zone and renewal community employment credit | See the Partner's Instructions |
| M | Credit for increasing research activities | |
| N | Credit for employer social security and Medicare taxes | ⎦ |
| O | Backup withholding | Form 1040, line 62 |
| P | Other credits | See the Partner's Instructions |

**16  Foreign transactions**
| A | Name of country or U.S. possession | ⎤ |
|---|---|---|
| B | Gross income from all sources | Form 1116, Part I |
| C | Gross income sourced at partner level | ⎦ |

*Foreign gross income sourced at partnership level*
| D | Passive category | ⎤ |
|---|---|---|
| E | General category | Form 1116, Part I |
| F | Other | ⎦ |

*Deductions allocated and apportioned at partner level*
| G | Interest expense | Form 1116, Part I |
|---|---|---|
| H | Other | Form 1116, Part I |

*Deductions allocated and apportioned at partnership level to foreign source income*
| I | Passive category | ⎤ |
|---|---|---|
| J | General category | Form 1116, Part I |
| K | Other | ⎦ |

*Other information*
| L | Total foreign taxes paid | Form 1116, Part II |
|---|---|---|
| M | Total foreign taxes accrued | Form 1116, Part II |
| N | Reduction in taxes available for credit | Form 1116, line 12 |
| O | Foreign trading gross receipts | Form 8873 |
| P | Extraterritorial income exclusion | Form 8873 |
| Q | Other foreign transactions | See the Partner's Instructions |

**17  Alternative minimum tax (AMT) items**
| A | Post-1986 depreciation adjustment | ⎤ |
|---|---|---|
| B | Adjusted gain or loss | |
| C | Depletion (other than oil & gas) | See the Partner's Instructions and the Instructions for Form 6251 |
| D | Oil, gas, & geothermal — gross income | |
| E | Oil, gas, & geothermal — deductions | |
| F | Other AMT items | ⎦ |

**18  Tax-exempt income and nondeductible expenses**
| A | Tax-exempt interest income | Form 1040, line 8b |
|---|---|---|
| B | Other tax-exempt income | See the Partner's Instructions |
| C | Nondeductible expenses | See the Partner's Instructions |

**19  Distributions**
| A | Cash and marketable securities | ⎤ |
|---|---|---|
| B | Distribution subject to section 737 | See the Partner's Instructions |
| C | Other property | ⎦ |

**20  Other information**
| A | Investment income | Form 4952, line 4a |
|---|---|---|
| B | Investment expenses | Form 4952, line 5 |
| C | Fuel tax credit information | Form 4136 |
| D | Qualified rehabilitation expenditures (other than rental real estate) | See the Partner's Instructions |
| E | Basis of energy property | See the Partner's Instructions |
| F | Recapture of low-income housing credit (section 42(j)(5)) | Form 8611, line 8 |
| G | Recapture of low-income housing credit (other) | Form 8611, line 8 |
| H | Recapture of investment credit | Form 4255 |
| I | Recapture of other credits | See the Partner's Instructions |
| J | Look-back interest — completed long-term contracts | See Form 8697 |
| K | Look-back interest — income forecast method | See Form 8866 |
| L | Dispositions of property with section 179 deductions | |
| M | Recapture of section 179 deduction | |
| N | Interest expense for corporate partners | |
| O | Section 453(l)(3) information | |
| P | Section 453A(c) information | |
| Q | Section 1260(b) information | See the Partner's Instructions |
| R | Interest allocable to production expenditures | |
| S | CCF nonqualified withdrawals | |
| T | Depletion information — oil and gas | |
| U | Amortization of reforestation costs | |
| V | Unrelated business taxable income | |
| W | Precontribution gain (loss) | |
| X | Section 108(i) information | |

PTPA0312  08/11/11                                    Schedule K-1 (Form 1065) 2011

Schedule K-1 (RALPH R. ROBERTS), Supplemental Information
**Supplemental Information**

This Schedule K-1 is from an Eligible Small Business.

Form 1065, Line 20
**Other deductions**

| | |
|---|---:|
| ACCOUNTING | 1,496. |
| ADVERTISING | 27,297. |
| AUTOMOBILE AND TRUCK EXPENSE | 8,860. |
| BANK CHARGES | 508. |
| COMMISSIONS | 352,425. |
| COMPUTER SERVICES AND SUPPLIES | 32,929. |
| CREDIT AND COLLECTION COSTS | 49,457. |
| DUES AND SUBSCRIPTIONS | 2,965. |
| EQUIPMENT RENT | 13,308. |
| INSURANCE | 4,180. |
| LEGAL AND PROFESSIONAL | 63,873. |
| MEALS AND ENTERTAINMENT (50%) | 10,088. |
| MISCELLANEOUS | 1,041. |
| OFFICE EXPENSE | 39,639. |
| OUTSIDE SERVICES | 39,151. |
| PERMITS AND FEES | 7,494. |
| POSTAGE | 2,059. |
| TELEPHONE | 7,997. |
| UTILITIES | 3,306. |

Total                                        668,073.

Form 1065, Schedule L, Line 6
**Other Current Assets**

| Other Current Assets: | Beginning of tax year | End of tax year |
|---|---:|---:|
| DEPOSITS | 1,606. | 6,932. |
| Total | 1,606. | 6,932. |

Form 1065, Schedule L, Line 13
**Other Assets**

| Other Assets: | Beginning of tax year | End of tax year |
|---|---:|---:|
| RENT SECURITY DEPOSIT | 2,789. | 2,789. |
| Total | 2,789. | 2,789. |

Form 1065, Schedule L, Line 17
**Other Current Liabilities**

| Other Current Liabilities: | Beginning of tax year | End of tax year |
|---|---:|---:|
| DEPOSITS | 204,386. | 402,584. |
| SECURITY DEPOSITS | 0. | 20,965. |
| MORTGAGE TAX & INSURANCE ESCROWS | 28,744. | 17,087. |
| Total | 233,130. | 440,636. |