UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:                                              Case No. 12-53023
                                                    (Jointly Administered)
RALPH ROBERTS REALTY, LLC, et al.,[1]               Chapter 11
                                                    Judge Thomas J. Tucker
            Debtors.
_____/

**OPINION REGARDING DEBTORS' MOTION
TO DISQUALIFY MADDIN, HAUSER, WARTELL ROTH & HELLER, P.C.
AS COUNSEL FOR DEFENDANTS JON SAVOY, ET AL.**

The Debtors in these jointly-administered Chapter 11 cases are Ralph R. Roberts ("Roberts") and Ralph Roberts Realty, LLC ("Realty"). They filed their bankruptcy petitions on May 25, 2012, and obtained confirmation of their joint plan of reorganization on February 11, 2013.[2] Roberts and Realty have filed a motion asking the Court to disqualify a law firm — Maddin, Hauser, Wartell, Roth & Heller, P.C. ("Maddin Hauser") — from representing the defendants in an adversary proceeding that Realty has filed, *Ralph Roberts Realty, LLC v. Savoy, et al.*, Adv. No. 12-6131 (the "Savoy AP").[3]

The Court held an initial hearing on the Motion on January 23, 2013, and granted the parties leave to conduct discovery. The Court then held an evidentiary hearing on March 14, 2013, and took the Motion under advisement.

The Court has reviewed and considered the Motion, the response filed to the Motion, all

---

[1] This case is jointly administered with the case of Ralph R. Roberts, Case No. 12-53024.

[2] The confirmation order was filed on February 11, 2013 (Docket # 225).

[3] "Debtors' Motion to Disqualify Maddin, Hauser, Wartell, Roth & Heller, P.C. as Counsel for Defendants Jon Savoy, et al." (Docket # 189, the "Motion").

of the testimony and exhibits presented in the evidentiary hearing,[4] the complaint filed on December 11, 2012 by Realty in the Savoy AP, and the arguments of counsel. For the reasons stated in this opinion, the Court will grant the Debtors' Motion, and disqualify Maddin Hauser.

This opinion states the Court's findings of fact and conclusions of law, regarding the Motion.

**A. Overview**

"Ethical rules involving attorneys practicing in the federal courts are ultimately questions of federal law. The federal courts, however, are entitled to look to the state rules of professional conduct for guidance." *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp. 2d 863, 876 (W.D. Mich. 2007)(citations omitted). In their arguments and evidentiary presentations, the parties in this case have assumed that *if* Maddin Hauser and its attorneys are prohibited by one or more of the Michigan Rules of Professional Conduct from representing the adversary proceeding defendants, then this Court should disqualify Maddin Hauser and its attorneys from such representation. The Court agrees with that assumption, and will focus on the particular Michigan Rules of Professional Conduct that Roberts and Realty rely on in seeking disqualification.

**B. "Former client" and Mich. R. Prof'l Conduct 1.9(a)**

Roberts and Realty rely in part on Mich. R. Prof'l Conduct 1.9(a). That rule states:

> (a) A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

Mich. R. Prof'l Conduct 1.9(a)(sometimes referred to below as "Rule 1.9(a)).

---

[4] The exhibits admitted into evidence were Debtors' Exhibits A through Z and AA.

On and before May 17, 2012, and over a number of years, attorney John Jacobs ("Jacobs") and his firm, Maddin Hauser,[5] did legal work for Roberts and Realty, from time to time and on a number of different matters. During the time period from May 18, 2012[6] until November 2, 2012, Roberts and Realty were not clients of Jacobs or Maddin Hauser. Rather, during this time period Roberts and Realty each was a "former client" of Jacobs and Maddin Hauser, within the meaning of Rule 1.9(a). And during this time period (from May 18, 2012 until November 2, 2012) Jacobs and Maddin Hauser had "formerly represented" Roberts and Realty as their attorneys, within the meaning of Rule 1.9(a).

On December 11, 2012, Realty filed an adversary proceeding in this Court against Jon Savoy and several other defendants — the Savoy AP — which remains pending. In its adversary complaint, Realty alleges breaches of contract by the defendants, and seeks declaratory relief and monetary relief of "not less than $100,500."[7]

On December 20, 2012, two attorneys employed by Maddin Hauser, Michael S. Leib and Ian S. Bolton, each filed a notice of appearance in the Savoy AP,[8] as an attorney for all the defendants. Attorneys Leib and Bolton, and Maddin Hauser, today still are attorneys of record for all of the defendants in the Savoy AP. The Savoy AP defendants have not yet filed an answer or other substantive response to Realty's complaint. Currently, the defendants have a stipulated

---

[5] Jacobs is, and for more than 10 years has been, an attorney employed by Maddin Hauser.

[6] May 17, 2012 is the last day before November 2, 2012 that Jacobs or Maddin Hauser did any legal work for, or gave legal advice to, or agreed to do any legal work for or give legal advice to, either Roberts or Realty. *See, e.g.,* Debtors' Ex. AA, second page.

[7] *See* Compl. (Docket # 1 in the Savoy AP).

[8] Docket ## 4, 5 in the Savoy AP.

extension of time until April 1, 2013 to file a response to the complaint.[9]

Contrary to Roberts's and Realty's contention, none of the matters in which Jacobs or Maddin Hauser formerly represented Roberts or Realty before November 2, 2012 were the "same" matter as, or a "substantially related matter" to, the matter of the Savoy AP, as the phrases "same . . . matter" and "substantially related matter" are used in Rule 1.9(a).

As a result, there is no basis for disqualification, under Mich. R. Prof'l Conduct 1.9(a), of Maddin Hauser as counsel for any of the defendants in the Savoy AP.

**C. Mich. R. Prof'l Conduct 1.9(c)**

Roberts and Realty rely in part on Mich. R. Prof'l Conduct 1.9(c) as a basis for disqualification of Maddin Hauser, but such reliance is misplaced. That rule states:

> (c) A lawyer who has formerly represented a client in a matter or whose present or former firm has formerly represented a client in a matter shall not thereafter:
>
> (1) use information relating to the representation to the disadvantage of the former client except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client, or when the information has become generally known; or
>
> (2) reveal information relating to the representation except as Rule 1.6 or Rule 3.3 would permit or require with respect to a client.

Mich. R. Prof'l Conduct 1.9(c).

This rule does not itself limit what clients an attorney may represent; rather, it merely places limits on what information an attorney may use or reveal. *See, e.g., Sykes v. Matter*, 316 F. Supp. 2d 630, 636 (M.D. Tenn. 2004)(discussing Rule 1.9(c) of the Tennessee Rules of Professional Conduct, which contains language similar to Rule 1.9(c) of the Michigan Rules of

---

[9] Docket # 9 in the Savoy AP.

Professional Conduct)("[S]ubsection (c) of Rule 1.9 is an admonition against the use of confidential information, not a prohibition against representation or a basis for disqualification independent of Rule 1.9(a).").

There is no evidence that Jacobs or any other attorney employed by Maddin Hauser has violated, or is likely in the future to violate, Mich. R. Prof'l Conduct 1.9(c), with respect to any former representation of Roberts or Realty. As a result, there is no basis for disqualification of Maddin Hauser under Mich. R. Prof'l Conduct 1.9(c).

**D. Mich. R. Prof'l Conduct 1.7(a) and 1.10(a)**

Roberts and Realty also rely on Mich. R. Prof'l Conduct 1.7(a), which states:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and
>
> (2) each client consents after consultation.

Mich. R. Prof'l Conduct 1.7(a)(sometimes referred to below as "Rule 1.7(a)").

On Friday, November 2, 2012, Roberts spoke to Jacobs and requested that Jacobs provide Roberts with legal advice, relating to the federal law known as the Secure and Fair Enforcement Mortgage Licensing Act of 2008, also known as the SAFE Act, 12 U.S.C. § 5101, *et seq.*, and regulations under that Act, promulgated by the United States Department of Housing and Urban Development, 24 C.F.R. Parts 30 and 3400.[10]

Sometime during the time period November 2 through November 8, 2012, but in any event not later than November 8, 2012, Jacobs agreed to review the SAFE Act and provide

---

[10] *See, e.g.,* Debtors' Ex. A, first page and its attachment.

5

Roberts with legal advice on this subject.[11]

As a result, beginning no later than November 8, 2012, Jacobs and Roberts had a current attorney-client relationship, with respect to the SAFE Act matter.

Such attorney-client relationship existed, even though the parties made no written agreement for legal services. *See Macomb Cnty Taxpayers Ass'n v. L'Anse Creuse Pub. Sch.*, 564 N.W. 2d 457, 462 (Mich. 1997).[12] And such attorney-client relationship existed despite the fact that at the time, Roberts and Realty were each debtors in pending Chapter 11 bankruptcy cases, and never sought or obtained approval of this Court in their bankruptcy cases to employ Jacobs for any purpose, under 11 U.S.C. § 327(a) or 327(e) and Fed.R.Bankr.P. 2014(a).[13]

There is no evidence that such attorney-client relationship included Realty.

As a result of the foregoing, Roberts, but not Realty, was a *current* client of Jacobs and

---

[11] *See, e.g.*, Debtors' Ex. B.

[12] In the *Macomb Cnty Taxpayers Ass'n* case, for example, the Michigan Supreme Court quoted and expressly agreed with the following passage from 7 Am.Jur.3d, Attorneys at Law:

> [T]he relation of attorney and client is not dependent on the payment of a fee, nor is a formal contract necessary to create this relationship. The contract may be implied from conduct of the parties. The employment is sufficiently established when it is shown that the advice and assistance of the attorney are sought and received in matters pertinent to his profession.

564 N.W. 2d at 462. As noted above, the Court has found that Roberts sought legal advice from Jacobs on November 2, 2012, and that Jacobs agreed to provide it. This oral agreement clearly is sufficient under Michigan law to create an attorney-client relationship.

[13] Maddin Hauser has not argued this as a basis for finding that no attorney-client relationship existed between Roberts and Jacobs. A Chapter 11 bankruptcy debtor's failure to obtain bankruptcy court approval of the employment of a professional may ultimately result in the professional going unpaid. *See, e.g., In Re Visicon Shareholders Trust*, 478 B.R. 292, 320 (Bankr. S.D. Ohio 2012)(requiring a Chapter 11 debtor's accountant to disgorge all unauthorized fees paid to him). But the Court has found no case holding that such a failure means that no attorney-client relationship existed, for purposes of the ethical rules governing attorney conduct.

6

Maddin Hauser, beginning sometime during the time period November 2 through November 8, 2012, but in any event beginning not later than November 8, 2012.

Jacobs never provided any legal advice to Roberts, with respect to the SAFE Act matter. But neither did Jacobs or Maddin Hauser ever expressly terminate or withdraw from their attorney-client relationship with Roberts, or attempt to do so, with respect to the SAFE Act matter.

Within a day or two before Maddin Hauser attorneys Leib and Bolton filed their notices of appearance for the defendants in the Savoy AP on December 20, 2012, Roberts received a phone message from Jacobs asking Roberts to call Jacobs, and saying that Jacobs wanted to discuss a "conflict." Although his phone message to Roberts did not say what "conflict" Jacobs was referring to, in fact, the "conflict" that Jacobs was referring to was the Maddin Hauser firm representing the defendants in the Savoy AP.

Roberts and Jacobs eventually spoke to each other about this "conflict," but not until shortly after Roberts learned of the Leib and Bolton notices of appearance in the Savoy AP.

In an e-mail that Jacobs sent to Roberts on December 20, 2012, Jacobs informed Roberts that his firm, Maddin Hauser, had been asked to represent the defendants in the Savoy AP. Roberts responded by sending Jacobs an e-mail later the same day, saying that he had seen the Maddin Hauser entry of appearance in the Savoy AP, that Roberts believed that Maddin Hauser had a conflict, and that Roberts was not "waiving" the conflict.[14]

Hannah McCollum, the attorney for Roberts and Realty, also sent an e-mail to Jacobs on December 20, 2012, saying that Maddin Hauser had a conflict in representing the defendants in

---

[14] *See* Ex. C to the Motion (Docket # 189).

the Savoy AP, and asking Jacobs to immediately advise the Savoy AP defendants to seek other counsel.[15]

At no time has either Roberts or Realty consented to any attorney from the Maddin Hauser firm representing any of the defendants in the Savoy AP.

The Maddin Hauser attorneys refused to discontinue their representation of the Savoy AP defendants. As a result, Roberts and Realty filed the Motion, on December 21, 2012.

While Roberts is not a plaintiff in the Savoy AP, Roberts is the 100% owner and member of Realty, which is the plaintiff in the Savoy AP. As a result, the representation of the defendants in the Savoy AP by the Maddin Hauser attorneys is "directly adverse" to Roberts, within the meaning of Rule 1.7(a). And Maddin Hauser does not argue otherwise.

At some point on or after December 20, 2012, there was a breakdown in the relations between Roberts on the one hand, and Jacobs and Maddin Hauser on the other hand. But this was caused directly and solely by the decision of Jacobs and Maddin Hauser to represent the defendants in the Savoy AP, which was made known to Roberts on December 20, 2012, despite the fact that such representation was directly adverse to Roberts, who at that time was a current client of Jacobs and Maddin Hauser. As a result of that breakdown in relations, Roberts today no longer desires to receive the legal advice he requested from Jacobs about the SAFE Act.

From at least as early as November 8, 2012 and continuing through December 20, 2012, and thereafter, Jacobs was prohibited, by Rule 1.7(a), from representing any of the defendants in the Savoy AP, due to Jacobs's then-current attorney-client relationship with Roberts. As a result, the Maddin Hauser firm and all of the attorneys in that firm also were prohibited from

---

[15] Ex. D to the Motion (Docket # 189).

8

12-53023-tjt    Doc 260    Filed 03/18/13    Entered 03/18/13 12:21:24    Page 8 of 10

representing any of the defendants in the Savoy AP, under Mich. R. Prof'l Conduct 1.10(a). That rule states, in pertinent part:

> (a) While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by Rules 1.7, 1.8(c), 1.9(a), or 2.2. . . .

Mich. R. Prof'l Conduct 1.10(a).

The foregoing prohibition, against Jacobs and all other attorneys in the Maddin Hauser firm representing any of the defendants in the Savoy AP, did not end after December 20, 2012, and it continues. The prohibition did not end, for example, because of any of the following: (1) because after December 20, 2012, relations broke down between Roberts on the one hand, and Jacobs and Maddin Hauser on the other hand, as described above; or (2) because Jacobs never performed the legal work that he agreed to do for Roberts, regarding the SAFE Act matter; or (3) because, due to the breakdown in relations referred to in point (1) above, Roberts now no longer desires to receive the legal advice he requested from Jacobs about the SAFE Act.

This is so because if it were not so, it would mean that an attorney could evade the conflict-of-interest rule in Rule 1.7(a), by simply abandoning and forsaking an existing client any time he wanted to take on a new client and matter directly adverse to the existing client. Such an evasion of the conflict-of-interest rules governing attorneys, and such treatment of an existing client, are not permitted. *See, e.g.*, *El Camino Res., Ltd. v. Huntington Nat'l Bank*, 623 F. Supp. 2d at 877-78, 879:

> The courts universally hold that a law firm will not be allowed to drop a client in order to resolve a direct conflict of interest, thereby turning a present client into a former client.
> . . .

9

> Pursuant to this universal rule, the status of the attorney/client relationship is assessed at the time the conflict arises, not at the time the motion to disqualify is presented to the court. "If this were not the case, the challenged attorney could always convert a present client into a 'former client' by choosing when to cease to represent the disfavored client." This unilateral abrogation of the duty of loyalty cures nothing, but serves to make matters worse.
>
> . . .
>
> A law firm is not privileged to extinguish its duty of loyalty to a present client by unilaterally turning it into a former client.

(citations and footnote omitted).

### E.  Conclusion

For the reasons stated in this opinion, the Court will enter an order granting the Motion, and disqualifying Maddin Hauser and all of its attorneys from representing any of the defendants in the Savoy AP.

**Signed on March 18, 2013**  /s/ Thomas J. Tucker
**Thomas J. Tucker**
**United States Bankruptcy Judge**